Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BAKER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., JACK DORSEY, NED SEGAL, and PARAG AGRAWAL,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff William Baker ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by

Defendants, public filings, wire and press releases published by and regarding Twitter, Inc. ("Twitter" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Twitter securities between August 3, 2020 and August 23, 2022, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

1

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Twitter securities during the Class Period and was economically damaged thereby.

7.     Defendant Twitter purports to be a global social media platform for public self-expression and conversation in real time. Twitter is incorporated in Delaware with offices located all throughout the world, including in Los Angeles. Twitter's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "TWTR."

8.     Defendant Jack Dorsey ("Dorsey") is the co-founder of Twitter and served as its Chief Executive Officer ("CEO") from at least the start of the class period to November 29, 2021.

9.     Defendant Parag Agrawal ("Agrawal") served as the Company's CEO from November 29, 2021 and at all relevant times thereafter.

10.     Defendant Ned Segal ("Segal") served as the Company's Chief Financial Officer ("CFO") at all relevant times.

11.     Defendants Dorsey, Agrawal, and Segal are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

2

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     Twitter is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Twitter under *respondeat superior* and agency principles.

15.     Defendant Twitter and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

16.     In 2010, the Federal Trade Commission ("FTC") filed a complaint against Twitter for mishandling users' private information and the issue of too many employees having access to Twitter's central controls.

17.     On March 11, 2011, the FTC agreed to a settlement with Twitter. As part of the settlement, Twitter agreed it would be "barred for 20 years from misleading consumers about the extent to which it protects the security, privacy, and confidentiality of nonpublic consumer information, including the measures it takes to prevent unauthorized access to nonpublic information and honor the privacy choices made by consumers."[1]

---

[1] https://www.ftc.gov/news-events/news/press-releases/2011/03/ftc-accepts-final-settlement-twitter-failure-safeguard-personal-information-0, (last accessed September 13, 2022)

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**Materially False and Misleading Statements Issued During the Class Period**

18.　On August 3, 2020, Twitter filed a form 10-Q for the quarterly period ended June 30, 2020 ("2Q 2020 10-Q"). Attached to the 2Q 2020 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Dorsey and Segal.

19.　The 2Q 2020 10-Q stated, in pertinent part:

> ***Our products may contain errors or our security measures may be breached, resulting in the exposure of private information. Our products and services may be subject to attacks that degrade or deny the ability of people to access our products and services. These issues may result in the perception that our products and services are not secure, and people on Twitter and advertisers may curtail or stop using our products and services and our business and operating results could be harmed.***

> Our products and services involve the storage and transmission of people's and advertisers' information, and ***security incidents, including those caused by unintentional errors and those intentionally caused by third parties, may expose us to a risk of loss of this information, litigation, increased security costs and potential liability***. We and our third-party service providers experience cyber-attacks of varying degrees on a regular basis. We expect to incur significant costs in an effort to detect and prevent security breaches and other security-related incidents, and we may face increased costs in the event of an actual or perceived security breach or other security-related incident. In particular, the COVID-19 pandemic is increasing the opportunities available to criminals, as more companies and individuals work online, and as such, the risk of a cybersecurity incident potentially occurring is increasing. We cannot provide assurances that our preventative efforts will be successful. ***If an actual or perceived breach of our security occurs, the market perception of the effectiveness of our security measures could be harmed, people on Twitter and our advertisers may be harmed, lose trust and confidence in us, decrease the use of our products and services or stop using our products and services in their entirety. We may also incur significant legal and financial exposure***, including

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

legal claims, higher transaction fees and regulatory fines and penalties. Any of these actions could have a material and adverse effect on our business, reputation and operating results. While our insurance policies include liability coverage for certain of these matters, if we experienced a significant security incident, we could be subject to liability or other damages that exceed our insurance coverage.

