David L. Anderson (SBN 149604)
dlanderson@sidley.com
Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants Parag Agrawal,
Ned Segal, Vijaya Gadde and Kayvon Beykpour*

Additional Counsel on Signature Page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., et al., <br><br> Defendants. | Case No. 2:22-cv-06525-MCS-E <br><br> **DEFENDANTS JACK DORSEY, PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE AND KAYVON BEYKPOUR'S NOTICE OF MOTION AND MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT; JOINDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Filed concurrently with [Proposed] Order and Defendant Twitter, Inc.'s Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities; Declaration of Whitney B. Weber; Request for Judicial Notice; and [Proposed] Orders]* <br><br> Judge: Hon. Mark C. Scarsi <br><br> Hearing Date: April 24, 2023 <br> Hearing Time: 9:00 a.m. <br> Location: Courtroom 7C |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on April 24, 2023[1], at 9:00 a.m., Defendants Jack Dorsey, Parag Agrawal, Ned Segal, Vijaya Gadde and Kayvon Beykpour (collectively "Individual Defendants") bring for hearing this motion to dismiss, before the Honorable Mark C. Scarsi, First Street Courthouse, Courtroom 7C, 7th Floor, 350 W. 1st Street, Los Angeles, CA 90012. Individual Defendants move to dismiss the claims asserted against them in the Corrected Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. 81), filed by Plaintiffs William Baker, Mohammed Thaseen, Jill Sligay, Lenard Roque and Amolkumar Vaidya (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6).

As set forth in the attached joinder and memorandum of points and authorities, the Individual Defendants seek an order that dismisses with prejudice all claims asserted against them for failure to state a claim on which relief may be granted.

This motion is based on this notice of motion and motion, the attached joinder and memorandum of points and authorities, the notice of motion and motion to dismiss filed by Twitter, Inc. and the memorandum of points and authorities in support thereof (the "Company Brief"), the declaration of Whitney B. Weber and accompanying exhibits, Twitter's request for judicial notice, the entire case files and records of this action, and such further argument as may be presented before or after the hearing on this matter, including through reply briefing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 7, 2023.

---

[1] The parties filed a stipulation requesting that the Court set the hearing date for May 22, 2023, or as soon thereafter as is convenient. Dkt. 84.

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     ADDITIONAL ALLEGATIONS ......................................................................... 2

        A.      The Individual Defendants ....................................................................... 2

        B.      mDAU Statements Attributed to Defendants ....................................... 3

        C.      mDAU Allegations Relying on Musk's Unproven Claims ................ 4

III.    DISCUSSION ......................................................................................................... 5

        A.      Plaintiffs' mDAU Allegations, Based Entirely
                on Musk's Unproven Claims, are Inadequate to Plead Falsity ............ 5

        B.      Plaintiffs Fail to Adequately Allege Loss Causation
                as to the mDAU Statements. ................................................................... 8

                1.      The alleged corrective disclosures did not
                        reveal any corrective information. ............................................... 9

                2.      The alleged corrective disclosures are
                        not statements of fact. .................................................................. 10

                3.      The market already had information
                        regarding inaccuracies in the mDAU calculations. .................. 11

        C.      Plaintiffs Fail to Adequately Plead Their
                Section 20(a) Claim Against Any of the Individual Defendants. ........ 12

IV.     CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................5

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ...............................................................6, 9, 10, 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ...............................................................................12

*In re Cornerstone Propane Partners, L.P.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .................................................................5

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   934 F. Supp. 2d 1219 (C.D. Cal. 2013)..................................................................7

*Curry v. Yelp, Inc.*,
   875 F.3d 1219 (9th Cir. 2017) ...............................................................................6

*Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*,
   2017 WL 114401 (C.D. Cal. Jan. 9, 2017)............................................................5

*Hershewe v. JOYY Inc.*,
   2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) .........................................................6

*In re LexinFintech Holdings Ltd. Sec. Litig.*,
   2021 WL 5530949 (D. Or. Nov. 24, 2021) ............................................................6

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
   2011 WL 4389689 (C.D. Cal. May 5, 2011)...........................................................7

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013)............................................................................11

