LATHAM & WATKINS LLP
Michele D. Johnson (CA Bar No. 198298)
  *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
  *whitney.weber@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
  *andrew.clubok@lw.com*
Susan E. Engel (*Pro Hac Vice*)
  *susan.engel@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, MOHAMMED THASEEN, JILL SLIGAY, LENARD ROQUE, and AMOLKUMAR VAIDYA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., JACK DORSEY, NED SEGAL, PARAG AGRAWAL, VIJAYA GADDE, and KAYVON BEYKPOUR,<br><br>Defendants. | Case No. 2:22-cv-06525-MSC-E<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:  Hon. Mark C. Scarsi<br>Date:  April 24, 2023<br>Time:  9:00 a.m.<br>Place:  Courtroom 7C<br><br>*[Declaration in Support; Request for Judicial Notice and [Proposed] Orders concurrently filed herewith]* |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 24, 2023[1] at 9:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Mark C. Scarsi, District Judge, United States District Court for the Western District of California, in the First Street Courthouse, Courtroom 7C, 350 W. 1st Street, Los Angeles, CA 90012, Defendant Twitter, Inc. ("Twitter") will, and hereby does, move to dismiss the Corrected Amended Class Action Complaint ("Complaint") of Plaintiffs William Baker, Mohammed Thaseen, Jill Sligay, Lenard Roque, and Amolkumar Vaidya (collectively, "Plaintiffs") pursuant to the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure ("FRCP") 12(b)(6) on grounds that the Complaint fails to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 7, 2023, and is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, the Declaration of Whitney W. Weber and the exhibits thereto, the Complaint, all pleadings and papers in this action, other evidence that may be presented prior to the Court's decision on this Motion, and any oral argument of counsel.

Dated:  March 31, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michele D. Johnson*
Michele D. Johnson (CA Bar No. 198298)
  michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

---

[1] The parties filed a stipulation requesting that the Court set the hearing date for May 22, 2023, or as soon thereafter as is convenient.  Dkt. 84.

Whitney B. Weber (CA Bar No. 281160)
  whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
  andrew.clubok@lw.com
Susan E. Engel (*Pro Hac Vice*)
  susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      Twitter and Individual Defendants .....................................................2

        B.      Twitter Promptly Discloses an Attack and Announces Steps to Enhance Security ..............................................................2

        C.      Zatko Files Whistleblower Complaint, and This Lawsuit Follows .....................................................................................4

III.    LEGAL STANDARDS .........................................................................................4

IV.     ARGUMENT .........................................................................................................5

        A.      Plaintiffs' Puzzle Pleading Warrants Dismissal ................................5

        B.      Plaintiffs Do Not Plead Falsity With Particularity ...........................7

                1.      Most Challenged Statements Are Non-Actionable Puffery ......................................................................7

                2.      Many Challenged Statements Are Non-Actionable Opinions .....................................................................8

                3.      Many Challenged Statements Are Protected by the PSLRA Safe Harbor .........................................................9

                4.      Plaintiffs Fail to Plead Falsity .........................................9

        C.      Plaintiffs Fail to Allege a Strong Inference of Scienter ....................15

                1.      Plaintiffs Do Not Plead Scienter Based on Motive .................16

                2.      Plaintiffs Do Not Plead Facts Showing Fraudulent Intent or Deliberate Recklessness.............................................17

                3.      Plaintiffs Do Not Allege a Strong Inference of Scienter as to Twitter ....................................................20

        D.      Plaintiffs Fail to Plead Loss Causation With Particularity ................20

V.      CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abe v. AFCH, Inc.*,
2022 WL 159728 (C.D. Cal. Jan. 18, 2022)........................................................................9

*Barnes v. Edison Int'l*,
2021 WL 2325060 (C.D. Cal. Apr. 27, 2021),
*aff'd*, 2022 WL 822191 (9th Cir. Mar. 18, 2022)............................................................7, 8

*Brady v. Delta Energy & Commc'ns, Inc.*,
2022 WL 3643659 (C.D. Cal. Aug. 5, 2022) .....................................................................14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...............................................................................................9

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ........................................................................................17, 20

*Golubowski v. Robinhood Markets, Inc.*,
2023 WL 1927616 (N.D. Cal. Feb. 10, 2023)...................................................8, 10, 11, 15

*Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*,
2017 WL 114401 (C.D. Cal. Jan. 9, 2017)..........................................................................7

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022) .....................................................................18

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012)...........................................................................7, 8

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ........................................................................................20, 21

*In re Eargo, Inc. Sec. Litig.*,
2023 WL 1997918 (N.D. Cal. Feb. 14, 2023)...........................................................5, 9, 12

*In re ECOtality, Inc. Sec. Litig.*,
2014 WL 4634280 (N.D. Cal. Sept. 16, 2014).............................................................17, 18

*In re Facebook, Inc. Sec. Litig.*,
405 F. Supp. 3d 809 (N.D. Cal. 2019)...............................................................................13

*In re FuboTV Inc. Sec. Litig.*,
2023 WL 2711826 (S.D.N.Y. Mar. 30, 2023) ...................................................6

*In re Herbalife, Ltd. Sec. Litig.*,
2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) .................................................21

*In re Lantronix, Inc.*,
2003 WL 23198818 (C.D. Cal. Dec. 31, 2003) ...............................................22

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ........................................................................5

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ...............................................5, 12

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019) ......................................................7, 10

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ...............................................................4, 14, 18

*In re Solarcity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017)............................................................16

*Iron Workers Local 580 Join Funds v. NVIDIA Corp.*,
522 F. Supp. 3d 660 (N.D. Cal. 2021)............................................................19

*Kain v. ACM Research, Inc.*,
2021 WL 5998396 (N.D. Cal. Dec. 20, 2021) ................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...........................................................................9

*Killyoung Oh v. Hanmi Fin. Corp.*,
2021 WL 1566849 (C.D. Cal. Mar. 17, 2021) .................................................6

*Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022)..........................................................................4

*McGovney v. Aerohive Networks, Inc.*,
2019 WL 8137143 (N.D. Cal. Aug. 7, 2019)..................................................18

*Mendoza v. HF Foods Grp. Inc.*,
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)................................5, 6, 16, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)................................................................18

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020)...........................................................15, 16

