LATHAM & WATKINS LLP
Michele D. Johnson (CA Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
 *whitney.weber@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
 *andrew.clubok@lw.com*
Susan E. Engel (*Pro Hac Vice*)
 *susan.engel@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, MOHAMMED THASEEN, JILL SLIGAY, LENARD ROQUE, and AMOLKUMAR VAIDYA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>TWITTER, INC., JACK DORSEY, NED SEGAL, PARAG AGRAWAL, VIJAYA GADDE, and KAYVON BEYKPOUR,<br>Defendants. | Case No. 2:22-cv-06525-MSC-E<br><br>**REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF TWITTER, INC.'S MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. Mark C. Scarsi<br>Date:  April 24, 2023<br>Time:  9:00 a.m.<br>Place:  Courtroom 7C<br><br>*[Notice of Motion and Motion to Dismiss; supporting Declaration and [Proposed] Orders filed and served concurrently herewith]* |

Defendant Twitter, Inc. ("Twitter") respectfully requests that the Court consider and/or take judicial notice of the following documents, attached to the Declaration of Whitney B. Weber filed concurrently herewith, in connection with Defendant Twitter's Motion to Dismiss Corrected Amended Class Action Complaint (the "Complaint" or "Compl."). For the reasons set forth below, the Court should consider the contents of these documents pursuant to the incorporation-by-reference doctrine, Rule 201 of the Federal Rules of Evidence, and supporting case law:

- **Exhibit 3:** A July 18, 2020 Twitter blog post, updated on July 30, 2020, entitled, "An update on our security incident," which is publicly available at https://blog.twitter.com.

- **Exhibit 4:** A September 28, 2020 Wired Magazine article entitled, "How Twitter Survived Its Biggest Hack – and Plans to Stop the Next One," which is publicly available at https://wired.me.

- **Exhibit 5:** Twitter's Form 10-Q for the quarter ended June 30, 2020, which was filed with the Securities and Exchange Commission ("SEC") on August 3, 2020. All SEC filings are publicly available at www.sec.gov.

- **Exhibit 6:** A September 24, 2020 Twitter blog post entitled, "Our continued work to keep Twitter secure," which is publicly available at https://blog.twitter.com.

- **Exhibit 7:** Twitter's Form 10-Q for the quarter ended September 30, 2020, which was filed with the SEC on October 30, 2020.

- **Exhibit 8:** An August 23, 2022 *Washington Post* article entitled, "Former security chief claims Twitter buried 'egregious deficiencies,'" which is publicly available at https://www.washingtonpost.com.

- **Exhibit 9:** Twitter's historical stock price for the period January 3, 2022 to October 26, 2022, which was downloaded from https://finance.yahoo.com.

- **Exhibit 10:** The transcript from Twitter's February 25, 2021 Analyst Day, which is publicly available from Twitter's website at https://investor.twitterinc.com/events-and-presentations/default.aspx.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

1

REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS
Case No. 2:22-cv-06525-MSC-E

- **Exhibit 11:** A May 16, 2022 Tweet thread from Parag Agrawal, which is publicly available at https://twitter.com/paraga.

- **Exhibit 12:** Twitter's Form 10-Q for the quarter ended June 30, 2022, which was publicly filed with the SEC on July 26, 2022.

- **Exhibit 13:** Twitter's Form 10-Q for the quarter ended March 31, 2022, which was publicly filed with the SEC on May 2, 2022.

- **Exhibit 14:** A July 7, 2022 *Washington Post* article entitled, "Elon Musk's deal to buy Twitter is in peril," which is publicly available at https://www.washingtonpost.com.

## I.    ARGUMENT

In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060-62 (C.D. Cal. 2012) (considering documents plaintiff referenced and relied on in the complaint in a motion to dismiss).

