David L. Anderson (SBN 149604)
dlanderson@sidley.com
Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants Parag Agrawal, Ned Segal, Vijaya Gadde and Kayvon Beykpour*

Additional Counsel on Signature Page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>TWITTER, INC., et al.,<br><br>        Defendant. | Case No. 2:22-cv-06525-MCS-E<br><br>**DEFENDANTS JACK DORSEY, PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE AND KAYVON BEYKPOUR'S REPLY IN SUPPORT OF MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Mark C. Scarsi<br><br>Hearing Date: May 22, 2023<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom 7C |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    DISCUSSION ....................................................................................................1

    A.    Musk's Unproven Allegations Concerning mDAU Do Not Plead Falsity. ...............................................................................1

    B.    Musk's Tweets and Other Statements Do Not Show Loss Causation for the mDAU Statements. ....................................3

    C.    Plaintiffs Have Not Alleged Scienter As to Any Individual Defendant. .........................................................................5

        1.    Plaintiffs Rely on Group Pleading. .....................................................5

        2.    The few allegations specific to any Individual Defendant do not create a strong inference of scienter. ...................................6

    D.    Plaintiffs' Section 20(a) Claim Fails for Lack of Particularized, Non-Conclusory Allegations of Control. ......................8

III.   CONCLUSION ..................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
   851 F. Supp. 2d 746 (S.D.N.Y. 2012) ....................................................................... 2

*In re CRM Holdings, Ltd. Sec. Litig.*,
   2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) ............................................................... 2

*McElyea v. Babbitt*,
   833 F.2d 196 (9th Cir. 1987) ..................................................................................... 2

*Mendoza v. HF Foods Grp. Inc.*,
   2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) ........................................................... 6

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   78 F. Supp. 3d 1215 (N.D. Cal. 2015) ................................................................... 8, 9

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ................................................................................... 6

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ..................................................................................... 7

*Twitter, Inc. v. Elon Musk*,
   2022 WL 5240477 (Del. Ch. Oct. 6, 2022) ............................................................... 2

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ..................................................................................... 2

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 167708 (N.D. Cal. Jan. 17, 2017) .............................................................. 7

**Statutes**

15 U.S.C. § 78t(a) (Section 20(a) of the Securities Exchange Act) ....................... 1, 8, 9

## I.    INTRODUCTION

Plaintiffs' Opposition to the motions to dismiss is little more than a 10,000 word attempted diversion from their inability to answer to the fatal deficiencies in the Complaint. Plaintiffs repeat (and even attach) the self-interested, untested and unproven attacks made by Zatko and Musk against Twitter, but sidestep or wholly ignore every single pleading inadequacy that Defendants identified in their motions. The Individual Defendants join the Company's Reply in full, and submit this separate reply brief to address three points:

*First*, although Plaintiffs double-down on the statements made by Musk or at his direction regarding mDAU, nothing in the Opposition addresses their deficient allegations of falsity and loss causation for the mDAU statements. *Second*, Plaintiffs do not offer a sufficient answer for the lack of specific allegations in the Complaint demonstrating the requisite control to plead a Section 20(a) claim against any of the Individual Defendants. *Third*, Plaintiffs' belated attempt to show scienter as to the Individual Defendants, fails.

Because none of Plaintiffs' arguments in opposition to the motions to dismiss are meritorious, the Court should dismiss all of Plaintiffs' claims against all the Individual Defendants with prejudice.

## II.    DISCUSSION

### A.    Musk's Unproven Allegations Concerning mDAU Do Not Plead Falsity.

Plaintiffs do not contest that their claims of falsity for the mDAU statements are based solely on allegations made by Musk in a lawsuit he abandoned. *See* Mot. at 5-8. Instead, Plaintiffs argue that their copycat allegations are sufficient to allege falsity because Musk's allegations are "reliable." Opp. at 12-14. Plaintiffs are wrong.

