LATHAM & WATKINS LLP
Michele D. Johnson (CA Bar No. 198298)
  michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
  whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
  andrew.clubok@lw.com
Susan E. Engel (*Pro Hac Vice*)
  susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for X Corp., successor in interest
to named defendant Twitter, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, MOHAMMED THASEEN, JILL SLIGAY, LENARD ROQUE, and AMOLKUMAR VAIDYA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., JACK DORSEY, NED SEGAL, PARAG AGRAWAL, VIJAYA GADDE, and KAYVON BEYKPOUR,<br><br>Defendants. | Case No. 2:22-cv-06525-MCS-E<br><br>**DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CORRECTED AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. Mark C. Scarsi<br>Date:  May 22, 2023<br>Time:  9:00 a.m.<br>Place:  Courtroom 7C<br><br>*[Reply in Support of Request for Judicial Notice and Opposition to Plaintiffs' Request for Judicial Notice concurrently filed herewith]* |

## TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................1

II.     ARGUMENT ...............................................................................................1

        A.      The Opposition Confirms the Complaint's Fatal Defects ...................1

        B.      Nearly All of the Statements Are Nonactionable ...............................2

                1.      Most Statements Are Puffery .....................................................2

                2.      Several Challenged Statements Are Opinions...........................3

                3.      Many Statements Are Protected by the Safe
                        Harbor ........................................................................................4

        C.      Plaintiffs Do Not Allege Falsity .........................................................5

        D.      Plaintiffs Do Not Allege a Strong Inference of Scienter ....................8

        E.      Plaintiffs Do Not Plead Loss Causation ..............................................9

III.    CONCLUSION ..........................................................................................10

## **Table of Authorities**

### **CASES**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012) ...................................................................................10

*Bennett v. H&R Block Fin. Advisors, Inc.*,
  2005 WL 8178042 (N.D. Cal. June 1, 2005) ........................................................2

*Bolooki v. Honda Motor Co.*,
  2023 WL 2627015 (C.D. Cal. Mar. 10, 2023) ...........................................2, 3, 5, 9

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ..............................................................................4, 8

*City of Sunrise Firefighters' Pens. Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .....................................................8, 9

*Costanzo v. DXC Tech. Co.*,
  2020 WL 4284838 (N.D. Cal. July 27, 2020) ........................................................2

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................10

*Golubowski v. Robinhood Markets Inc.*,
  2023 WL 1927616 (N.D. Cal. Feb. 10, 2023).........................................................7

*Habelt v. iRhythm Techs., Inc.*,
  2022 WL 971580 (N.D. Cal. Mar. 31, 2022) ..........................................................4

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ................................................................................9

*In re Eargo, Inc. Sec. Litig.*,
  2023 WL 1997918 (N.D. Cal. Feb. 14, 2023).........................................................1

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ........................................................5

*In re Intuitive Surgical Sec. Litig.*,
  65 F. Supp. 3d 821 (N.D. Cal. 2014)......................................................................1

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) .................................................................2

*In re Mattel, Inc. Sec. Litig.*,
   2021 WL 1259405 (C.D. Cal. Jan. 26, 2021)......................................................2

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022).............................................................................5, 6

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
   2018 WL 466527 (C.D. Cal. Jan. 24, 2023).........................................................6

*In re Splunk Inc. Sec. Litig.*,
   592 F. Supp. 3d 919 (N.D. Cal. 2022)..................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)................................................................................4

*Lifschitz v. NextWave Wireless Inc.*,
   2010 WL 11512356 (S.D. Cal. Mar. 5, 2010)......................................................1

*Luna v. Marvell Techs. Grp. Ltd.*,
   2017 WL 4865559 (N.D. Cal. Oct. 27, 2017).....................................................10

*Mendoza v. HF Foods Grp. Inc.*,
   2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) .....................................................8

*Metzler Inv. GMBH v. Corinthian Coll., Inc.*,
   540 F.3d 1049 (9th Cir. 2008).........................................................................5, 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*,
   575 U.S. 175 (2015) .........................................................................................3, 4