\*    \*    \*

In March 2011, to resolve an investigation into various incidents, we entered into a consent order with the FTC that, among other things, required us to establish an information security program designed to protect non-public consumer information and also requires that we obtain biennial independent security assessments. ***The obligations under the consent order remain in effect until the later of March 2, 2031, or the date 20 years after the date, if any, on which the U.S. government or the FTC files a complaint in federal court alleging any violation of the order.*** We expect to continue to be the subject of regulatory inquiries, investigations and audits in the future by the FTC and other regulators around the world. Violation of existing or future regulatory orders, settlements or consent decrees could subject us to substantial fines and other penalties that would adversely impact our financial condition and operating results. For example, on July 28, 2020, we received a draft complaint from the FTC alleging violations of the 2011 consent order with the FTC and the FTC Act. The allegations relate to our use of phone number and/or email address data provided for safety and security purposes for targeted advertising during periods between 2013 and 2019. We estimate that the range of probable loss in this matter is $150.0 million to $250.0 million. The matter remains unresolved, and there can be no assurance as to the timing or the terms of any final outcome.

(Underlined emphasis added.)

20.     On October 30, 2020, Twitter filed a form 10-Q for the quarterly period ended September 30, 2020 ("3Q 2020 10-Q"). Attached to the 3Q 2020 10-Q were SOX Certifications signed by Defendants Dorsey and Segal.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

21.     The 3Q 2020 10-Q stated, in relevant part:

***Our products may contain errors or our security measures may be breached, resulting in the exposure of private information. Our products and services may be subject to attacks that degrade or deny the ability of people to access our products and services. These issues may result in the perception that our products and services are not secure, and people on Twitter and advertisers may curtail or stop using our products and services and our business and operating results could be harmed.***

Our products and services involve the storage and transmission of people's and advertisers' information, and ***security incidents, including those caused by unintentional errors and those intentionally caused by third parties, may expose us to a risk of loss of this information, litigation, increased security costs and potential liability.*** We and our third-party service providers experience cyber-attacks of varying degrees on a regular basis. We expect to incur significant costs in an effort to detect and prevent security breaches and other security-related incidents, and we may face increased costs in the event of an actual or perceived security breach or other security-related incident. In particular, the COVID-19 pandemic is increasing the opportunities available to criminals, as more companies and individuals work online, and as such, the risk of a cybersecurity incident potentially occurring is increasing. We cannot provide assurances that our preventative efforts will be successful. ***If an actual or perceived breach of our security occurs, the market perception of the effectiveness of our security measures could be harmed, people on Twitter and our advertisers may be harmed, lose trust and confidence in us, decrease the use of our products and services or stop using our products and services in their entirety. We may also incur significant legal and financial exposure***, including legal claims, higher transaction fees and regulatory fines and penalties. Any of these actions could have a material and adverse effect on our business, reputation and operating results. While our insurance policies include liability coverage for certain of these matters, if we experienced a significant security incident, we could be subject to liability or other damages that exceed our insurance coverage.

6

\*      \*      \*

In March 2011, to resolve an investigation into various incidents, we entered into a consent order with the FTC that, among other things, required us to establish an information security program designed to protect non-public consumer information and also requires that we obtain biennial independent security assessments. ***The obligations under the consent order remain in effect until the later of March 2, 2031, or the date 20 years after the date, if any, on which the U.S. government or the FTC files a complaint in federal court alleging any violation of the order.*** We expect to continue to be the subject of regulatory inquiries, investigations and audits in the future by the FTC and other regulators around the world. Violation of existing or future regulatory orders, settlements or consent decrees could subject us to substantial fines and other penalties that would adversely impact our financial condition and operating results. For example, on July 28, 2020, we received a draft complaint from the FTC alleging violations of the 2011 consent order with the FTC and the FTC Act. The allegations relate to our use of phone number and/or email address data provided for safety and security purposes for targeted advertising during periods between 2013 and 2019. We estimate that the range of probable loss in this matter is $150.0 million to $250.0 million. The matter remains unresolved, and there can be no assurance as to the timing or the terms of any final outcome.

(Underlined emphasis added.)

22.    On February 17, 2021, Twitter filed a form 10-K for the fiscal year ended December 31, 2020 ("2020 10-K"). Attached to the 2020 10-K were SOX Certifications signed by Defendants Dorsey and Segal.