*Middlesex Ret. Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007)...................................................... 13nektar

*In re Nektar Therapeutics Sec. Litig.*,
  34 F. 4th 828 (9th Cir. 2022) .................................................................. 6, 11

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) .............................................................. 5, 6, 12

*Purple Mountain Tr. v. Wells Fargo & Co.*,
  432 F. Supp. 3d 1095 (N.D. Cal. 2020) ..................................................... 12

*Rok v. Identiv*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ................................................... 11

*Sgarlata v. PayPal Holdings, Inc.*,
  2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) ............................................ 12

*Twitter, Inc. v. Musk*,
  2022 WL 3592549 (Del. Ch. Aug. 15, 2022)................................................. 8

*Twitter, Inc. v. Musk*,
  2022 WL 3656789 (Del. Ch. Aug. 25, 2022)................................................. 8

*Twitter, Inc. v. Musk*,
  2022 WL 5240477 (Del. Ch. Oct. 6, 2022)................................................... 8

**Statutes & Rules**

15 U.S.C. § 10(b) (Section 10(b) of the Securities Exchange Act)................. 1, 2, 12

15 U.S.C. § 78t(a) (Section 20(a) of the Securities Exchange Act).................... 1, 12

15 U.S.C. § 78u–4(b)(1) ............................................................................... 5

17 C.F.R. 240b-5 (SEC Rule 10b-5) ........................................................... 1, 2

**JOINDER AND MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs bring this action against five Individual Defendants—all former Twitter executives—attacking a hodgepodge selection of their statements that are facially non-actionable and demonstrably not false. Moreover, Plaintiffs have not even attempted to plead that any Individual Defendant spoke with the required knowledge or intent to mislead the market. The Individual Defendants join and incorporate by reference in full the Company Brief—the Complaint fails to adequately plead claims under Section 10(b) and Rule 10b-5 of the Exchange Act and therefore should be dismissed with prejudice as to all Defendants. Individual Defendants submit this memorandum of points and authorities to address two additional reasons, not discussed in the Company Brief, that the Complaint should be dismissed with prejudice:

*First*, Plaintiffs' attack on Defendants' statements concerning mDAU—a metric Twitter used to report on monetizable daily active users (the "mDAU statements")—depends on subsequent comments made by or at the direction of Elon Musk when he admittedly lacked necessary information about mDAU and was seeking to walk away from his agreement to acquire Twitter. Musk's uninformed, unproven, and self-motivated assertions about mDAU are inadequate to plead that Individual Defendants' mDAU statements were false and cannot be used as corrective disclosures. Moreover, on their face, the alleged corrective disclosures do not correct anything that Plaintiffs contend was false or misleading about the mDAU statements. And, even if the comments could otherwise be corrective, they introduced no new information: Musk's comments were made weeks after Twitter had already disclosed certain inaccuracies in the mDAU metric.

*Second*, Plaintiffs have failed to adequately plead their 20(a) claim against any of the Individual Defendants. In addition to failing to plead a viable underlying 10(b) claim, Plaintiffs have not pled (nor can they plead) any facts to support their

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; JOINDER AND MEMO. OF P&A - CASE NO. 2:22-cv-06525-MCS-E

conclusory assertion that any Individual Defendant exercised control over the statements that they did not themselves make.

For these additional reasons, Plaintiffs' claims under Section 10(b) and Rule 10b-5 of the Exchange Act should be dismissed with prejudice.

## II.    ADDITIONAL ALLEGATIONS

### A.    The Individual Defendants

The Individual Defendants are former executives of Twitter. Jack Dorsey co-founded Twitter and twice served as Twitter's CEO, including from before the beginning of the Class Period until November 2021. ¶ 32.[2] Parag Agrawal began working at Twitter as an engineer in 2011, and became Chief Technology Officer in 2017 and then CEO in 2021, after Dorsey's resignation. ¶ 33. Ned Segal served as Twitter's CFO starting in August 2017. ¶ 34. Vijaya Gadde began as a Director in the Legal Department in 2011, before serving, at various points, as General Counsel, Secretary, head of communications, and eventually Chief Legal Officer in 2018. ¶ 35. Kayvon Beykpour joined Twitter in 2015 to run the Periscope team, which was a live video-broadcasting app that Beykpour founded and Twitter then acquired. ¶ 36. Beykpour subsequently became Product Lead of Consumer on June 28, 2018 and then GM of Consumer in December 2021, where he oversaw the Product, Engineering, Design, Research, and Customer Service and Operations Teams. *Id.*