*Nozak v. N. Dynasty Minerals Ltd.*,
    804 F. App'x 732 (9th Cir. 2020)...........................................................20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .................................................................................8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)......................................................4, 5, 20

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014).............................................................8, 9

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ................................................13

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021)..........................................................16, 17

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Sup. 3d 1213 (C.D. Cal. 2015)......................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................4, 15, 20

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019)..................................5, 6, 18, 19

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018)....................................................5

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) .........................................18

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022).............................................................12, 13

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021).................................................................11

## STATUTES

15 U.S.C. § 78u-5(c)(1) ..................................................................................................... 9

Private Securities Litigation Reform Act of 1995 ............................................. *passim*

Rule 10b-5 of the Securities Exchange Act ...................................................................... 4

Section 10(b) of the Securities Exchange Act ................................................................... 4

## RULES

Rule 9(b) ................................................................................................................. 4, 5, 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Complaint is a morass of attacks on dozens of statements made over a two-year period that parrot a whistleblower complaint filed in summer 2022.  None of Plaintiffs' challenges state a claim for securities fraud.

On July 15, 2020, hackers successfully targeted a few Twitter employees and seized control of certain high-profile Twitter accounts.  Twitter promptly disclosed the attack, implemented stringent measures to take back control, and announced additional efforts to improve the security and privacy of user accounts, including hiring Peiter Zatko to head its security efforts.  Two years later, following his firing, Zatko filed a whistleblower complaint alleging that Twitter's efforts were inadequate and implying that one of its key business metrics undercounted spam and bots.  Plaintiffs' lawsuit followed, repeating Zatko's unadjudicated allegations.  Zatko's (and Plaintiffs') opinion that Twitter should have done something "better" or differently falls far short of stating a claim for securities fraud.

To start, Twitter repeatedly warned investors that it "cannot guarantee that our preventative efforts will be successful," that it "experience[s] cyber-attacks of varying degrees on a regular basis," and that Twitter was "constantly working to balance how we build products and provide support to people who use Twitter while ensuring the security and privacy of people."  Twitter also disclosed that the challenged business metric, monetizable Daily Active Users ("mDAU"), included some "false or spam accounts," and that the amount of false or spam accounts "could be higher than we have estimated."  Plaintiffs fail to allege a single undisclosed fact that contradicts any of Defendant's statements, and thus have not pled falsity.  And most of the challenged statements are nonactionable puffery, non-actionable opinion and/or protected by the PSLRA safe harbor.

The Complaint also has no scienter allegations.  Plaintiffs do not allege that Defendants sought to profit from the alleged wrongdoing during the Class Period

by, for example, selling stock. Nor do they allege facts suggesting Defendants acted with an intent to defraud or with deliberate recklessness in making any challenged statement. In fact, in the 111-page Complaint, Plaintiffs use the word "scienter" only once, and do not even include a distinct scienter section. As with their scattershot approach to falsity, Plaintiffs impermissibly leave to Defendants and the Court the task of parsing through allegations to guess their theories.

The PSLRA imposes stringent requirements on plaintiffs seeking to plead a fraud claim. For good reason. Fraud is a serious accusation. Plaintiffs' approach—throwing unfounded allegations at the wall to see what sticks—comes nowhere close to meeting that high burden. The Complaint should be dismissed in its entirety.

## II.    BACKGROUND

### A.    Twitter and Individual Defendants

Twitter is a global social-media platform with 450 million monthly active users. Compl.[2] ¶¶ 31, 49. Jack Dorsey co-founded Twitter, and served as Twitter's CEO from the start of the Class Period through November 29, 2021, when Parag Agrawal became CEO. *Id.* ¶¶ 32-33. Ned Segal was Twitter's CFO and Vijaya Gadde its CLO throughout the Class Period, and Kayvon Beykpour was General Manager of Twitter's Consumer Department until May 12, 2022. *Id.* ¶¶ 34-36.

### B.    Twitter Promptly Discloses an Attack and Announces Steps to Enhance Security

On July 15, 2020, attackers targeted certain Twitter employees through a phishing attack. Ex. 3; Compl. ¶¶ 51-54. The attackers gained access to Twitter's internal systems using employee credentials, and took over several high-profile Twitter accounts. Compl. ¶¶ 51-54. Twitter acted immediately to stop the attack, imposing a "system-wide shutdown of [employees'] system access" and requiring

---

[2] Defined terms are included in the Glossary. Ex. 2. All Exhibits are attached to the concurrently filed Declaration of Whitney Weber.

every employee to manually change their passwords in front of their supervisor. Compl. ¶ 53; Ex. 4.

Twitter promptly informed users about the attack.  In a July 18, 2020 blog post, Twitter detailed "what happened," what the Company was doing in response (including investigating and implementing "preemptive measures"), and disclosed what information the attackers accessed.  Ex. 3.  In its August 3, 2020 quarterly report, Twitter again disclosed the "coordinated social engineering attack," explaining that attackers "gain[ed] control of a subset of [high-profile] accounts," "sen[t] Tweets from those accounts and access[ed] non-public information relating to at least some of those accounts."  Ex. 5 (2Q20 10-Q) at 54.  Twitter warned that the breach "may have harmed the people and accounts affected by it," and could "impact the market perception of the effectiveness of our security measures."  *Id*.

Two months later, Twitter provided updates on its "continued work to keep Twitter secure" following the attack, including:

- "grant[ing]" access to customer data only "for valid business reasons";
- "strengthening the rigorous checks that team members with access must undergo";
- "expanding our detection and response efforts to include suspicious authentication and access activity";
- "introduc[ing] two new mandatory training sessions for people who have access to non-public information"; and
- "rolling out phishing-resistant security keys."

Ex. 6.  Twitter also announced that it was hiring Peiter Zatko as Twitter's Head of Security.  Compl. ¶¶ 39, 58.