The incorporation-by-reference doctrine allows the Court to consider documents referenced in Plaintiffs' Complaint—even though they are not physically attached to the pleading. *See Tellabs*, 551 U.S. at 322; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Both [the incorporation by reference doctrine and judicial notice] permit district courts to consider materials outside a complaint[.]"); *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *2 (C.D. Cal. Aug. 25, 2021) (similar). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002 (citation omitted); *see also Iron Workers Local 580 Joint Funds v. NVIDIA*

*Corp.*, 522 F. Supp. 3d 660, 670 (N.D. Cal. 2021) (the incorporation-by-reference doctrine "prevent[s] plaintiffs from cherry-picking portions of documents that support their claims, while omitting portions that weaken their claims"). Where a claim necessarily depends on the contents of a document, the document is properly incorporated by reference. *Khoja*, 899 F.3d. at 1006; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference applies to "situations in which the plaintiff's claim depends on the contents of a document . . . even though the plaintiff does not explicitly allege the contents of that document in the complaint") (citation omitted). "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (citation omitted); *see also Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *14 (C.D. Cal. Apr. 14, 2015) ("Where a document has been incorporated by reference in a complaint, a court may treat such a document as part of the complaint" and "can consider the entire document, not simply the portion on which plaintiffs rely.") (citations omitted).

Under Federal Rule of Evidence 201, the Court may also take judicial notice of any fact that is "not subject to reasonable dispute," because it is either "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Documents that are subject to judicial notice can be considered "without converting a motion to dismiss into a motion for summary judgment." *Skilstaf, Inc. v. CVS Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation and internal quotation marks omitted).

As explained below, Exhibits 3-14 submitted in connection with Twitter's Motion to Dismiss are incorporated by reference into the Complaint, subject to judicial notice under Rule 201 of the Federal Rules of Evidence, or both.

## A.    The Exhibits Are Incorporated By Reference

Plaintiffs allege that Defendants made over thirty misstatements—on several different topics—in Twitter's public filings, blog posts, interviews, and during investor and earnings calls.  Plaintiffs' falsity allegations are based on a *Washington Post* article discussing a whistleblower complaint and certain Tweets.  *See, e.g.*, *id.* ¶¶ 4-17, 205-293.   Because the Exhibits below (most of which Plaintiffs allege contain the misleading statements) "form the basis of" Plaintiffs' claims, *Khoja*, 899 F.3d at 1002-05, they have "essentially been adopted" as part of the Complaint and may be considered in their entirety in deciding the Motion to Dismiss,  *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1107 (E.D. Wash. 2013)); *see also Mendoza*, 2021 WL 3772850, at *2 (incorporating by reference SEC filings and a report that purportedly caused a stock price drop); *Khoja*, 899 F.3d at 1002-05 (incorporating a blog post quoted and cited in the complaint and an article that was a purported "corrective disclosure"); *Park v. GoPro, Inc.*, 2019 WL 1231175, at *6-7 (N.D. Cal.  Mar. 15, 2019) (incorporating SEC filings, conference presentation transcripts, and content from a public webpage); *In re CCIV/Lucid Motors Sec. Litig.*, 2023 WL 325251, at *3 n.5 (N.D. Cal. Jan. 11, 2023) (a Tweet was incorporated by reference).

| Exhibit | Plaintiffs' Allegations and Complaint Cites |
|---|---|
| **Exhibit 3:** July 18, 2020 Twitter blog post, updated on July 30, 2020, entitled, "An update on our security incident" | Plaintiffs' claims are premised on a July 2020 hacking incident that Twitter disclosed, alleging that a blog post about that incident (which expressly incorporates Exhibit 3) were false and misleading.  *See* Compl. ¶¶ 4-6, 51-54, 232 & n.19 (citing to blog post that expressly incorporates Exhibit 3). |
| **Exhibit 4:** September 28, 2020 Wired Magazine article entitled, "How Twitter Survived Its Biggest Hack – and Plans to Stop the Next One" | Plaintiffs allege Exhibit 4 includes a purportedly false and misleading statement about Twitter's security measures.  *See, e.g.*, Compl. ¶¶ 57, 244-45. |