*First*, Plaintiffs argue that Musk's allegations are trustworthy because they are "plainly quoting Twitter's internal documents." Opp. at 13. Plaintiffs provide no factual support for this claim and, notably, Plaintiffs disclaim any personal knowledge

INDIVIDUAL DEFENDANTS' REPLY MEMO IN SUPPORT OF THEIR MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

as to Musk's allegations, Compl. at p. 1, and Musk similarly disclaimed personal knowledge as to these allegations, Dkt. No. 103-1 at p. 3. Even Plaintiffs' Opposition does not assert Musk's allegations "for their truth." Dkt. No. 104 at 2. The fact that *no one* is willing to stand behind the accuracy of Musk's allegations make the current situation readily distinguishable from the cases cited by Plaintiffs. *See McElyea v. Babbitt*, 833 F.2d 196, 197-198, fn.1 (9th Cir. 1987) (allowing a plaintiff, in opposition to a summary judgment motion, to rely on his own complaint that was verified *and* based on personal knowledge); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 700 (9th Cir. 2012) (permitting reliance on, among other sources, allegations from an SEC complaint and "transcripts of SEC investigatory interviews").[1]

Plaintiffs also fail to properly contend with Musk's abandonment of these allegations. Plaintiffs speculate that Musk "may have believed he could win at trial" but "chose to settle." Opp. at 14. Nowhere does the Complaint allege that Musk and Twitter compromised their litigation. To the contrary, Musk surrendered: on the eve of trial, he "agreed to close on the Agreement and Plan of Merger" that he had sought to avoid. *Twitter, Inc. v. Elon Musk*, 2022 WL 5240477, at *1-2 (Del. Ch. Oct. 6, 2022).

Musk's abandonment of his counterclaims is particularly telling because it came after he repeatedly publicly claimed that Twitter had not provided him with sufficient information to evaluate Twitter's mDAU calculations, and then received voluminous discovery on the issue. Mot. at 7-8.

*Finally*, Plaintiffs confusingly ask the Court in the alternative to treat Musk's allegations as reliable only as to Twitter. Opp. at 14. This is nonsensical. Musk's

---

[1] Unable to distinguish the Individual Defendants' persuasive authority, Mot. at 7, Plaintiffs argue that those cases should be disregarded because another decision in the Southern District of New York disagreed with one of them. Opp. at 13. But the decision cited by Plaintiffs, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746 (S.D.N.Y. 2012), has itself been criticized. *See In re CRM Holdings, Ltd. Sec. Litig.*, 2013 WL 787970, at *6 (S.D.N.Y. Mar. 4, 2013) (refusing to reconsider dismissal of complaint that relied on unproven allegations from unresolved other litigation).

allegations are not reliable to plead the falsity of any statement, regardless of the speaker, and there is no basis in law or logic to find them reliable solely as to Twitter. There is also no basis to treat Musk's allegations as some kind of admission by Twitter when those allegations were made in a lawsuit *against Twitter* and *before* he owned the company.

**B.    Musk's Tweets and Other Statements Do Not Show Loss Causation for the mDAU Statements.**

Musk's tweets, and other statements attributable to him, in May and July 2022, are insufficient to plead loss causation for three reasons: (1) they did not reveal any corrective information; (2) they were not statements of fact; and (3) the market already had information regarding inaccuracies in Twitter's mDAU calculations. Mot. at 8-12. Plaintiffs' Opposition does not credibly address any of these arguments.

*First*, Plaintiffs concede by their silence that the alleged corrective disclosures do not say anything about whether users counted in mDAU saw ads or provided Twitter with revenue,[2] whether mDAU for a given quarter included accounts that had been suspended for being spam during that quarter, or about Twitter's reliance on metrics other than mDAU. Mot. at 9; Weber Decl. Ex. 1 at Stmts. 19-22, 27-29. It is, therefore, undisputed that Plaintiffs have not alleged loss causation for these categories of challenged statements.

*Second*, Plaintiffs' Opposition falsely asserts that the alleged corrective disclosures "revealed that more than 5% of mDAU were bots." Opp. at 29.[3] That is simply not what Musk said; he complained that he *had not been given the necessary information to evaluate* the percentage of bots in mDAU. Mot. at  9-10; ¶ 283

---

[2] Whether these users saw ads or provided revenue is not dispositive anyway, because mDAU relates to "monetiz*able*," not "monetiz*ed*," users who accessed Twitter on a device "able to show ads," not users who *did see* ads. Company Br. at 14.

[3] Plaintiffs also claim that Musk's May and July 2022 statements were corrective because they revealed that "Twitter used a 100-account sample to calculate the proportion" of spam/fake accounts in mDAU. *Id.* at 30. But Plaintiffs do not allege that any of the challenged statements misled investors about the sample size used to calculate this percentage. *See* ¶¶ 246-71.