*Petrie v. Elec. Game Card, Inc.*,
   2011 WL 13130015 (C.D. Cal. Oct. 19, 2011) ....................................................9

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021)..............................................................................8

*Shenwick v. Twitter*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...............................................................8

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (C.D. Cal. 2019)..................................................................3

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022)............................................................................5, 6

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021)..............................................................................3, 4

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009).....................................................................................5

**STATUTES**

15 U.S.C. § 78u-4(b)(1)...................................................................................................1

## I.      INTRODUCTION

Plaintiffs' Opposition highlights the Complaint's fatal deficiencies.  Plaintiffs admit the Complaint copies-and-pastes Zatko's unproven opinions about Twitter's cybersecurity practices, rather than plead particularized facts.  Plaintiffs nowhere explain how Zatko's allegations rendered the challenged statements false or misleading—indeed, the Opposition hardly mentions the challenged statements, most of which are nonactionable.  As to scienter, the Opposition merely speculates that "all Defendants knew" their statements were false and misleading.  Such conclusory allegations fall far short of pleading a "powerful or cogent" inference of fraudulent intent as to each Defendant.  Plaintiffs also admit they did not suffer *any losses*.  In December, Plaintiffs asked the Court to appoint Baker as Lead Plaintiff, claiming he lost $5,000.  Dkt. 50 at 4.  They now admit that's not true: "***Baker later sold Twitter stock for more than he bought it***."  Opp. 31.[1]  Dismissal is required.

## II.     ARGUMENT

### A.      The Opposition Confirms the Complaint's Fatal Defects

First, Plaintiffs' Complaint is a puzzle.  The alleged misstatements appear in one section, but, as Plaintiffs acknowledge, the alleged "facts contradicting [those] statements"—*i.e.*, *why* each statement is misleading, 15 U.S.C. § 78u-4(b)(1)—are in an earlier, *fifty-page* section.  Opp. 14.  This warrants dismissal because it is not for the Court to "solve the puzzle of interpreting" Plaintiffs' allegations.  *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014) (Opp. 14); *see Lifschitz v. NextWave Wireless Inc.*, 2010 WL 11512356, at *3-4 (S.D. Cal. Mar. 5, 2010).

Second, Plaintiffs admit they lift their allegations from Zatko's whistleblower complaint.  Opp. 11-14.  "Allegations, of course, are not tested or adjudicated findings."  *In re Eargo, Inc. Sec. Litig.*, 2023 WL 1997918, at *14 (N.D. Cal. Feb.

---

[1] Emphasis added unless otherwise stated.

14, 2023).  Plaintiffs argue the Court should consider them anyway, claiming Zatko is "reliable."  Opp. 11-13.  But in each of Plaintiffs' authorities, the complaints did "not rely solely" on unadjudicated allegations.  *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1245 (N.D. Cal. 2008).  Instead, those complaints "corroborat[ed]" whistleblower allegations with internal documents, company disclosures, and specific employee accounts.  *Id.*; *see also In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *8-9 (C.D. Cal. Jan. 26, 2021) (whistleblower's account corroborated by "numerous extrinsic materials," restatement, and admission of deficiencies).  Zatko's allegations are offered with no such corroboration.  In fact, Plaintiffs claim they "consult[ed] former Twitter employees" (Opp. 12), but the Complaint contains zero facts suggesting those employees agreed with Zatko.  *See Bennett v. H&R Block Fin. Advisors, Inc.*, 2005 WL 8178042, at *4 (N.D. Cal. June 1, 2005).

## B.    Nearly All of the Statements Are Nonactionable

### 1.    Most Statements Are Puffery

Twitter identified nineteen statements as nonactionable puffery.  Mot. 7-8.  Plaintiffs do not address fifteen of them (Stmts. 3, 5-7, 10, 13-18, 30, 33), waiving any argument they are actionable.  *See Bolooki v. Honda Motor Co.*, 2023 WL 2627015, at *3, *7 (C.D. Cal. Mar. 10, 2023).  Plaintiffs' arguments about the remaining four are meritless.