23.    The 2020 10-K, in pertinent part, stated:

**Technology, Research and Development**

Twitter is composed of a set of core, scalable and distributed services that are built from proprietary and open source technologies. These systems are capable of delivering billions of messages, including images and video, to hundreds of millions of people a day in an

7

efficient and reliable way. We continue to invest in our existing products and services as well as develop new products and services through research and product development. ***We also continue to invest in protecting the safety, security and integrity of our platform by investing in both people and technology***, including machine learning.

\*     \*     \*

In March 2011, to resolve an investigation into various incidents, we entered into a settlement agreement with the Federal Trade Commission, or FTC, that, among other things, requires us to establish an information security program designed to protect non-public consumer information and also requires that we obtain biennial independent security assessments. ***The obligations under the settlement agreement remain in effect until the later of March 2, 2031, or the date 20 years after the date, if any, on which the U.S. government or the FTC files a complaint in federal court alleging any violation of the order.*** On July 28, 2020, we received a draft complaint from the FTC alleging violation of the order and the Federal Trade Commission Act (FTC Act). The allegations relate to our use of phone number and/or email address data provided for safety and security purposes for targeted advertising during periods between 2013 and 2019. The matter remains unresolved, and there can be no assurance as to the timing or the terms of any final outcome. Violation of other existing or future regulatory orders, settlements, or consent decrees could subject us to substantial monetary fines and other penalties that could negatively affect our financial condition and results of operations.

\*     \*     \*

***Our products may contain errors or our security measures may be breached, resulting in the exposure of private information. Our products and services may be subject to attacks that degrade or deny the ability of people to access our products and services. These issues may result in the perception that our products and services are not secure, and people on Twitter and advertisers may curtail or stop using our products and services and our business and operating results could be harmed.***

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Our products and services involve the storage and transmission of people's and advertisers' information, and ***<u>security incidents, including those caused by unintentional errors and those intentionally caused by third parties, may expose us to a risk of loss of this information, litigation, increased security costs and potential liability.</u>*** We and our third-party service providers experience cyber-attacks of varying degrees on a regular basis. We expect to incur significant costs in an effort to detect and prevent security breaches and other security-related incidents, including those that our third-party suppliers and service providers may suffer, and we may face increased costs in the event of an actual or perceived security breach or other security-related incident. In particular, the COVID-19 pandemic is increasing the opportunities available to criminals, as more companies and individuals work online, and as such, the risk of a cybersecurity incident potentially occurring is increasing. We cannot provide assurances that our preventative efforts will be successful. ***<u>If an actual or perceived breach of our security occurs, the market perception of the effectiveness of our security measures could be harmed, people on Twitter and our advertisers may be harmed, lose trust and confidence in us, decrease the use of our products and services or stop using our products and services in their entirety. We may also incur significant legal and financial exposure</u>***, including legal claims, higher transaction fees and regulatory fines and penalties. Any of these actions could have a material and adverse effect on our business, reputation and operating results. While our insurance policies include liability coverage for certain of these matters, if we experienced a significant security incident, we could be subject to liability or other damages that exceed our insurance coverage.

(Underlined emphasis added.)

24.    On February 16, 2022, Twitter filed a form 10-K for the fiscal year ended December 31, 2021 ("2021 10-K"). Attached to the 2021 10-K were SOX Certifications signed by Defendants Agrawal and Segal.

25.    The 2021 10-K, in relevant part, stated:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**Technology, Research and Development**

Twitter is composed of a set of core, scalable and distributed services that are built from proprietary and open source technologies. These systems are capable of delivering billions of messages, including images and video, to hundreds of millions of people a day in an efficient and reliable way. We continue to invest in our existing products and services as well as develop new products and services through research and product development. ***We also continue to invest in protecting the safety, security and integrity of our platform by investing in both people and technology***, including machine learning.