Dorsey separated from Twitter in November 2021. ¶ 32. Beykpour separated from Twitter in May 2022. ¶ 36. Agrawal, Segal, and Gadde all continued to serve in their roles until October 2022, when Elon Musk acquired Twitter, after which they separated from the company. ¶¶ 33-35.

---

[2] Unless otherwise stated, all cites to "¶" refer to paragraphs in the Corrected Amended Complaint.

## B.    mDAU Statements Attributed to Defendants

mDAU is Twitter's estimate of monetizable daily active users on its platform. Twitter defined the mDAU metric as "people, organizations, or other accounts who logged in or were otherwise authenticated and accessed Twitter on any given day through twitter.com or Twitter applications that are able to show ads." Weber Decl. Ex. 5 at 5. Twitter developed this metric to measure and report on user engagement. *See* ¶¶ 171-72.

During the Class Period, Twitter reported on the mDAU metric in Twitter's Class Period SEC filings. *See, e.g.*, ¶ 250 (quoting Class Period 10-K and 10-Qs) ("We believe that mDAU, and its related growth, is the best way to measure our success against our objectives and to show the size of our audience and engagement."); ¶ 254 (quoting Class Period 10-Qs) ("[T]hese numbers are based on what we believe to be reasonable estimates for the applicable period of measurement."); ¶ 255 (quoting Q2 2020 10-Q) ("We have performed an internal review of a sample of accounts and estimate that the average of false or spam accounts during the second quarter of 2020 represented fewer than 5% of our mDAU during the quarter.") (emphasis removed).

Plaintiffs also challenge a handful of other statements made about mDAU in the following additional forums: (1) through Segal at an August 11, 2020 Oppenheimer conference; (2) through Beykpour at Twitter's February 25, 2021 Analyst Day; (3) in a September 21, 2021 tweet and linked blog post not attributed to any Individual Defendant; and (4) through Agrawal in a series of tweets on May 16, 2022. *See* Weber Decl. Ex. 1 at Stmts. 19-33 (providing a complete list of the mDAU statements).[3]

---

[3] Plaintiffs do not attribute any mDAU statement to Gadde.

### C.    mDAU Allegations Relying on Musk's Unproven Claims

Plaintiffs claim that these selected mDAU statements were false or misleading as to the manner in which Twitter calculated mDAU and the importance of mDAU at Twitter. Specifically, Plaintiffs contend these statements failed to disclose that: (1) mDAU included a growing number of Twitter users that never saw ads or earned Twitter revenue; (2) Twitter internally relied on other, less encouraging metrics than mDAU to measure user engagement; and (3) 10% of Twitter's users were bots or spam, as compared to the 5% reported by Twitter, and Twitter had deprioritized removal of spam and fake accounts. ¶ 247.[4] Reading the Complaint as a whole, it is clear that the only basis pled for these claims of falsity are statements made by Musk or at his direction when he was attempting to avoid his agreement to buy Twitter. *See* ¶¶ 175-88, 196, and 199.

Plaintiffs allege that the market learned the truth regarding the mDAU statements through the following tweets and communications by or about Musk leading up to his attempt to terminate his agreement to buy Twitter (¶¶ 283-91):

- Between May 13 and May 16, Musk tweeted that his agreement to acquire Twitter was "on hold" because he needed "details" supporting Twitter's mDAU calculations, that he was conducting his own random sample of Twitter accounts and had not himself "yet" seen analysis showing fake/spam/duplicate accounts at 5% and asking how advertisers rely on mDAU;

- A July 7, 2022 *Washington Post* article reporting that Musk's agreement to purchase Twitter was "in peril," based on anonymous sources purportedly with knowledge, who claimed Musk "could not verify Twitter's claims regarding fake and spam accounts"; and

- Twitter's July 8, 2022 filing with the SEC of a letter from Musk's

---

[4] These allegations, like all allegations except those about Plaintiffs themselves, are "upon information and belief." Compl., p. 1.

counsel stating that Musk was terminating the agreement, purportedly in part because Musk had not received sufficient information to independently assess the number of fake or spam accounts on the Twitter platform.