Despite striving to improve security, Twitter did not and could not guarantee "that [its] preventative efforts will be successful."  Ex. 7 (3Q20 10-Q) at 53.  It warned investors that privacy and "security incidents, including those caused by

unintentional errors and those intentionally caused by third parties," could occur—and that "cyber-attacks of varying degrees" occurred "on a regular basis." *Id.*

### C.   Zatko Files Whistleblower Complaint, and This Lawsuit Follows

On August 23, 2022, the *Washington Post* reported that Zatko had filed a whistleblower complaint alleging Twitter failed to "maintain solid security practices." Ex. 8; Compl. ¶ 292. Twitter denied the allegations as "riddled with inaccuracies." Ex. 8. Twitter's stock price dropped from $43.01 to $39.86, but quickly recovered. Compl. ¶ 293; Ex. 9. By October 23, 2020, Twitter shares were trading at $53.70, and on October 27, 2022, Elon Musk purchased Twitter, paying $54.20 for every share. Ex. 9; Compl. ¶¶ 33, 41.

Within a month of the *Washington Post* article, Plaintiff Baker filed this action. The Court appointed Baker as Lead Plaintiff. Dkt. 50 at 5. He filed an amended complaint on February 13, 2023, but added four more plaintiffs without Court approval. After the Court granted leave to amend, Plaintiffs filed a Corrected Amended Complaint on March 9, 2023 ("Complaint"). Dkt. 81. Plaintiffs challenge statements about Twitter's security efforts and mDAU, as well as statements about privacy, state actors, and intellectual property.

## III.   LEGAL STANDARDS

A claim for securities fraud under Section 10(b) and Rule 10b-5 of the Securities Exchange Act is subject to the "[e]xacting pleading requirements" of both Rule 9(b) and the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). These "heightened pleading requirements . . . present no small hurdle," *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1096 (9th Cir. 2022), and plaintiffs must plead each element with particularity, *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.,* 774 F.3d 598, 605 (9th Cir. 2014). To plead falsity, Plaintiffs must identify statements that are "capable of objective verification," *id.* at 606, and demonstrably "false or misleading at the time they were made," *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). To plead a strong

inference of scienter, Plaintiffs must allege that Defendants "made false or misleading statements either intentionally or with deliberate recklessness," *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1151 (C.D. Cal. 2018)—with the recklessness standard "much closer to one of intent," *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). And to plead loss causation, Plaintiffs must show a "causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the [Plaintiffs]." *Apollo*, 774 F.3d at 608.

## IV. ARGUMENT

### A. Plaintiffs' Puzzle Pleading Warrants Dismissal

Plaintiffs' Complaint should be dismissed because it does not approach the standard required by the PSLRA and Rule 9(b). In their lengthy Complaint, Plaintiffs copy-and-paste whistleblower allegations, and then argue that dozens of statements on multiple topics made over two years were misleading for failing to disclose those same allegations. This pleading strategy fails for two reasons.

***First***, whistleblower allegations are not facts. They are allegations, which "are not tested or adjudicated," and are "not evidence of fraud"—particularly where (as here) Defendants dispute the allegations. *In re Eargo, Inc. Sec. Litig.*, 2023 WL 1997918, at *14 (N.D. Cal. Feb. 14, 2023); *see ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Sup. 3d 1213, 1263 (C.D. Cal. 2015) ("allegations in an SEC order" do not state a claim); Ex. 8. Nor were Defendants required to "disclos[e] unproven allegations" the whistleblower made. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019). "Federal securities laws do not impose upon companies a 'duty to disclose uncharged, unadjudicated wrongdoing.'" *In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018).

***Second***, Plaintiffs' Complaint is improper puzzle pleading because it "prevents meaningful analysis of" Plaintiffs' claims. *Mendoza v. HF Foods Grp.*

*Inc.*, 2021 WL 3772850, at *12 (C.D. Cal. Aug. 25, 2021).  Plaintiffs include over 70 pages of "background" allegations on many unrelated topics.  Compl. ¶¶ 1-204.  It is not until Paragraph 205 that Plaintiffs list any allegedly false statements, which they include in block quotes "unaccompanied by the pleading of specific facts indicating why those statements were false." *LendingClub*, 423 F. Supp. 3d at 805.  But Plaintiffs' "bolding 'does little to assist'" in identifying *with particularity* why Defendants' statements were false, *In re FuboTV Inc. Sec. Litig.*, 2023 WL 2711826, at *12 (S.D.N.Y. Mar. 30, 2023), and their "inconsistent use of emphasis [and] use of cross-references" is improper, *Mendoza*, 2021 WL 3772850, at *12.  Under the PSLRA, Plaintiffs must "craft a clear and concise complaint," explaining "the reasons why statements were false and misleading" (**falsity**), what information Defendants allegedly knew at the time of the statement (**scienter**), and how the "truth" was revealed and caused investors' losses (**loss causation**).  *Id.* at *5, *12.

Plaintiffs' Complaint fails on each score.  To provide one example:  Plaintiffs note that Twitter filed nine quarterly and annual reports between August 3, 2020 and July 26, 2022.  Compl. ¶ 206.  Plaintiffs then include a block quote from what they say was in all of those filings—bolding a sentence stating, "[w]e are also taking steps to secure our systems while our investigations are ongoing[]"—and assert that all nine filings were false for the same "omnibus" reasons.  *Id*. ¶¶ 211, 213-14.  But the emphasized sentence only appeared in *one* of those Class Period Reports.  Ex. 5 (2Q20 10-Q) at 54.  Nor do Plaintiffs "match th[os]e statements up with the reasons they [were] false or misleading" based on information that was ***known at the time of each*** statement.  *Killyoung Oh v. Hanmi Fin. Corp.*, 2021 WL 1566849, at *8 (C.D. Cal. Mar. 17, 2021).  Plaintiffs likewise do not explain how the alleged "truth" about those statements was revealed to the market—they don't even quote the *Washington Post* article they claim "revealed that Twitter had misled investors."  Compl. ¶ 292.  "Neither the courts nor [D]efendants should have to wade through [such a] morass of 'puzzle pleadings.'" *Mendoza*, 2021 WL 3772850, at *12.

**B.     Plaintiffs Do Not Plead Falsity With Particularity**

Apart from the puzzle pleading, Plaintiffs' claims should be dismissed because they fail to plead facts supporting any material misstatement or omission.

**1.     Most Challenged Statements Are Non-Actionable Puffery**

Most of the challenged statements constitute "generalized assertions of corporate optimism or statements of mere puffing" that are not actionable under the securities laws. *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (internal quotations omitted).