| Exhibit | Plaintiffs' Allegations and Complaint Cites |
|---|---|
| **Exhibit 5:** Twitter's Form 10-Q for the quarter ended June 30, 2020, filed on August 3, 2020 | Plaintiffs allege Exhibit 5 contains purportedly false and misleading statements about security, privacy, mDAU, and intellectual property. *See e.g.*, Compl. ¶¶ 206, 216, 249, 251, 255-56, 272. |
| **Exhibit 6:** September 24, 2020 Twitter blog post entitled, "Our continued work to keep Twitter secure" | Plaintiffs allege Exhibit 6 contains false and misleading statements about Twitter's security measures. *See e.g.*, Compl. ¶¶ 232, 234, 236, 238. |
| **Exhibit 7:** Twitter's Form 10-Q for the quarter ended September 30, 2020, filed on October 30, 2020 | Plaintiffs allege Exhibit 7 contains purportedly false and misleading statements about security, mDAU, and intellectual property. *See e.g.*, Compl. ¶¶ 206, 213-14, 249-52, 254-56, 272. |
| **Exhibit 8:** August 23, 2022 *Washington Post* article entitled, "Former security chief claims Twitter buried 'egregious deficiencies'" | Plaintiffs allege Exhibit 8 "revealed that Twitter had misled investors and the public," and purportedly caused Twitter's stock price to drop. *See* Compl. ¶¶ 22, 63, 156 292-93. |
| **Exhibit 9:** Twitter's daily stock price for the period January 3, 2022 to October 26, 2022 | Plaintiffs reference Twitter's stock price and stock-price movements throughout their Complaint. *See, e.g.*, Compl. ¶¶ 41, 278, 285, 287, 289, 293. |
| **Exhibit 10:** Transcript from Twitter's February 25, 2021 Analyst Day | Plaintiffs allege Exhibit 10 includes false and misleading statements about privacy and mDAU. *See e.g.*, Compl. ¶¶ 177, 220-21, 263. |
| **Exhibit 11:** May 16, 2022 Tweet thread authored by Parag Agrawal | Plaintiffs allege Exhibit 11 contains false and misleading statements about Twitter's efforts to detect and remove spam accounts. *See* Compl. ¶ 270. |
| **Exhibit 12:** Twitter's Form 10-Q for the quarter ended June 30, 2022 filed on July 26, 2022 | Plaintiffs allege Exhibit 12 includes misstatements about security and mDAU. *See e.g.*, Compl. ¶¶ 206, 213-14, 249-50, 252, 254-58, 260. |
| **Exhibit 13:** Twitter's Form 10-Q for the quarter ended March 31, 2022, filed on May 2, 2022 | Plaintiffs allege Exhibit 13 includes misstatements about security and mDAU. *See e.g.*, Compl. ¶¶ 206, 213-14, 249-50, 252, 254-58, 260. |
| **Exhibit 14:** July 7, 2022 *Washington Post* article | Plaintiffs allege Exhibit 14 revealed that Twitter's claims regarding fake and spam accounts on its |

| Exhibit | Plaintiffs' Allegations and Complaint Cites |
|---|---|
| entitled, "Elon Musk's deal to buy Twitter is in peril" | platform could not be verified. *See* Compl. ¶¶ 20, 288-89. |

### B.     The Exhibits Are Subject to Judicial Notice

Even if Exhibits 3 through 14 were not incorporated by reference, judicial notice of these materials is proper under Federal Rule of Evidence 201(b).  *See* Exs. 3-14.  Courts routinely take "judicial notice: (1) of matters of public record, (2) that the market was aware of information contained in news articles, and (3) publicly accessible websites whose accuracy and authenticity is not subject to dispute." *In re Facebook, Inc. Sec. Litig*., 405 F. Supp. 3d 809, 827 (N.D. Cal. 2019) (citations omitted).  Exhibits 3 through 14 are matters of public record or otherwise available in the public domain, and each is capable of "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Brodsky v. Yahoo! Inc*., 630 F. Supp. 2d 1104, 1111-12 (N.D. Cal. 2009).

### 1.     Twitter's SEC Filings Are Judicially Noticeable

Exhibits 5, 7, 12, and 13 are properly subject to judicial notice because they are public filings made by Twitter with the SEC, and are thus matters of public record not subject to reasonable dispute.  Fed. R. Evid. 201(b); *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (SEC filings subject to judicial notice); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1230 (C.D. Cal. 2015) ("Courts can consider securities offerings and corporate disclosure documents that are publicly available.") (internal citations and quotations omitted).  Courts routinely take judicial notice of SEC filings at the motion to dismiss stage to determine what "representations the Company made to the market."  *Sanders v. The RealReal, Inc*., 2021 WL 1222625, at *4 (N.D. Cal. Mar. 31, 2021); *Russian Hill Capital, LP v. Energy Corp. of Am.,* 2016 WL 1029541, at *3 (N.D. Cal. Mar. 15, 2016) (taking judicial notice of SEC filings to the extent