INDIVIDUAL DEFENDANTS' REPLY MEMO IN
SUPPORT OF THEIR MOTION TO DISMISS - CASE NO.
2:22-cv-06525-MCS-E

("Twitter deal temporarily on hold *pending details supporting* calculation that spam/fake accounts do indeed represent less than 5% of users."); ¶ 286 ("I have *yet to see* \*any\* analysis that has fake/spam/duplicates at 5%"); ¶ 288 ("Musk and his team concluded that they *could not verify* Twitter's claims regarding fake and spam accounts."); ¶ 290 ("Musk has sought the data and information necessary to make an independent assessment of the prevalence of fake or spam accounts . . . yet Twitter has failed or refused *to provide* this information.") (emphasis added and internal quotation marks removed).

*Third*, Plaintiffs attempt to distinguish Musk's statements from short-seller reports by arguing that, in the cases cited by the Individual Defendants, the short-sellers were not viewed by the market as plausibly conveying corrective information because they were anonymous and disclaimed the accuracy of their representations. Opp. at 30. But Musk *did* disclaim the accuracy of his statements by repeatedly stating that he did not have sufficient information to evaluate Twitter's mDAU calculations. Mot. at 10-11; ¶¶ 283, 286, 288, and 290. And Plaintiffs do not explain why anonymity is relevant to the analysis here; it is not. Just like the short-sellers, Musk spoke out of self-interest and with admitted lack of knowledge. Mot. at 10-11 (citing *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 792 (9th Cir. 2020); *In re Nektar Therapeutics Sec. Litig.*, 34 F. 4th 828, 837 (9th Cir. 2022)). Indeed, the fact that the market knew who Musk was, and that he was trying to escape his commitment to acquire Twitter, makes it even less plausible that the market would have understood his statements to be conveying corrective facts about mDAU.

*Finally*, Plaintiffs admit that the market was already aware of inaccuracies in Twitter's mDAU calculation, and that the prior disclosure had no impact on Twitter's stock price. Opp. at 30; Mot. at 11-12. Plaintiffs claim, however, that Musk's statements disclosed "more serious problems" with mDAU. Opp. at 30. This vague contention is directly at odds with Musk's actual statements that he believed he lacked sufficient information to evaluate mDAU. ¶¶ 283, 286, 288, and 290. Musk's

INDIVIDUAL DEFENDANTS' REPLY MEMO IN SUPPORT OF THEIR MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

statements did not convey any facts that can credibly be called "more serious" than Twitter's own definitive disclosure.[4]

### C.    Plaintiffs Have Not Alleged Scienter As to Any Individual Defendant.

Plaintiffs assert a variety of flawed arguments regarding Defendants' purported scienter which do not salvage their wholly inadequate allegations. *See* Company Br. at 15-20; Company Reply at 8-9. One such flawed argument is that each of the Individual Defendants received contemporaneous reports contradicting their challenged statements. *See* Opp. at 24-26. Relatedly, Plaintiffs wrongly claim that the specificity alone of some of these statements shows scienter. *Id.* at 26-27. It does not.

As an initial matter, Plaintiffs do not claim that any of the alleged contemporaneous reports were about mDAU. Plaintiffs, thus, do not even attempt to present particularized allegations of scienter with respect to the mDAU statements. These allegations further fail to plead scienter for the following reasons:

### 1.    Plaintiffs Rely on Group Pleading.

Notwithstanding that Plaintiffs purport to be presenting support for each Individual Defendants' scienter, they repeat the sins of their Complaint by failing to connect specific reports received by specific Individual Defendants to specific challenged statements contradicted by those reports. Repeatedly, Plaintiffs assert that "*All Defendants*" were aware of certain facts because those facts had been shared with "the Board" and unspecified "executives." Opp. at 24-26 (citing ¶ 83 (Overbroad access "ha[d] been raised to *the board* before."); ¶ 102 ("[F]or years *the Board* had been hearing the [SDLC] effort was getting closer to being complete."); ¶ 155 ("*Twitter had made the executive decision . . .*"); ¶ 168 ("Twitter's *senior executives and even its Board* were made aware of the problem."); ¶ 165 ("Twitter's Chief Privacy Officer had told *the Board and executives* of the infringement."); ¶ 166

---

[4] Plaintiffs devote three sentences to arguing in the alternative an unpled "materialization of the risk" theory of loss causation. Opp. at 29. But such a theory is nonsensical here because Musk ended up going through with the merger agreement, so the "risk" of Musk withdrawing from the agreement did *not* materialize.