First, Plaintiffs argue that the September 2020 Twitter blog post describing access-controls as "improved" and "strict" conveyed that Twitter's cybersecurity "had gotten better since the [2011] Consent Order," and is thus not puffery.  Opp. 16-17. But the post "*does not mention*" the Consent Order—it expresses only "vague corporate optimism" about Twitter's security tools.  *Costanzo v. DXC Tech. Co.*, 2020 WL 4284838, at *10 (N.D. Cal. July 27, 2020) ("turnaround plan" to "align" "costs with" "revenue trajectory").  And without allegations that Twitter had *no* access principles and made *no* improvements, the blog's description of Twitter's

"strict" controls is precisely the type of vague and subjective statement courts routinely dismiss. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021).

Second, Plaintiffs' claim that three privacy statements (Stmts. 4, 8-9) are "objectively verifiable" because of the Consent Order (Opp. 18) is meritless. Again, none of the statements mentioned the Consent Order, *supra*, and each closely tracks statements courts have found nonactionable. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (C.D. Cal. 2019) ("maintaining the highest levels of trust").

### 2.      Several Challenged Statements Are Opinions

Plaintiffs concede that eleven of the statements about privacy and mDAU are opinions, and they do not contest that six of those are nonactionable. Opp. 18, 21 (not addressing Stmts. 10, 22-24, 30, 31); *see Honda*, 2023 WL 2627015, at *3, *7. For the remaining five (Stmts. 4, 8-9, 19-20), Plaintiffs suggest the Complaint satisfies the falsity standard under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 186, 188-89 (2015). Opp. 18, 21. It doesn't.

First, Plaintiffs argue that three of Defendants' privacy opinions are actionable because "facts" about employee access to data would "conflict with investors' impression of the statement's basis." Opp. 18 (Stmts. 4, 8-9). Under *Omnicare*, an opinion is only actionable where Defendants "omit[] material facts about [their] inquiry into or knowledge concerning" the opinion, *and* "those facts conflict with what a reasonable investor would take from the statement itself." 575 U.S. at 189. But Plaintiffs say nothing about Defendants' "inquiry" into their beliefs, and the fact that engineers had access to user data does not "conflict with" Defendants' statements. *Id*. Indeed, the statements are not about access to data—they concern "account settings" for advertising, how Tweets "surface in timeline[s]," and how Apple privacy settings impact ads. Stmts. 4, 8-9; *Omnicare*, 575 U.S. at 190 (statements not "viewed in a vacuum").

Plaintiffs' argument also fails on timing grounds because Zatko supposedly raised "alarms" about overbroad access at a February 2021 meeting—*after* one of the statements was made, and which Segal (who made the other two) did not attend. *Compare* Compl. ¶¶218, 225, 227, *with id*. ¶70; *see also Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1008 (9th Cir. 2018) ("direct[] contradict[ion]" required).

Second, Plaintiffs contend that two of Defendants' opinions about mDAU are actionable because Defendants "actually preferred" other metrics. Opp. 21; Stmts. 19-20. But Plaintiffs don't point to particularized facts suggesting any Individual Defendant did not "actually hold[] the stated belief." *Omnicare*, 575 U.S. at 184. That Defendants also considered other engagement metrics (Opp. 21) is no secret— Twitter told investors it looked at a "number of metrics" to measure "engagement," not just mDAU. Ex. 5. And although Plaintiffs contend one "engagement" metric was declining, they do not point to facts that mDAU was not the *better* way to measure success "against [Twitter's] objectives and to show" **both** "the size of our audience *and* engagement." Stmts. 19-20; *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

### 3. Many Statements Are Protected by the Safe Harbor

Plaintiffs argue that the eleven statements Twitter identified as protected by the PSLRA safe harbor (Mot. 9) are actionable because the statements contain "a present-tense component." Opp. 23. But the statements the Opposition quotes— "*will* continue" and "*seeking* to improve" (*id*.)—are just another way to restate the "*future* goal." *Tesla*, 985 F.3d at 1192; *see also Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *10 (N.D. Cal. Mar. 31, 2022) ("positions us well to improve"); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 936 (N.D. Cal. 2022) ("intend to continue"). Nor do Plaintiffs dispute that each was "accompanied by meaningful cautionary language," much less that any statement was made with "actual knowledge" of falsity. Mot. 9.