\*     \*     \*

In March 2011, to resolve an investigation into various incidents, we entered into a settlement agreement with the Federal Trade Commission, or FTC, that, among other things, requires us to establish an information security program designed to protect non-public consumer information and requires that we obtain biennial independent security assessments. ***The obligations under the settlement agreement remain in effect until the later of March 2, 2031, or the date 20 years after the date, if any, on which the U.S. government or the FTC files a complaint in federal court alleging any violation of the order.*** On July 28, 2020, we received a draft complaint from the FTC alleging violation of the order and the Federal Trade Commission Act (FTC Act). The allegations relate to our use of phone number and/or email address data provided for safety and security purposes for targeted advertising during periods between 2013 and 2019. The matter remains unresolved, and there can be no assurance as to the timing or the terms of any final outcome. Violation of other existing or future regulatory orders, settlements, or consent decrees could subject us to substantial monetary fines and other penalties that could negatively affect our financial condition and results of operations.

\*     \*     \*

***Our products may contain errors or our security measures may be breached, resulting in the exposure of private information. Our***

10

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*products and services may be subject to attacks that degrade or deny the ability of people to access our products and services. These issues may result in the perception that our products and services are not secure, and people on Twitter and advertisers may curtail or stop using our products and services and our business and operating results could be harmed.*

Our products and services involve the storage and transmission of people's and advertisers' information, and ***security incidents, including those caused by unintentional errors and those intentionally caused by third parties, may expose us to a risk of loss of this information, litigation, increased security costs and potential liability.*** We and our third-party service providers experience cyber-attacks of varying degrees on a regular basis. We expect to incur significant costs in an effort to detect and prevent security breaches and other security-related incidents, including those that our third-party suppliers and service providers may suffer, and we may face increased costs in the event of an actual or perceived security breach or other security-related incident. In particular, the COVID-19 pandemic has increased the opportunities available to criminals, as more companies and individuals work online, and as such, the risk of a cybersecurity incident potentially occurring has increased. We cannot provide assurances that our preventative efforts will be successful. ***If an actual or perceived breach of our security occurs, the market perception of the effectiveness of our security measures could be harmed, people on Twitter and our advertisers may be harmed, lose trust and confidence in us, decrease the use of our products and services or stop using our products and services in their entirety. We may also incur significant legal and financial exposure***, including legal claims, higher transaction fees and regulatory fines and penalties. Any of these actions could have a material and adverse effect on our business, reputation and operating results. While our insurance policies include liability coverage for certain of these matters, if we experienced a significant security incident, we could be subject to liability or other damages that exceed our insurance coverage.

(Underlined emphasis added.)

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

26.     The statements contained in ¶¶18-25 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Twitter knew about security concerns on their platform; (2) Twitter actively worked to hide the security concerns from the board, the investing public, and regulators; (3) contrary to representations in SEC filings, Twitter did not take steps to improve security; (4) Twitter's active refusal to address security issues increased the risk of loss of public goodwill; and (5) as a result, Defendants' statements about Twitter's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

27.     On August 23, 2022, before market hours, *CNN* published an article titled, "Ex-Twitter exec blows the whistle, alleging reckless and negligent cybersecurity policies". The article states, in relevant part:

> "***Twitter has major security problems that pose a threat to its own users' personal information, to company shareholders, to national security, and to democracy,*** according to an explosive whistleblower disclosure obtained exclusively by CNN and The Washington Post.
>
> The disclosure, sent last month to Congress and federal agencies, paints a picture of a chaotic and reckless environment at a mismanaged company that allows too many of its staff access to the platform's central controls and most sensitive information without adequate oversight. It also alleges that some of the company's senior-most executives have been trying to cover up Twitter's serious vulnerabilities, and that one or more current employees may be working for a foreign intelligence service.
>
> The whistleblower, who has agreed to be publicly identified, is ***Peiter "Mudge" Zatko, who was previously the company's head of***

12

*security, reporting directly to the CEO. Zatko further alleges that Twitter's leadership has misled its own board and government regulators about its security vulnerabilities, including some that could allegedly open the door to foreign spying or manipulation, hacking and disinformation campaigns.* The whistleblower also alleges Twitter does not reliably delete users' data after they cancel their accounts, in some cases because the company has lost track of the information, and that it has misled regulators about whether it deletes the data as it is required to do. The whistleblower also says Twitter executives don't have the resources to fully understand the true number of bots on the platform, and were not motivated to.