## III.    DISCUSSION

### A.    Plaintiffs' mDAU Allegations, Based Entirely on Musk's Unproven Claims, are Inadequate to Plead Falsity.

As shown in the Company Brief, Plaintiffs' claims based on the mDAU statements are subject to dismissal for myriad reasons, including that the statements are opinions and Plaintiffs have not pled any Defendant's scienter. Company Br. at 10-11, 15-20, and 22-24. The mDAU statements are also inactionable puffery.[5] And, Plaintiffs' attempt to plead falsity suffers from an additional fatal flaw: the sole sources Plaintiffs cite for their allegations of falsity—Musk's contentions during his failed attempt to avoid his agreement to buy Twitter—are insufficient to support the element of falsity.

The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading … and, if an allegation regarding the statement or omission is made on information and belief, ... state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). In addition, the plausibility requirement announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), "is no less relevant in the context of the heightened pleading standards of Rule 9(b) or the PSLRA." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). A plaintiff

---

[5] The challenged statements expressed Defendants' "belie[f] that mDAU, and its related growth, is the best way to measure our success," ¶¶ 250-51, 262-63 (emphasis removed), and that Twitter was "continually seeking to improve our ability to estimate the total number of spam accounts," ¶¶ 257-58 (emphasis removed). *See* Weber Decl. Ex. 1 at Stmts. 19-20, 25-26, and 28-29. Statements about the "best way" and "continually seeking to improve" are quintessential puffery. *See, e.g., Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*, 2017 WL 114401, at *8 (C.D. Cal. Jan. 9, 2017) ("best"); *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) ("continuing improvements").

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; JOINDER AND MEMO. OF P&A - CASE NO. 2:22-cv-06525-MSC-E

must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The PSLRA neither allows nor requires us to check our disbelief at the door." *Nguyen*, 962 F.3d at 415.

In support of their contention that the mDAU statements were false or misleading, Plaintiffs cite only one source: the contentions of Musk when he was resisting Twitter's efforts to enforce his merger agreement. ¶¶ 175-88, 196, and 199. Where, as here, plaintiffs base their allegations of falsity on unproven allegations made by others, the contexts of those allegations are scrutinized for indicia of plausibility. Thus, for example, where a plaintiff relies on allegations attributed to confidential witnesses, a plaintiff must allege particulars supporting the conclusion "that the witnesses' allegations were reliable and based on personal knowledge, as our circuit's case law requires." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 787 (9th Cir. 2020). Similarly, a plaintiff "cannot evade the PSLRA's exacting pleading standards by merely citing an expert who makes assertions about falsity based on questionable assumptions and unexplained reasoning." *In re Nektar Therapeutics Sec. Litig.*, 34 F. 4th 828, 837 (9th Cir. 2022). Courts reject attempts by plaintiffs to plead falsity based upon "unsubstantiated complaints" from customers who accused a company of "engag[ing] in certain practices that it claims not to do." *In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *7-8 (D. Or. Nov. 24, 2021); *see Curry v. Yelp, Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017) (in a loss causation decision, refusing to infer from 2,000 customer complaints to the FTC that "where there is smoke, there must be fire"). The source's motives matter, too: allegations that merely parrot a short seller's criticism "fail[] to meet the PSLRA's 'exacting requirements for pleading "falsity."'" *Hershewe v. JOYY Inc.*, 2021 WL 6536670, at *8-9 (C.D. Cal. Nov. 5, 2021) (citation omitted); *see id.* at *4

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; JOINDER AND MEMO. OF P&A - CASE NO. 2:22-cv-06525-MSC-E

("certain indicia of reliability" required before a short seller's report could support allegations of falsity).