For example, Plaintiffs challenge statements describing efforts to improve security and combat misinformation, including:

- "we have been strengthening [team members'] rigorous checks," "[w]e have strict principles," "[internal] tools are constantly being improved," and access is "substantially lower today," Compl. ¶¶ 232, 244;
- "we've also enhanced training," and have "been investing in additional [measures] to help secure Twitter," *id.* ¶¶ 234, 236; and
- Twitter has "taken a number of important steps," and is "constantly looking for opportunities," *id.* ¶ 240.

*See also* Ex. 1 at Stmts. 7, 11, 12, 13, 14, 16, 18, 30 and 33 (Compl. ¶¶ 223, 230, 232, 234, 236, 240, 244, 265, 270). Courts routinely dismiss such unspecific, "subjective assessments." *Barnes v. Edison Int'l*, 2021 WL 2325060, at *9 (C.D. Cal. Apr. 27, 2021), *aff'd*, 2022 WL 822191 (9th Cir. Mar. 18, 2022); *see also Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*, 2017 WL 114401, at *9 (C.D. Cal. Jan. 9, 2017) ("enhanced," "improved"); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1072-73 (C.D. Cal. 2012) ("strong," "improved," "continuing improvements").

Plaintiffs also challenge aspirational statements about Twitter's commitment to privacy, including:

- "[o]ur privacy efforts have enabled people around the world using Twitter to protect their own data," Compl. ¶ 218;

- "[w]e were so proud to roll [timeline changes] out," *id.* ¶ 225;

- "[w]e also feel like we've built up a lot of trust with the people who use our service," and "worked really hard" to do so, *id.* ¶¶ 227-228;

- "[k]eeping data secure and respecting privacy is something we take extremely seriously," *id.* ¶ 242.

*See also* Ex. 1 at Stmts. 3, 4, 5, 6, 8, 9, 10, 15, 16 and 17 (Compl. ¶¶ 216, 218, 220-21, 225, 227, 228, 238, 240, 242). Courts consistently hold that such statements "represent the 'feel good' speak that characterizes 'non-actionable puffing.'" *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *see also Barnes*, 2021 WL 2325060, at *9 ("prioritization, improvement, and funding of safety procedures"); *Golubowski v. Robinhood Markets, Inc.*, 2023 WL 1927616, at *9 (N.D. Cal. Feb. 10, 2023) (seeking to "empower" users); *Am. Apparel*, 855 F. Supp. 2d at 1072-73 ("significant," "continuing improvements," "accomplishments we have achieved," "expressions of pride," "high priority").

### 2. Many Challenged Statements Are Non-Actionable Opinions

Many of the challenged statements are also nonactionable opinions marked by qualifiers like "we believe," "think," "feel," "hope," "want," or are "proud," Ex. 1 at Stmts. 4, 8, 9, 10, 19, 20, 22, and 30 (Compl. ¶¶ 218, 220, 225, 227-28, 250-51, 254, 265), which do not "express[] certainty about" anything, *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015). Defendants' estimates of false or spam accounts in Twitter's mDAU, Ex. 1 at Stmts. 23-24, 31 (Compl. ¶¶ 255-56, 267), are also opinions because, as Defendants disclosed, "we apply significant judgment in making this determination," and the estimates "may not accurately represent the actual number of such accounts," Ex. 5 (2Q20 10-Q) at 61. *See Omnicare*, 575 U.S. at 186 (securities laws do "not allow investors to second guess inherently subjective and uncertain assessments"); *see also*

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) ("goodwill valuations are opinion statements because they 'are inherently subjective and involve management's opinion regarding fair value'"). Opinion statements are only actionable in three narrow circumstances, none of which are alleged here. *See Align Tech.*, 856 F.3d at 615-16.

### 3.   Many Challenged Statements Are Protected by the PSLRA Safe Harbor

Several statements also fall within the PSLRA's safe harbor for forward-looking statements. Ex. 1 at Stmts. 2, 3, 5, 13, 14, 16, 20, 25, 26, 29 and 34 (Compl. ¶¶ 214, 216, 220, 234, 236, 240, 251, 257-58, 263, 265, 272); *see also Intuitive*, 759 F.3d at 1058 (discussing 15 U.S.C. § 78u-5(c)(1)). All of these statements were "identified as forward looking and [] accompanied by meaningful cautionary statements." *Id.*; *see also, e.g.*, Ex. 5 (2Q20 10-Q) at 3, 53-54, 55-56, 59, 61; Ex. 10 at 1. Moreover, none are actionable because Plaintiffs fail to allege any particular facts regarding actual knowledge of falsity. *See In re Eargo*, 2023 WL 1997918, at *9; *infra*, Section IV.B4.

### 4.   Plaintiffs Fail to Plead Falsity

Plaintiffs also fail to adequately allege falsity because they do not "point to [any] statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1008 (9th Cir. 2018); *see also Abe v. AFCH, Inc.*, 2022 WL 159728, at *5 (C.D. Cal. Jan. 18, 2022).

***Statements relating to security.*** Plaintiffs fail to allege falsity for any security-related statements—including a risk disclosure about cyber-attacks, Ex. 1 at Stmts. 1-2 (Compl. ¶¶ 213-14), and statements in Twitter's September 24, 2020 blog post and a *Wired* article disclosing Twitter's efforts to enhance security after the July 2020 attack, Ex. 1 at Stmts. 12-15, 18 (Compl. ¶¶ 232, 234, 236, 238, 244). At most, Plaintiffs parrot Zatko's allegations that Twitter's enhancements were not sufficiently "meaningful." *Id.* ¶ 233 (too many employees still had access to data);

*id.* ¶ 235 ("very few" products had threat modeling), *id.* ¶ 237 (internal penetrating testing not "meaningful"); *id.* ¶ 239 (use of "regular engineers" instead of "trained Privacy Engineers"). But a securities-fraud claim requires particular allegations of "falsity, not inadequacy." *Restoration Robotics*, 417 F. Supp. 3d at 1258.