that they show defendants "made the statements contained therein"); *Patel v. Parnes,* 253 F.R.D. 531, 546 (C.D. Cal. 2008) (explaining that judicial notice of SEC filings is proper "for the purpose of determining what statements the documents contain"). Indeed, because Defendants contend that several of the at-issue statements are protected by the PSLRA's safe harbor for forward-looking statements, the Court is "required" to consider the cautionary language that accompanied those statements— including the risk factors identified in Twitter's SEC filings. *See, e.g.*, *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 884 (S.D. Tex. 2001) (courts "must" take judicial notice of documents "identifying risk factors" where defendants argue statements are subject to PSLRA safe harbor).

### 2. Twitter's Public Statements In Blog Posts and During Investor Day Presentations, and Parag Agrawal's Tweet Thread Are Judicially Noticeable

Exhibits 3 and 6 are blog posts from Twitter's official blog, Exhibit 10 is a transcript of Twitter's February 25, 2021 Investor Day call, and Exhibit 11 is Parag Agrawal's publicly-available May 16, 2022 Tweet thread. Judicial notice of all four Exhibits is appropriate because they are all documents that are publicly available on Twitter's websites, and all are "matters of public record not subject to reasonable dispute." *See Sanders*, 2021 WL 1222625 at *4; *see also Enigma Software Group USA LLC v. Malwarebytes, Inc.*, 2021 WL 3493764, at *5 (N.D. Cal. Aug. 9, 2021) (granting judicial notice for publicly-available webpages on defendant's website). Indeed, courts routinely take judicial notice of earnings call transcripts and official company blog posts. *See, e.g., Waterford Twp. Police v. Mattel, Inc.,* 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020) (granting judicial notice for earnings call transcripts); *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *3 (N.D. Cal. Jan. 27, 2016) (same); *In re Facebook, Inc. Sec. Litig.,* 477 F. Supp. 3d 980, 1010 (N.D. Cal. 2020) (taking judicial notice of company's blog post); *Veal v. LendingClub Corp.*, 2020 WL 3128909, at *5 (N.D. Cal. June 12, 2020) (same). Courts have also found it

proper to take judicial notice of public posts made from Twitter accounts. *See Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022); *Olson v. California*, 2020 WL 905572, at *4 (C.D. Cal. Feb. 10, 2020) (taking judicial notice of tweets); *Unsworth v. Musk*, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019) (same).

### 3. Public News Articles Are Judicially Noticeable

Judicial notice of Exhibits 4, 8, and 14 is appropriate because these documents are publicly-available news articles, which are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Facebook*, 405 F. Supp. 3d at 827. Indeed, the Court may take judicial notice of these articles "to show that the market was aware of the information contained in the articles." *Facebook*, 405 F. Supp. 3d at 828 (granting judicial notice of eleven publicly available news articles "to show that the market was aware of the information contained in the articles"); *see also In re Kalobios Pharms., Inc. Sec. Litig.,* 258 F. Supp. 3d 999, 1003 (N.D. Cal. 2017) (judicial notice of news articles proper to "show[] that particular information was available to the stock market" (quoting *Gerristen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015)); *Am. Apparel*, 855 F. Supp. 2d at 1062 (similar) (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999)).

### 4. Twitter's Stock Price Is Judicially Noticeable

Judicial notice of Exhibit 9 is appropriate because the price of Twitter's common stock from January 3, 2022 to October 26, 2022 is "subject to accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Brodsky*, 630 F. Supp. 2d at 1111-12. Courts routinely take judicial notice of a company's historical stock prices. *See Lloyd v. CVB Fin. Corp.*, 2012 WL 12883522, at *13 (C.D. Cal. Jan 12, 2012) (collecting cases); *Metzler*, 540 F.3d at 1064 n.7 (9th Cir. 2008) (taking judicial notice of reported stock price history was proper).

## II.     CONCLUSION

For the foregoing reasons, Twitter respectfully requests that the Court consider Exhibits 3 through 14 in connection with Twitter's Motion to Dismiss.

Dated: March 31, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By     /s/ *Michele D. Johnson*
Michele D. Johnson (CA Bar No. 198298)
   michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
   whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
   andrew.clubok@lw.com
Susan E. Engel (*Pro Hac Vice*)
   susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*