("Twitter's strategy, which *executives* explicitly acknowledged to Zatko was deceptive . . ."); ¶ 142 ("Zatko . . . submitted the report to *Twitter's Board* in February 2022.") (emphasis added); *see also* Opp. at 25 (speculating that "[t]he executives who instructed Alethea not to send its report necessarily outranked [Zatko], so *Agrawal*, *Dorsey*, or *Segal*, would have known of its contents") (emphasis in original).

Without details about *who* received each of these reports and *when*, or *what* was in the reports, these allegations do not show that any Individual Defendant acted with scienter in making each challenged statement. *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021) ("[A]llegations grouping several defendants together, with no particularized facts alleged as to each defendant, are insufficient . . . to plead scienter[] with the particularity required by the PSLRA.").

**2.    The few allegations specific to any Individual Defendant do not create a strong inference of scienter.**

Even where Plaintiffs' allegations appear to relate to an Individual Defendant, they do not adequately plead scienter. In the case on which Plaintiffs principally rely, *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230-32 (9th Cir. 2004), the complaint detailed suspiciously timed stock sales, and "contemporaneous reports or data, available to the party, which contradict the [party's] statement." Here, Plaintiffs say nothing about stock sales, and do not adequately plead that any Individual Defendant received contemporaneous reports contradicting that individual's statements:

***Dorsey.*** Plaintiffs allege only that Dorsey attended a February 2021 meeting where Zatko presented his views regarding cybersecurity. Opp. at 24; ¶ 70. Plaintiffs do not specify which of Dorsey's challenged statements were contradicted by the information disclosed in that meeting, or how. But the only statements about cybersecurity Dorsey is alleged to have made after that meeting emphasized that cybersecurity remained a serious risk on which more remained to be done. *See* ¶ 213 ("[T]he risk of a cybersecurity incident potentially occurring is increasing. We cannot

INDIVIDUAL DEFENDANTS' REPLY MEMO IN SUPPORT OF THEIR MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

provide assurances that our preventative efforts will be successful."); ¶ 214 ("We are also taking steps to secure our systems while our investigations are ongoing.") (emphasis removed). The matters allegedly reported by Zatko in February 2021 do not render those statements false or misleading, much less support the strong inference of scienter required to avoid dismissal.

*Agrawal.* Plaintiffs first cite Agrawal's attendance at the same February 2021 meeting alleged against Dorsey and the allegations are deficient for the same reasons. And, some of Agrawal's challenged security statements, including the September 2020 blog post, occurred *before* the February 2021 meeting. *See, e.g.*, ¶ 232-39, 244.

Plaintiffs also claim that Agrawal's scienter is shown by: (1) his statement that "Twitter has 10 years of unpaid security bills"; (2) Zatko telling him that Twitter's engineers had an inordinate number of failed logins; (3) his bi-weekly meetings with Zatko; and (4) his alleged involvement in Zatko's termination. Opp. at 25. Plaintiffs do not identify any subsequent statements by Agrawal that were contradicted by information learned at these events.

Plaintiffs' related argument that Agrawal's September 2020 blog post and May 2022 mDAU tweets show scienter because they were "specific," Opp. at 26-27, also fails, because the statements were not specific and, in any event, specificity alone does not show scienter. *See Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014), *overruled on other grounds* 856 F.3d 605 (9th Cir. 2017) (finding that specific statements showed *access* to disputed information). Plaintiffs have not identified what data Agrawal had access to that contradicted his supposedly specific statements.

*Segal*. Plaintiffs speculate that Segal "likely" would have attended the February 2021 meeting because it was a "high-level executive meeting to prepare for a Board meeting." Opp. at 24. Plaintiffs' rank speculation is insufficient to meet their burden to plead with particularity "contemporaneous facts indicating that [Segal] knew of or deliberately disregarded information that was contrary to the statements [he was] making." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *10 (N.D. Cal. Jan. 17,

2017).

The only other contemporaneous report Plaintiffs claim Segal received was a July 20, 2021 text from Zatko about engineer access to customer information and foreign government activities on Twitter. Opp. at 25; ¶¶ 87 n.6, 151. Plaintiffs do not identify which subsequent statements by Segal were contradicted by this text message or how.

*Gadde*. Plaintiffs speculate that Gadde was aware of the contents of Zatko's February 2021 presentation because Gadde directed Zatko not to create a draft presentation for the Board and "frequently attended such meetings." *See* Opp. at 24; ¶ 70. This speculation is insufficient to create a strong inference of scienter. And, in any event, Plaintiffs do not allege whether this February 2021 presentation was before or after the February 25, 2021 Analyst Day where all of Gadde's challenged statements were made. *See* ¶¶ 70, 220-21.