### C.   Plaintiffs Do Not Allege Falsity

Plaintiffs' Opposition relies on "general[]" allegations of fraud, *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008), and does not explain how the alleged misstatements "'directly contradict what the defendant knew at that time' or 'omit[ ] material information.'" *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022).

***Security statements.***  Plaintiffs address only three of the seven security-related statements.  Opp. 15-17 (not discussing Stmts. 2, 13-14, 18); *see also Honda*, 2023 WL 2627015, at *3.  None is false or misleading.

Plaintiffs first argue two statements in the September 2020 blog post about Twitter's "strict [access] principles" were false because "all engineers could access all customer data" since Twitter did not use a software "sandbox."  Opp. 15-16 (Stmts. 12, 15).[2]  But Plaintiffs don't explain how that "fact" rendered the statements false or misleading.  *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022).  Indeed, that engineers "had access to [Twitter's] full production system" to "build and test new code"—and that only 43% of employees had such access (Compl. ¶81)—suggests access *was* granted for a "valid business reason," as Twitter said.  *Id*. ¶232.[3]

Second, Plaintiffs argue Twitter's cybersecurity risk factor (Stmt. 1) is misleading because Defendants "concealed that cybersecurity incidents occurred weekly."  Opp. 22.  Just the opposite, Twitter warned in that exact statement, "[w]e and our third-party service providers ***experience cyber-attacks of varying degrees on a regular basis***."  Ex. 7; *see In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *15 (N.D. Cal. Apr. 28, 2020).

---

[2] Plaintiffs repeatedly rely on a draft FTC complaint, which they say was about "overbroad access."  Opp. 17.  That complaint challenged Twitter's use of contact information—not employees' access to data.  Compl. ¶55.

[3] Plaintiffs' allegations mimic Zatko's—but Zatko didn't join Twitter until months after the challenged post, so his allegations can't show what Defendants knew at the time. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).

***Privacy statements.*** Plaintiffs say three statements about Twitter users' "ability to make [] choices" were false, but don't explain how. Opp. 17-19 (Stmts. 4, 8-9). At most, Plaintiffs allege that user data was in "data pools," engineers had data access, and computers may have malware. Opp. 18. Again, Defendants' general statements that users could make data-privacy choices, including "[t]hrough the account settings on Twitter" (Stmt. 4), do not "directly contradict" any alleged facts. *Twitter*, 29 F.4th at 619.

***Misinformation statements.*** Plaintiffs argue that Defendants "boasted" Twitter "had all the tools to address misinformation," but that Twitter employed "few" foreign-language speakers. Opp. 19. Defendants never said Twitter had "all the tools to address misinformation." Stmts. 7, 11, 16. And Plaintiffs' belief that Twitter should have employed different people or had more "sophisticated" tools says nothing about whether Defendants' statements were false. *See Twitter*, 29 F.4th at 619.

Plaintiffs also argue Defendants' statement that Twitter "committed to disclose publicly any state-backed information operations" was false because Twitter failed to disclose one. Opp. 15. But Twitter never claimed it would do so *immediately*. Compl. ¶240. To the contrary, Twitter said it was "balancing privacy considerations" with disclosure. *Id.* Nor do Plaintiffs explain how disclosing thirty-six, instead of thirty-five, campaigns would be material. *Nektar*, 34 F.4th at 837-38.

***IP statements.*** Plaintiffs contend that Twitter's IP risk factor was misleading because it suggested Twitter "*could be* violating" IP rights, while Defendants "were quite sure that it [was]." Opp. 22. Plaintiffs do not allege Twitter was ever found to have violated IP rights, however, much less point to a single fact that Defendants *believed* Twitter was infringing. Compl. ¶¶145-65 (describing what "Zatko was told" *later* by unnamed individuals). Twitter did not have a "duty to disclose uncharged, unadjudicated wrongdoing." *In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *3 (C.D. Cal. Jan. 24, 2023).