The agency alleges male employees play video games during the workday while delegating responsibilities to female employees, engage in sexual banter, and joke openly about rape, among other things.

*       *       *

Zatko was fired by Twitter (TWTR) in January for what the company claims was poor performance. According to Zatko, *his public whistleblowing comes after he attempted to flag the security lapses to Twitter's board and to help Twitter fix years of technical shortcomings and alleged non-compliance with an earlier privacy agreement with the Federal Trade Commission.* Zatko is being represented by Whistleblower Aid, the same group that represented Facebook whistleblower Frances Haugen.

*       *       *

Some of Zatko's most damning claims spring from his apparently tense relationship with Parag Agrawal, the company's former chief technology officer who was made CEO after Jack Dorsey stepped down last November. According to the disclosure, *Agrawal and his lieutenants repeatedly discouraged Zatko from providing a full accounting of Twitter's security problems to the company's board of directors. The company's executive team allegedly instructed Zatko to provide an oral report of his initial findings on the company's security condition to the board rather than a detailed written account, ordered Zatko to knowingly present cherry-picked and misrepresented data to create the false perception of progress on*

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

***urgent cybersecurity issues, and went behind Zatko's back to have a third-party consulting firm's report scrubbed to hide the true extent of the company's problems.***

\*      \*      \*

But, the disclosure says, Zatko soon learned ***"it was impossible to protect the production environment. All engineers had access. There was no logging of who went into the environment or what they did.... Nobody knew where data lived or whether it was critical, and all engineers had some form of critical access to the production environment." Twitter also lacked the ability to hold workers accountable for information security lapses because it has little control or visibility into employees' individual work computers***, Zatko claims, citing ***internal cybersecurity reports estimating that 4 in 10 devices do not meet basic security standards.***

Twitter's flimsy server infrastructure is a separate yet equally serious vulnerability, the disclosure claims. ***About half of the company's 500,000 servers run on outdated software that does not support basic security features such as encryption for stored data or regular security updates by vendors***, according to the letter to regulators and a February email Zatko wrote to Patrick Pichette, a Twitter board member, that is included in the disclosure.

The company also ***lacks sufficient redundancies and procedures to restart or recover from data center crashes***, Zatko's disclosure says, meaning that even minor outages of several data centers at the same time could knock the entire Twitter service offline, perhaps for good.

(Emphasis added.)

28.    On this news, Twitter shares traded at unusually high volumes and Twitter share prices fell $3.15, or over 7%, to close at $39.86 on August 23, 2022, damaging investors.

---

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

29.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Twitter securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Twitter, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Twitter securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

32.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Twitter;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Twitter to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Twitter securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Twitter's shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Twitter filed periodic public reports;

16

- Twitter regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Twitter's securities were liquid and traded with sufficient volume during the Class Period; and

- Twitter was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

37. Based on the foregoing, the market for Twitter securities promptly digested current information regarding Twitter from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

41.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

•       employed devices, schemes and artifices to defraud;

•       made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

•       engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Twitter securities during the Class Period.

43.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Twitter were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Twitter, their control over, and/or receipt and/or modification of Twitter's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Twitter, participated in the fraudulent scheme alleged herein.

44.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of

18

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Twitter personnel to members of the investing public, including Plaintiff and the Class.

45.     As a result of the foregoing, the market price of Twitter securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Twitter securities during the Class Period in purchasing Twitter securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

46.     Had Plaintiff and the other members of the Class been aware that the market price of Twitter securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Twitter securities at the artificially inflated prices that they did, or at all.

47.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

48.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Twitter securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     During the Class Period, the Individual Defendants participated in the operation and management of Twitter, and conducted and participated, directly and indirectly, in the conduct of Twitter's business affairs. Because of their senior positions, they knew the adverse non-public information about Twitter's misstatement of revenue and profit and false financial statements.

51.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Twitter's financial condition and results of operations, and to correct promptly any public statements issued by Twitter which had become materially false or misleading.

52.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Twitter disseminated in the marketplace during the Class Period concerning Twitter's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Twitter to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Twitter within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Twitter securities.

53.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Twitter.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 13, 2022     **THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

21