And, where, as here, plaintiffs base their allegations on unproven claims from other lawsuits, courts routinely find those allegations "immaterial" as a matter of law and strike them from the complaint. *See, e.g.*, *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) ("[P]aragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial.") (quoting *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *19-20 (C.D. Cal. May 5, 2011) (striking paragraphs quoting and citing "unproven, untested allegations in complaints filed in separate lawsuits, as if they were facts").

Plaintiffs' allegations based on Musk's contentions lack indicia of reliability. Plaintiffs do not allege that Musk proved his allegations, or that he had personal knowledge to support them. To the contrary, as detailed *infra* at 9-10, at the time he made these contentions, Musk simultaneously complained that Twitter had failed to give him the information he contended he wanted to confirm Twitter's public statements. *See, e.g.*, ¶ 283 ("Twitter deal temporarily on hold *pending details supporting* calculation that spam/fake accounts do indeed represent less than 5% of users."); ¶ 290 ("Musk has sought the data and information necessary to make an independent assessment of the prevalence of fake or spam accounts . . . yet Twitter has failed or refused *to provide* this information.") (emphasis added and internal quotation marks removed). And Plaintiffs concede that Musk's contentions were made in response to Twitter's effort "to force him to complete his buyout of Twitter," ¶ 175—a circumstance in which he had billions of dollars of self-interest.

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS; JOINDER AND MEMO. OF
P&A - CASE NO.  2:22-cv-06525-MSC-E

Finally, Plaintiffs' reliance on Musk's contentions suffers from the greatest imaginable indicator of implausibility because Musk eventually went through with the merger. With every incentive to prove his allegations and practically unlimited resources to fund litigation, Musk obtained massive discovery in his effort to support the mDAU contentions on which Plaintiffs rely here. That discovery included "ten broad categories of documents addressing mDAU, including documents reflecting [Twitter]'s reliance on mDAU relative to other metrics," plus "highly sensitive" information concerning 9,000 user accounts reviewed in connection with Twitter's year-end 2021 audit. *Twitter, Inc. v. Musk*, 2022 WL 3656789, at *1-2 (Del. Ch. Aug. 25, 2022). It also included the files of Beykpour, who Plaintiffs claim had "primary responsibility for growing mDAU." ¶ 194 & n.18; *Twitter, Inc. v. Musk*, 2022 WL 3592549, at *1 (Del. Ch. Aug. 15, 2022). Yet days before the trial was to begin, Musk announced he would abide by the merger agreement. *See Twitter, Inc. v. Musk*, 2022 WL 5240477, at * 1-2 (Del. Ch. Oct. 6, 2022) (staying trial at Musk's request). Not only were the contentions on which Plaintiffs rely unproven; they were abandoned by their proponent.[6] Plaintiffs have not plausibly alleged that the mDAU statements were false.

### B. Plaintiffs Fail to Adequately Allege Loss Causation as to the mDAU Statements.

Plaintiffs' improper dependence on Musk is not limited to their allegations of falsity with respect to the mDAU statements. The disclosures purportedly correcting the mDAU statements were also all made by or at the direction of Musk in the midst of his effort to walk away from his agreement to acquire Twitter, and are legally deficient for at least the following reasons:

---

[6] Indeed, in closing the deal Musk accepted that the conditions of the merger agreement were met, including Twitter's representations and warranties concerning the accuracy of its public filings.

### 1.    *The alleged corrective disclosures did not reveal any corrective information.*

Plaintiffs cannot plead loss causation by merely alleging a stock decline following a public disclosure on the general subject of mDAU—they must allege public disclosures that reveal the true information purportedly withheld by the challenged mDAU statements. *See In re BofI Holding*, 977 F.3d at 789 ("Merely purchasing shares at an inflated price, however does not cause an investor to suffer economic loss as a result of the fraud. If the defendant's fraud remains concealed, the price will usually remain inflated, allowing the plaintiff to sell her shares and recoup the inflationary component she paid.") (internal citations omitted). None of Plaintiffs' alleged corrective disclosures satisfy this requirement.

*First*, on their face, the thrust of each alleged corrective disclosure is that Musk was seeking to walk away from the Twitter acquisition. *See* ¶¶ 18-21, 283, 286, 288, and 290. That event does not reveal any new truth about the previously made mDAU statements; it invites speculation about an anticipated future event, namely whether or not Musk would acquire Twitter.