The challenged statements do not promise the elimination of security incidents or weak spots (such as employee access to user accounts). *See Robinhood*, 2023 WL 1927616, at *10 (it "can be simultaneously true" that a company faced customer service issues while striving to "create a positive customer service experience"). Rather, as Twitter explained in its September 24, 2020 blog post, many of its employees "need to access customer data to provide account services and keep Twitter running," which is why it is "constantly working to balance how we build products and provide support to people who use Twitter while ensuring the security and privacy of people who use our service." Ex. 6. Twitter also made clear that security improvements "will always be ongoing work for us," but that "[w]here we discover an issue, we will work quickly to fix it, learn from it, and hold ourselves accountable by keeping you informed." *Id*. That's exactly what Twitter did in its transparent response to the July 2020 attack. *Supra*, Section II.B.

Nor do Plaintiffs allege particular facts suggesting that Twitter did *not* implement the improvement measures it described. For example, Plaintiffs fail to allege that Twitter did ***not*** "only grant[] employees' account access for valid business reasons," Ex. 6; Compl. ¶ 232, "introduce[] two new mandatory training sessions," Compl. ¶ 234, "invest[] in additional penetration testing and scenario planning to help secure Twitter," *id.* ¶ 236, or "increase the number of privacy reviews," *id.* ¶ 238. Instead, Plaintiffs complain that Twitter failed to disclose that it was not taking ***even more*** steps to improve security. *Compare id.* ¶¶ 232, 234, 236, 238 (describing Twitter's enhancements) *with id.* ¶¶ 233, 235, 237, 239 (describing Plaintiffs' wish list). But mere disagreement with how Twitter secured

its systems "does not mean that [Twitter] violated the [securities laws] by choosing a different corporate approach." *Robinhood*, 2023 WL 1927616, at *10.

Plaintiffs fare no better with the risk disclosure that expressly warned investors that Twitter "experience[s] cyber-attacks of varying degrees on a regular basis," and even specifically disclosed the July 2020 attack. Compl. ¶¶ 213-14; *see Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (risk disclosure not misleading when company disclosed it "*has* 'experienced to date'" the purportedly omitted issue). Plaintiffs do not allege facts showing that Twitter was **not** "taking steps to secure its systems" at the time the statements were made. And Zatko's whistleblower allegations only **confirm** Twitter's warning that it "cannot provide assurances that our preventative efforts will be successful." Compl. ¶ 213.

***Statements relating to privacy.*** Plaintiffs also fail to allege falsity for any privacy-related statements, including Twitter's risk disclosure about failure to comply with privacy laws, and Defendants' discussion of users' "choices" about how Twitter uses their data. *See, e.g.,* Ex. 1 at Stmts. 3-6, 8-10 (Compl. ¶¶ 216, 218, 220-21, 225, 227-28). Plaintiffs' claim that Twitter supposedly "knew that it did not comply with applicable privacy and data protection laws," and could not respect users' privacy, Compl. ¶¶ 217, 219, 222, 226, 229, 242, is ungrounded in any factual allegations and ignores Defendants' disclosures.

For the risk disclosure (*id.* ¶ 216), Plaintiffs omit the preceding sentence in the Form 10-Q that "[f]rom time to time, governments, regulators and others have expressed concerns about whether our products, services or practices compromise the privacy or data protection rights of the people on Twitter and others." Ex. 5 (2Q20 10-Q) at 56. And while Plaintiffs allege, more than 50 pages earlier in the Complaint (¶¶ 55-56), that Twitter violated an FTC consent order by supposedly using contact information for advertising, Twitter **disclosed** that FTC complaint— not just in an August 3, 2020 announcement (*id.* ¶ 55) but also in ***the same 10-Q***. Ex. 5 (2Q20 10-Q) at 57. Defendants were not required to admit the FTC's

allegations, *In re Paypal*, 2018 WL 466527, at *3—which were settled without any admission of liability, Ex. 12 (2Q22 10-Q) at 73; *see In re Eargo*, 2023 WL 1997918, at *14 ("A government investigation is not evidence of fraud, especially where the investigation ended with a settlement that disclaims liability.").

For the other scattershot privacy-related statements, Plaintiffs nowhere identify any facts showing that Defendants failed to, as Twitter stated, "offer a range of ways" for users to control the data that Twitter collected or limit how Twitter used it, Compl. ¶ 218, nor do they allege any facts suggesting that Twitter used "data for whatever it wished," *id.* ¶ 226, or had not "ended the practice" the FTC complained about "as of September 17, 2019," *id.* ¶ 243.

***Statements relating to misinformation.*** Plaintiffs challenge statements concerning Twitter's efforts to fight misinformation, including Defendant Segal's response to an analyst question about content moderation that the Company was "very careful around an election," *id.* ¶ 223; Defendant Agrawal's response to another question about events in Russia and Ukraine that "over the years, we've been very, very transparent" about state actors' attempts "to manipulate the conversation," *id.* ¶ 230; and a November 26, 2020 blogpost about disclosure of 35 separate "state-backed information operations," *id.* ¶ 240; Ex. 1 at Stmts. 7, 11 and 16. Plaintiffs say these statements were misleading because Twitter did not disclose its purportedly deficient "language capacity" or a particular India-based misinformation campaign. Compl. ¶¶ 224, 231, 241. But none of the challenged statements purport to speak about whether Twitter employs foreign-language speakers, *id.* ¶ 97(b), nor did Twitter purport to disclose every misinformation campaign in the challenged blog post. *See Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 615 (9th Cir. 2022) (securities laws "do not require real-time business updates or complete disclosure of all material information").

***Statement relating to intellectual property.*** Plaintiffs challenge an intellectual-property-violation risk disclosure in three Twitter SEC filings, Ex. 1 at

Stmt. 34 (Compl. ¶ 272), alleging that the disclosure was misleading because Defendants supposedly "knew that Twitter's key products **did** violate others' intellectual property rights." Compl. ¶ 273. Nonsense. Twitter disclosed that "we have faced" and "we presently are involved in" legal claims involving intellectual property rights, Ex. 5 (2020 10-Q) at 28, 45, 57, 59—and had no obligation to declare itself liable for unproven allegations. *See In re Facebook, Inc. Sec. Litig.,* 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("'self-flagellation' by disclosing unproven allegations" not required).

*Statements relating to mDAU.*   Plaintiffs challenge a slew of statements relating to mDAU, including statements about Twitter's "belie[fs]" about the metric "and its related growth," and the Company's "estimate[s]" of false or spam accounts" in mDAU. Ex. 1 at Stmts. 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 33 (Compl. ¶¶ 250-52, 254-59,262-63, 265 267-70). Plaintiffs claim these statements were misleading for scattershot reasons, all meritless.