Likewise, Plaintiffs speculate that Gadde would have known of the contents of the Alethea report "[b]ecause an outside law firm was involved." Opp. at 25. Even if the Court were to credit this speculation, which it should not, the Alethea report was not created until May or June 2021, months *after* Gadde's challenged statements. *See* ¶¶ 96, 220-21.

*Beykpour*. Plaintiffs effectively concede that they have not pled scienter as to Beykpour who allegedly "frequently attended" meetings like the February 2021 meeting. Opp. at 24. Not only is this assertion insufficient to plead Beykpour was in attendance and received information on security issues in February 2021, Beykpour is not alleged to have made any false or misleading statement about security issues.

### D.    Plaintiffs' Section 20(a) Claim Fails for Lack of Particularized, Non-Conclusory Allegations of Control.

Lacking any facts to support their Section 20(a) claim (*see* Mot. at 12-13), Plaintiffs rely on a 2015 district court case that is easily distinguished from the present case. Opp. at 33 (citing *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d

1215, 1228 (N.D. Cal. 2015)). In *Montage*, the court upheld a Section 20(a) claim against the CEO, CFO, and President of a company, who all signed the SEC filings containing the challenged statements. *Id.* In contrast, here, unlike in *Montage*, the challenged statements are not all contained in SEC filings signed by every Individual Defendant and nothing in the *Montage* ruling supports holding individuals liable for the oral statements made by others or for the contents of an SEC filing that they did not sign. *Montage* should be disregarded in favor of the numerous more recent and more applicable cases cited by the Individual Defendants, which addressed conclusory allegations of control similar to the ones at issue here. *See* Mot. at 12-13.

The Court should also disregard the Opposition's bald claim that "[h]ad any of the [Individual] Defendants . . . objected, the false statements would not have been made." Opp. at 33. This conclusory assertion is not supported by any facts, is not even pled in the Complaint, and does not come anywhere close to satisfying the requirement of pleading particularized, non-conclusory allegations of control. Nor does the Individual Defendants' attendance at Twitter's February 25, 2021 Analyst Day mean that any of them exercised control over any of the other Individual Defendants' challenged statements. *See id.* at 33 (citing ¶¶ 177, 220, 263, and Weber. Decl. Ex. 10).

## III. CONCLUSION

For the foregoing reasons, and the reasons stated in the Individual Defendants' motion and the Company Brief and Reply, the Individual Defendants respectfully request that the Court dismiss all claims against them with prejudice.

Date:  May 5, 2023

Respectfully Submitted,

SIDLEY AUSTIN LLP

By /s/ *David L. Anderson*
David L. Anderson (SBN 149604)
dlanderson@sidley.com

INDIVIDUAL DEFENDANTS' REPLY MEMO IN SUPPORT OF THEIR MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants Parag Agrawal, Ned Segal, Vijaya Gadde and Kayvon Beykpour*

MUNGER, TOLLES & OLSON LLP

By /s/ *George M. Garvey*
George M. Garvey (SBN 89543)
george.garvey@mto.com
Abraham R. Oved (SBN 335927)
avi.oved@mto.com
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100

*Attorneys for Defendant Jack Dorsey*

INDIVIDUAL DEFENDANTS' REPLY MEMO IN SUPPORT OF THEIR MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

**CIVIL L.R. 5-4.3.4(a)(2)(i) ATTESTATION**

I, David L. Anderson, am the ECF user whose ID and password are being used to file DEFENDANTS JACK DORSEY, PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE AND KAYVON BEYKPOUR'S REPLY IN SUPPORT OF MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT. In compliance with Civil Local Rule 5-4.3.4(2)(i), I hereby attest that counsel for all signatories listed on the signature page have concurred in this filing.

Dated: May 5, 2023                     By:    /s/ *David L. Anderson*
                                                David L. Anderson

**CIVIL L.R. 11-6.1 CERTIFICATE OF COMPLIANCE**

I, David L. Anderson, the undersigned, counsel of record for Defendants Parag Agrawal, Ned Segal, Vijaya Gadde and Kayvon Beykpour, certifies that this brief contains 2,997 words, which complies with the word limit of Section 9(d) of the Honorable Mark C. Scarsi's Civil Standing Order.

Dated: May 5, 2023                     By:    /s/ *David L. Anderson*
                                                David L. Anderson

INDIVIDUAL DEFENDANTS' REPLY MEMO IN SUPPORT OF THEIR MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E