***mDAU statements.***   Plaintiffs argue that fifteen mDAU statements were misleading for four reasons, all meritless.

*Five-Percent Bot Estimate.*   To begin, Plaintiffs do not dispute that Twitter's mDAU estimates were subjective statements of opinion.   Opp. 20-22.   And Plaintiffs' allegations regarding Defendants' state of mind fall woefully short of their burden to plead particularized facts plausibly suggesting Defendants *knew* their statements were false.   Nor does Plaintiffs' disagreement with how Twitter calculated mDAU (or spam in mDAU) plead securities fraud.   *See Golubowski v. Robinhood Markets Inc.*, 2023 WL 1927616, at *10 (N.D. Cal. Feb. 10, 2023).

*Non-Monetized Accounts.*   Plaintiffs claim Defendants "misleadingly told investors mDAU only included users who generated revenue for Twitter."   Opp. 19. But Plaintiffs' use of a snippet of a statement *they do not challenge* from *before* the Class Period about other companies' metrics (Opp. 19), does not explain how the *challenged statements* about monetiz***able*** (not monetiz***ed***) users were false.   Ex. 5; Mot. 13-14.

*Suspended "Spam" Accounts.*   Plaintiffs argue that Twitter improperly included suspended spam accounts in mDAU.   Opp. 20.   But Plaintiffs point to no facts showing Defendants did not believe the mDAU metric to be as described *at the time*—*i.e.*, a "reasonable estimate[] for the applicable period," given the "challenges in measuring usage and engagement."   Ex. 5.   Plaintiffs point only to allegations from an August 2022 complaint about suspended accounts—but those allegations do not say the suspensions were for *spam*.   Dkt. 103-1 ¶29.   And Plaintiffs admit Twitter *did* remove suspended "spam" accounts from mDAU in each following quarter, as it said.   Opp. 10, 20; Ex. 5.

*Other Metrics.*   Plaintiffs argue Defendants' belief that mDAU was the "best way" to measure Twitter's success was misleading because another internal metric (UAM) showed "declining" engagement from "power users."   Opp. 20.   But Defendants had no duty to discuss every conceivable metric that might illuminate

some aspect of Twitter's present or future ability to generate returns for investors. *Brody*, 280 F.3d at 1006. That's especially so for metrics (like UAM) that neither measure "the size of our audience," as Defendants explained mDAU did, nor suggest that reported mDAU growth was "implausible." *Shenwick v. Twitter*, 282 F. Supp. 3d 1115, 1136-37 (N.D. Cal. 2017).

### D.     Plaintiffs Do Not Allege a Strong Inference of Scienter

Plaintiffs concede they do not plead facts suggesting Individual Defendants were motivated to commit fraud. Opp. 23-24. Plaintiffs' remaining allegations do not meet their heavy burden of showing "with particularity that *each Individual Defendant* knew" their statements were false. *City of Sunrise Firefighters' Pens. Fund v. Oracle Corp.*, 2019 WL 6877195, at *22 (N.D. Cal. Dec. 17, 2019) (emphasis in original); *see Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021).

First, Plaintiffs lump Individual Defendants together, claiming they all knew about certain cybersecurity and data-privacy practices, an influence campaign, and that "Twitter violated third-party copyright." Opp. 24-27. But "grouping several defendants together, with no particularized facts alleged as to *each* defendant, [is] insufficient to plead" scienter. *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021).

Second, Plaintiffs' speculation that Individual Defendants "would have" known information (Opp. 25-29) is not enough: "management's general awareness of the day-to-day workings of the company's business does not establish scienter" without "some additional allegation of *specific* information conveyed to management *and* related to the fraud." *Metzler, Inc.*, 540 F.3d at 1068.