*Second*, none of the alleged corrective disclosures say anything about two of the categories of purportedly withheld information—they do not speak to whether users counted in mDAU saw ads or provided Twitter with revenue, and they do not speak to Twitter's reliance on mDAU versus other metrics. *See* ¶ 247. Thus, even assuming the mDAU statements were false or misleading on these subjects, Plaintiffs plead no correction and cannot base their claims on such allegations.

*Finally*, the alleged corrective disclosures relating to the percentage of bot or spam accounts in Twitter's mDAU calculations do not purport to correct the calculations disclosed in the mDAU statements. Rather, the statements Plaintiffs allege as corrective disclosures concern whether Twitter had provided sufficient information to Musk about the mDAU calculations. *See* ¶ 283 ("Twitter deal temporarily on hold *pending details supporting* calculation that spam/fake accounts

do indeed represent less than 5% of users."); ¶ 286 ("I have *yet to see* *any* analysis that has fake/spam/duplicates at 5%"); ¶ 288 ("Musk and his team concluded that they *could not verify* Twitter's claims regarding fake and spam accounts."); ¶ 290 ("Musk has sought the data and information necessary to make an independent assessment of the prevalence of fake or spam accounts . . . yet Twitter has failed or refused *to provide* this information.") (emphasis added and internal quotation marks removed). A statement that Twitter has not provided certain information to support its mDAU calculation is not a corrective disclosure informing the market that the calculation was false or misleading.

### 2.    *The alleged corrective disclosures are not statements of fact.*

Even if certain of the alleged corrective disclosures by Musk suggested that *he* questioned Twitter's mDAU calculations, Plaintiffs have not plausibly alleged that the market would have interpreted these statements as facts correcting Twitter's prior disclosures. *In re BofI Holding*, 977 F.3d at 792 ("[T]he relevant question for loss causation purposes is whether the market reasonably *perceived* [the alleged corrective disclosures] as true and acted upon them accordingly.") (emphasis in original). Indeed, for the same reasons that Musk's contentions are not "facts" sufficient to allege falsity—his acknowledged lack of necessary information and his interest in scuttling the Twitter merger agreement—they also cannot serve as corrective disclosures.

Specifically, all of the alleged corrective disclosures were statements made by or at the direction of Musk at a time when he was in the midst of a contractual dispute with Twitter over what information he was entitled to, and whether the failure to provide that information entitled him to terminate his agreement to acquire Twitter. *See* ¶¶ 279-90. Musk had personal motivations for speaking about Twitter, which may have included putting pressure on Twitter to provide him with more information or trying to justify terminating the merger agreement. These

personal motivations were known to the market, as was Musk's explicit claim that he did not have the information he needed to reliably analyze Twitter's disclosures. ¶¶ 283, 286, 288, and 290. These facts would have led the market to take Musk's statements with "a healthy grain of salt," and therefore disqualify the statements as corrective disclosures. *See In re BofI Holding*, 977 F.3d at 797 (short seller reports that disclose the author's financial interest in a stock's price decline, and disavow any claims of factual accuracy are not plausible corrective disclosures because the market would take them with a "healthy grain of salt"); *Nektar Therapeutics*, 34 F. 4th at 840 (same).

Plaintiffs' own allegations, thus, establish that none of the statements made by or derived from Musk are viable corrective disclosures for the additional reason that Musk was a self-interested speaker.

### 3. *The market already had information regarding inaccuracies in the mDAU calculations.*

Not only have Plaintiffs failed to adequately plead that any disclosure corrected any mDAU statement, they also cannot plead loss causation because the allegedly withheld information about inaccuracies in the mDAU calculation was already known to the market. *See, e.g.*, *Meyer v. Greene*, 710 F.3d 1189, 1197-98 (11th Cir. 2013) ("[C]orrective disclosures must present facts to the market that are new.") (citations omitted); *Rok v. Identiv*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) (rejecting loss causation allegations where company's announcement "added no new information" on the subject of the alleged fraud) (citing *Meyer*).