*Other Metrics.*   Plaintiffs claim Defendants' statements were misleading because Twitter also used another metric (UAM) "to measure user engagement." Compl. ¶ 253. But Twitter never said it did not also rely on other internal metrics. To the contrary, Twitter disclosed that it "review[s] *a number of metrics,* including" mDAU. Ex. 5 (2Q20 10-Q) at 5 (emphasis added); *see id*. at 32 (similar); Ex. 10 at 14 ("there are a variety of metrics that help us gauge whether our product solutions are working"). Regardless, Twitter had no duty to compare mDAU to any other metric or provide such a comparison to investors, even if investors may have found the additional information helpful. *See Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1115–16 (N.D. Cal. 2013) (no falsity based on the failure to disclose a different accuracy metric); *see also Twitter*, 29 F.4th at 615.

*Non-Monetized Accounts.*   Plaintiffs also claim the mDAU statements were misleading because a "proportion of Twitter's mDAU accounts" included "users from whom Twitter never earned any revenues." Compl. ¶¶ 253, 264. Again,

Defendants never said that mDAU included only users who actually generated revenue for Twitter.  The name of the metric itself uses the term "monetiz*able*," not "monet*ized*."  And Twitter described "mDAU  as people, organizations, or other accounts who logged in or were otherwise authenticated and accessed Twitter on any given day through twitter.com or Twitter applications that are **able to show** ads" (Ex. 7 (3Q20 10-Q) at 5 (emphasis added))—not people who **did** see ads or generate revenue.  *See Brady v. Delta Energy & Commc'ns, Inc.,* 2022 WL 3643659, at *5-6 (C.D. Cal. Aug. 5, 2022) (dismissing allegations without factual support).  Indeed, Twitter disclosed that even as its mDAU metric increased, **revenue may not**.  *See* Ex. 5 (2Q20 10-Q) at 55.

*Spam Accounts*.   For similar reasons, Plaintiffs' allegations that Twitter underestimated the number of bots or spam accounts do not render any of the mDAU statements false or misleading.  Compl. ¶¶ 254-59.  Twitter publicly estimated that 5% of the accounts included in its *mDAU* metric, not on the entire platform, were false or spam accounts.  Compl. ¶¶ 255-56; Ex. 5 (2Q20 10-Q) at 5, 61; *see also* Compl. ¶¶ 267-68 (discussing 5% number in Twitter's "quarterly" reports, *i.e.*, 5% of mDAU).  Twitter also warned that its estimate "may not accurately represent the actual number of such accounts," and that "the actual number of false or spam accounts **could be higher than we have currently estimated**."  Ex. 5 (2Q20 10-Q) at 5, 61-62 (emphasis added).  Indeed, Defendants explained Twitter's estimate was based on a limited "sample," to which it "applied significant judgment," and that there were "inherent challenges in measuring" user engagement.  *Id*.  Plaintiffs' insistence that Twitter's "method" for calculating mDAU was "unreliable," Compl. ¶ 259, also provides no basis for a securities claim.  Plaintiffs do not allege that Defendants "inaccurately reported the results of their *own* statistical analysis," so their contention that "Defendants should have used different statistical methodolog[ies]" to calculate mDAU cannot render the statements false.  *Rigel*, 697 F.3d at 878.

*Suspended Accounts*.  Plaintiffs likewise challenge Defendants' disclosure that Twitter "stop[s] counting" accounts determined to be "spam, malicious automation, or fake," alleging that these "suspended" accounts were included in the mDAU metric.  Compl. ¶¶260-61.  Plaintiffs assume that the suspended accounts included in mDAU were spam, *id.* ¶¶ 185-86, but Twitter suspends accounts for many reasons—including for "violations of our terms of service"—that have nothing to do with bots.  Ex. 12 (2Q22 10-Q) at 56, 59-60.  And by failing to "explain how [their allegations] were derived," Plaintiffs' assertion that mDAU included suspended bot accounts is "pure speculation" and does not plead falsity.  *Kain v. ACM Research, Inc.*, 2021 WL 5998396, at *2 (N.D. Cal. Dec. 20, 2021).

*Bot Removal*.  Finally, Plaintiffs say that certain mDAU statements were false and misleading because (according to Zatko) Twitter "never tried to measure" how many users on the entire platform were bots and "deprioritized" removing bots.  Compl. ¶¶ 269, 271.  But a business judgment to target spam and bot accounts in different ways than Zatko preferred does not suggest that Twitter was not focused on removing bots—nor is it securities fraud.  *See Robinhood*, 2023 WL 1927616, at *10.  To the contrary, Plaintiffs do not and cannot dispute Twitter's **success** in catching spam, including "suspend[ing] over half a million spam accounts every day" and "lock[ing] millions of accounts each week that [it] suspect[s] may be spam."  Ex. 11.  At the same time, Twitter warned that its spam efforts were not "perfect," and "some still slips through."  *Id*.

## C.    Plaintiffs Fail to Allege a Strong Inference of Scienter

The PSLRA's requirement that Plaintiffs plead a "strong inference" of scienter "has teeth."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).  The inference of fraud must be "cogent" and "at least as compelling as any opposing inference," and requires the Court to consider "plausible, nonculpable explanations for the defendant's conduct."  *Tellabs*, 551 U.S. at 323-24.

Plaintiffs' Complaint does not articulate *any* scienter theory, much less plead facts meeting these standards. Indeed, most securities-class-action plaintiffs devote an entire section of their complaint to facts they claim support an inference of scienter. Plaintiffs here do not even try to do so. Nor do they plead "any particular factual allegations tying the Individual Defendants to the statements" elsewhere in the Complaint. *See Mendoza*, 2021 WL 3772850, at *8-10. In fact, Plaintiffs say Defendants acted "intentionally" or were "deliberately reckless" (and thus acted with "scienter") **only one time** in their Complaint. Compl. ¶ 311. And that allegation is not accompanied by a single "case-specific fact[] suggesting that any of the Individual Defendants knew" their statements were false. *Mendoza*, 2021 WL 3772850, at *8-10. This alone warrants dismissal. *See id*.

Plaintiffs fail to plead any facts suggesting any Defendant (1) had any motive to commit fraud, or (2) made any of the challenged statements with fraudulent intent or deliberate recklessness. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1107 (9th Cir. 2021).