There are no such additional allegations. Plaintiffs say Agrawal and Dorsey attended the February 2021 meeting with Zatko.[4] Opp. 24. But they do not explain how one person's disputed gripes about engineers' access to data or improving Twitter's cybersecurity practices meant either Individual "knew or should have known that their failure to disclose those facts 'present[ed] a danger of misleading.'" *Petrie v. Elec. Game Card, Inc.*, 2011 WL 13130015, at *7 (C.D. Cal. Oct. 19, 2011) (citation omitted). That is particularly so given Defendants warned investors that Twitter "*experience[s] cyber-attacks of varying degrees on a regular basis*" and could not "assur[e]" its "preventative efforts" to stop attacks "will be successful." Ex. 5; *see Oracle*, 2019 WL 6877195, at *22 (knowledge of sales practices not enough to show knowledge of false statements).

Finally, Plaintiffs argue scienter should be inferred because Individual Defendants "concealed" information about cybersecurity deficiencies from the Board and Zatko. Opp. 28. They point to no particularized facts that is so. *Supra*, II.A. But their argument fails in any event because—unlike in their cited cases—Plaintiffs do not tie any Individual's "concealment" to *any* challenged statement. *See Oracle*, 2019 WL 6877195, at *22.

### E.    Plaintiffs Do Not Plead Loss Causation

*No Corrective Disclosures.* Plaintiffs' Opposition confirms they do not plead Defendants' "fraud was revealed to the market." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020). Plaintiffs waive their purported *February 2022* corrective disclosure by failing to address it. *See Honda*, 2023 WL 2627015, at *3. For the *May and July 2022 Musk mDAU Tweets*, Plaintiffs do not point to any facts that "call[ed] into question the veracity of [Twitter's] prior statements." *BofI*, 977 F.3d at 793. Instead, they admit the stock fell because, after Twitter restated mDAU

---

[4] Plaintiffs concede the Complaint does not allege the other three Individuals attended the Zatko meeting. Opp. 24. Allegations about what "likely" or "would have" happened do not meet the PSLRA's high bar. *Prodanova*, 993 F.3d at 1112.

(and its stock price rose), Musk tried to "back out of acquiring Twitter." Opp. 29-30. Finally, Plaintiffs say the **August 23, 2022 Washington Post** article published Zatko's allegations. Opp. 31. But Plaintiffs' *Complaint* does not specify what "facts" the article revealed, much less detail "with particularity" how those "facts" "rendered false [Twitter's] prior statements." *BofI*, 977 F.3d at 793.

***Plaintiffs Have Not Pled Losses.*** Plaintiffs admit—contrary to what the Court had been told—that Baker "*sold Twitter stock for more than he bought it*." *Compare* Opp. 31 *with* Dkt. 50 at 4 ("counsel stated Baker suffered a loss of approximately $5,000"). Plaintiffs say that's "irrelevant," because the price was "inflated," so they overpaid. Opp. 31. But as the Supreme Court explained in *Dura Pharmaceuticals, Inc. v. Broudo*, an "inflated purchase price will not itself constitute or proximately cause the relevant economic loss," meaning Plaintiffs' cases are not good law. 544 U.S. 336, 3442-46 (2005).[5] And the Opposition admits the Complaint does not allege the *new Plaintiffs'* losses, either.

## III.    CONCLUSION

Twitter requests that the Court dismiss Plaintiffs' Complaint.

---

[5] Unlike in *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34 (2d Cir. 2012), and *Luna v. Marvell Technologies Group Ltd.*, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017), the reasons for post-Class Period stock-price increases are not at issue in the Motion.

Dated: May 5, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michele D. Johnson*
Michele D. Johnson (CA Bar No. 198298)
 michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
 whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
 andrew.clubok@lw.com
Susan E. Engel (*Pro Hac Vice*)
 susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for X Corp., successor in interest to named defendant Twitter, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Twitter, Inc. ("Twitter"), certifies that this brief contains 2,987 words, which complies with the word limit of Section 9(d) of the Honorable Mark C. Scarsi's Civil Standing Order.


Dated:  May 5, 2023                     /s/ *Michele D. Johnson*
                                        Michele D. Johnson