Here, Plaintiffs themselves allege, on April 28, 2022, "Twitter restated its mDAU for Q4 2020 and each quarter of 2021, acknowledging that it had double counted millions of users." ¶ 279.[7] Twitter therefore disclosed that the mDAU

---

[7] mDAU was overstated by an immaterial amount and still had quarter over quarter growth; Plaintiffs do not allege any corresponding stock drop on April 28, 2022. *See id.* Absent a stock drop, this disclosure also cannot be a corrective disclosure for loss causation purposes. *See In re BofI Holding*, 977 F.3d at 790 ("Even if the

metric was miscalculated weeks prior to Plaintiffs' first alleged corrective disclosure. Accordingly, to the extent the alleged corrective disclosures suggested that mDAU was not accurately reported, they were not disclosing new information to the market.

**C.      Plaintiffs Fail to Adequately Plead Their Section 20(a) Claim Against Any of the Individual Defendants.**

Plaintiffs' Section 20(a) claim against the Individual Defendants fails because the Complaint fails to plead an underlying Section 10(b) violation. *Nguyen*, 962 F.3d at 419.

Plaintiffs' Section 20(a) claim also fails because Plaintiffs do not plead facts showing that any of the Individual Defendants "exercised actual power or control over the primary violator" for statements they did not make. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (quotation omitted). Plaintiffs merely make the conclusory assertion that, by virtue of their positions, they "had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Lead Plaintiffs contend were false and misleading." ¶ 315. These types of conclusory allegations are insufficient to establish Section 20(a) liability. *See Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (dismissing Section 20(a) claim based on similar conclusory allegations because "[t]he fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a controlling person") (quotation omitted); *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018) ("[C]onclusory allegations of control over day-to-day

true facts concealed by the fraud are revealed to the market, the plaintiff must still show that the disclosure of the truth caused the company's stock price to decline.").

activities are insufficient to establish control person liability.").

Plaintiffs' allegations are particularly inadequate given that many of the challenged statements are verbal statements made by particular individuals during interviews, presentations, earnings calls, tweets, and conferences. Plaintiffs do not allege that any Individual Defendant had control over what the other Individual Defendants said during these interviews, presentations, calls, tweets and conferences. *See, e.g., Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007). Moreover, as to Beykpour and Dorsey, many of the challenged statements were made after they separated from Twitter.

## IV.   CONCLUSION

For the reasons stated in this memorandum and the Company Brief, the Individual Defendants respectfully request that the Court dismiss all claims against them with prejudice.

Respectfully Submitted,

Dated: March 31, 2023

SIDLEY AUSTIN LLP

By */s/ David L. Anderson*
David L. Anderson (SBN 149604)
dlanderson@sidley.com
Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants Parag Agrawal, Ned Segal, Vijaya Gadde and Kayvon Beykpour*

Dated: March 31, 2023

MUNGER, TOLLES & OLSON LLP

By */s/ George M. Garvey*
George M. Garvey (SBN 89543)
george.garvey@mto.com

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS; JOINDER AND MEMO. OF
P&A - CASE NO. 2:22-cv-06525-MSC-E

Abraham R. Oved (SBN 335927)
avi.oved@mto.com
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100

*Attorneys for Defendant Jack Dorsey*

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS; JOINDER AND MEMO. OF
P&A - CASE NO. 2:22-cv-06525-MSC-E

## CIVIL L.R. 5-4.3.4(a)(2)(i) ATTESTATION

I, David L. Anderson, am the ECF user whose ID and password are being used to file DEFENDANTS JACK DORSEY, PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE AND KAYVON BEYKPOUR'S NOTICE OF MOTION AND MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT; JOINDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF. In compliance with Civil Local Rule 5-4.3.4(2)(i), I hereby attest that counsel for all signatories listed on the signature page have concurred in this filing.

Dated:  March 31, 2023            By:    /s/ *David L. Anderson*
                                           David L. Anderson

## CIVIL L.R. 11-6.1 CERTIFICATE OF COMPLIANCE

I, David L. Anderson, the undersigned, counsel of record for Individual Defendants, certifies that this brief contains 3,882 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 31, 2023            By:    /s/ *David L. Anderson*
                                           David L. Anderson