**1.     Plaintiffs Do Not Plead Scienter Based on Motive**

Plaintiffs do not plead any facts suggesting the Individual Defendants were motivated to commit fraud. "Generally, . . . a financial motive for securities fraud will be clear; for example, someone inside a company stands to gain a substantial profit by engaging in deceptive behavior, such as selling shares before the company discloses negative information." *Id.* at 1107. But Plaintiffs do not claim Defendants "sought to profit from" the alleged fraud at all, or identify *any* financial motive. *Nguyen*, 962 F.3d at 415. Without such allegations, Plaintiffs' fraud "theory does not make a whole lot of sense." *Id*. Indeed, Plaintiffs' lack of stock-sale allegations "supports an inference of **no** scienter." *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1011 (N.D. Cal. 2017) (emphasis added).

## 2.    Plaintiffs Do Not Plead Facts Showing Fraudulent Intent or Deliberate Recklessness

Without any "plausible motive," it is "much less likely that [Plaintiffs] can show a strong inference of scienter"—*i.e.*, "compelling and particularized facts showing fraudulent intent or deliberate recklessness" in making any challenged statement. *Prodanova*, 993 F.3d at 1108. None of Plaintiffs' allegations here come close.

***Improper Group Pleading.*** Plaintiffs' allegations fail in the first instance because they do not plead specific facts about each of the "individuals who made the statements." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008). Instead, Plaintiffs lump all of the Individual Defendants together, and claim they all made "false and misleading statements . . . knowingly and intentionally." Compl. ¶¶ 311. By grouping "[D]efendants together, with no particularized facts alleged as to each defendant," Plaintiffs have not pled scienter "with the particularity required by the PSLRA." *Mendoza*, 2021 WL 3772850, at *8.

Apart from their impermissible group pleading, allegations that any Defendant made any statement with fraudulent intent or deliberate recklessness are entirely missing.

***Zatko's Security Allegations.*** Plaintiffs devote dozens of pages of their Complaint to alleged deficiencies Zatko identified after joining Twitter. Compl. ¶¶ 59-164. Plaintiffs allege that Zatko discussed his various concerns with certain Individual Defendants at a February 2021 meeting, and during "one-on-one" meetings later in 2021. *Id.* To the extent Plaintiffs seek to rely on these allegations to meet their burden to plead scienter, such reliance is misplaced because Plaintiffs do not allege that Defendants "reached a similar conclusion" as Zatko based on those discussions. *See In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *11 (N.D. Cal. Sept. 16, 2014). In fact, Defendants have denied Zatko's contentions as "riddled with inaccuracies." Ex. 8.

Nor do Plaintiffs explain how any of the "problems" Zatko allegedly raised to Defendants contradict any challenged statement.   Given Defendants' repeated warnings to investors—including that Twitter "experience[s] cyber-attacks of varying degrees on a regular basis," and Defendants "cannot provide assurances that [their] preventative efforts will be successful," Ex. 5 (2Q20 10-Q) at 53—Plaintiffs cannot make such a showing.   Indeed, Zatko's allegations of deficiencies were "consistent with [Twitter's] express warnings to investors" throughout the Class Period.  *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *20 (N.D. Cal. Mar. 31, 2022); *see Rigel*, 697 F.3d at 885 ("voluntarily publicly disclos[ing]" issues cuts against inference of scienter); *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *23 (N.D. Cal. Aug. 7, 2019) (defendant's voluntary disclosure of negative information undermines inference of  scienter).[3]

The Zatko allegations also suffer from a timing problem.   According to Plaintiffs, Zatko gave a presentation about his "investigation" into Twitter's security practices in February 2021.   But that presentation allegedly occurred "*after* . . . [several] allegedly misleading statements," so none of the Zatko allegations has any bearing on any of the Defendants' pre-February 2021 state of mind. *ECOtality*, 2014 WL 4634280, at *10; Compl. ¶¶ 216, 218, 232, 234, 236, 238, 240, 244, 272. Likewise, Plaintiffs do not even allege that all of the Individual Defendants attended that meeting—and without alleging "*when* and *how* any of the Individual Defendants became aware of facts giving rise to scienter," Plaintiffs' allegations do not satisfy the PSLRA. *LendingClub,* 423 F. Supp. 3d at 814 .

***mDAU Allegations.***   Plaintiffs also plead "no contemporaneous facts indicating that the [Individual] Defendants knew of or deliberately disregarded information that was contrary to the[ir] statements" about mDAU.  *Welgus v. TriNet*

---

[3] Plaintiffs include a variety of allegations that Defendants misled Twitter's Board or regulators (Compl. ¶¶ 16, 166-67, 169), but they do not tie *any* of those allegations to the challenged statements.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

*Grp., Inc.*, 2017 WL 167708, at \*10 (N.D. Cal. Jan. 17, 2017). At most, Plaintiffs say that Agrawal considered a daily user active minutes (UAM) metric when evaluating user engagement on the platform. Compl. ¶ 199. But Defendants never claimed mDAU was the only metric they considered—to the contrary, they said it was one of "*a number* of metrics" they reviewed. Ex. 5 (2Q20 10-Q) at 5, 32 (emphasis added). Nor do Plaintiffs point to any particularized facts that Agrawal did not believe mDAU was the "best way to measure" engagement, as he said. Compl. ¶ 199. Indeed, even in the document Plaintiffs cite, Agrawal discussed *both* UAM and mDAU. *Id.*

Plaintiffs also suggest that Segal "admitted" the mDAU metric included "millions" of accounts that were "spam." Compl. ¶ 185. But that is *consistent* with the Company's public statements. During the Class Period, Twitter disclosed an mDAU of over 200 million users, estimating 5% of which (about 10 million) were false or spam accounts. Ex. 12 (2Q22 10-Q) at 5, 34; Ex. 13 (1Q22 10-Q) at 5, 33. And of course, Defendants warned that the "actual number of false or spam accounts could be higher." Ex. 12 (2Q22 10-Q) at 5.

*Remaining Statements.* Nor do Plaintiffs even attempt to plead scienter with respect to the remaining privacy, misinformation, or intellectual property statements. Again, Plaintiffs say that *all* Defendants "knew" or were "aware" of purported issues. Compl. ¶ 105 ("Defendants knew the conduct violated the FTC Consent Order"); *id.* ¶ 160 ("Defendants were also aware that the government of China may be using Twitter to catch dissidents"); *id.* ¶ 161 ("Twitter executives were concerned"). But the Complaint "does not identify any specific information that was either received or communicated by any Individual Defendant that would contradict any public statement at the time it was made," and Plaintiffs fail "to allege *when* and *how* any of the Individual Defendants became aware of any facts giving rise to [an] inference of scienter." *LendingClub*, 423 F. Supp. 3d at 814; *see also Iron Workers Local 580 Join Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 677 (N.D. Cal. 2021)

("generalized statements about cryptocurrency issues" did not "suggest any knowing contradiction").

### 3. Plaintiffs Do Not Allege a Strong Inference of Scienter as to Twitter

The Ninth Circuit "has not adopted the corporate scienter doctrine." *Nozak v. N. Dynasty Minerals Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020). Rather, the PSLRA requires Plaintiffs "to plead scienter with respect to those individuals who actually made the false statements." *Glazer*, 549 F.3d at 745. Because Plaintiffs have not shown the Individual Defendants acted with scienter, Plaintiffs' conclusory allegations about Twitter (Compl. ¶ 312) fail to show a "cogent and compelling" inference of its scienter. *See Tellabs*, 551 U.S. at 324.

### D. Plaintiffs Fail to Plead Loss Causation With Particularity

Plaintiffs also fail to plead loss causation with particularity. *See Apollo.*, 774 F.3d at 605. Plaintiffs attempt to meet their burden by pointing to purported disclosures between February 11, 2022, and August 23, 2022, Compl. ¶¶ 277-94, but none provided "new" and "corrective" information to the market. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786-87 (9th Cir. 2020). And Plaintiffs themselves suffered no losses.

***February 11, 2022 stock drop.*** Plaintiffs allege that news of an outage revealed "Defendants' false statements" and caused a stock drop. Compl. ¶¶ 274, 276-78. But nowhere do Plaintiffs say which "specific statements made by the Defendants [] were made untrue or called into question" by the outage. *Apollo*, 774 F.3d at 608. The February 11 stock drop fails to establish loss causation. *Id.*

***May 13-16 and July 8-11, 2022 stock drops.*** Plaintiffs allege that concerns raised by Elon Musk about fake accounts included in mDAU estimates caused Twitter's stock price to fall. But Plaintiffs do not explain how those concerns "corrected" any particular statement, and Plaintiffs themselves admit this was "old" news. *See BofI*, 977 F.3d at 794 (corrective disclosure "must by definition reveal

new information to the market"); Ex. 14 (the "debate over bots on Twitter *isn't new*") (emphasis added). Indeed, Plaintiffs allege that on April 28, 2022, "Twitter restated its mDAU for Q4 2020 and each quarter of 2021, acknowledging that it had double counted millions of users," Compl. ¶ 279—and the stock went *up* (not down) after the announcement. Ex. 9. Plaintiffs say Musk *responded* to that news by "request[ing] that Twitter explain to him how it counted bots and spam accounts in mDAU," *i.e.*, disclose additional information. Compl. ¶¶ 280, 283. But Musk's request did not "correct" any prior statement. *BofI*, 977 F.3d at 794.

*August 23, 2022 stock drop.* Plaintiffs claim that a Washington Post article "revealed that Twitter had misled investors and the public despite Zatko's reports to the Board and the C-suite." Compl. ¶¶ 292-93. But Plaintiffs do not point to any facts from the article, much less explain how it purportedly "corrected" any challenged statement. *See In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 1245191, at *6 (C.D. Cal. Mar. 16, 2015) ("vague description" of a purported corrective disclosure fails "Rule 9(b)'s particularity requirement").

*Plaintiffs Have Not Adequately Pleaded Losses.* Nor have Plaintiffs adequately pleaded they suffered losses. Court-appointed Lead Plaintiff, Baker, purchased shares beginning only on April 26, 2022, and so cannot have suffered any losses in the preceding February 11, 2022 stock drop. But Baker also fails to allege particular facts showing that he suffered *any losses at all*. Baker's purchases began one day after Twitter announced it had accepted Musk's offer to purchase the Company at $54.20 per share, Compl. ¶ 41—yet Baker paid less than that for each share he purchased, and he does not allege that he sold before October 27, 2020, when he admits that Musk paid $54.20 for each share. Compl. ¶¶ 24, 41; Dkt. 38-1 at 3.

Plaintiffs attempt to patch this deficiency by adding four new plaintiffs without leave of court. Three of the new plaintiffs suffer from similar problems. Dkt. 81 at 120, 124. For example, Thaseen sold *all* of his shares by April 7, 2022,

so his "injuries (if any) cannot have been proximately caused by Defendants' alleged misrepresentations," Dkt. 50 at 3—particularly because the only prior purported "corrective disclosure" was the February 11 outage, but Plaintiffs do not explain how that "revealed" the truth of any alleged misstatements. And, in any event, Plaintiffs cannot end-run the lead-plaintiff process that already took place by "adding" new plaintiffs in their Complaint. *See In re Lantronix, Inc.,* 2003 WL 23198818, at *11 (C.D. Cal. Dec. 31, 2003) (adding new plaintiff after the appointment process "without notice to the Court or Defendants . . . runs the risk of subverting the PSLRA's lead plaintiff appointment process").[4]

## V. CONCLUSION

Twitter respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

---

[4] Particularly so here given that the one new plaintiff who purports to have losses (Roque) signed their certification on November 2, 2022—before the lead plaintiff hearing. Dkt. 81 at 122.

Dated:  March 31, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michele D. Johnson*
Michele D. Johnson (CA Bar No. 198298)
  michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
  whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
  andrew.clubok@lw.com
Susan E. Engel (*Pro Hac Vice*)
  susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Twitter, Inc. ("Twitter"), certifies that this brief contains 6,927 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 31, 2023                    /s/ *Michele D. Johnson*
                                          Michele D. Johnson

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

TWITTER'S NOTICE OF MOTION AND MOTION
TO DISMISS CLASS ACTION COMPLAINT
Case No. 2:22-cv-06525-MSC-E