# Exhibit 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01524-JLS-E            Date: July 03, 2023

Title: Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| V.R. Vallery | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS:**    **(IN CHAMBERS) ORDER DENYING: (1) RIVIAN DEFENDANTS' MOTION TO DISMISS (Doc. 152); AND (2) UNDERWRITER DEFENDANTS' MOTION TO DISMISS (Doc. 153)**

Before the Court are two motions to dismiss, one filed by the "Rivian Defendants"[1] and one filed by the "Underwriter Defendants."[2] (Rivian Mot., Doc. 152; Underwriters Mot., Doc. 153). Plaintiffs opposed both motions (Opp., Doc. 157), and both sets of Defendants replied. (Rivian Reply, Doc. 159; Underwriters Reply, Doc. 160). Having considered the parties' briefs and held oral argument, for the reasons set forth below, the Court DENIES Defendants' Motions to Dismiss.

---

[1] The Rivian Defendants include Rivian Automotive, Inc. ("Rivian"), Robert J. Scaringe, Claire McDonough, Jeffrey R. Baker, Karen Boone, Sanford Schwartz, Rose Marcario, Peter Krawiec, Jay Flatley, and Pamela Thomas-Graham.

[2] The Underwriter Defendants include Morgan Stanley & Co. LLC, Goldman Sachs & Co., LLC, J.P. Morgan Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Allen & Company LLC, BofA Securities, Inc., Mizuho Securities USA LLC, Wells Fargo Securities, LLC, Nomura Securities International, Inc., Piper Sandler & Co., RBC Capital Markets, LLC, Robert W. Baird & Co. Inc., Wedbush Securities Inc., Academy Securities, Inc., Blaylock Van, LLC, Cabrera Capital Markets LLC, C.L. King & Associates, Inc., Loop Capital Markets LLC, Samuel A. Ramirez & Co., Inc., Siebert Williams Shank & Co., LLC, and Tigress Financial Partners LLC.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01524-JLS-E                                 Date: July 03, 2023
Title: Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

I.      **BACKGROUND**[3]

        This is a federal securities class action against the publicly traded company
Rivian, several of its top executives, and underwriters for Rivian's initial public offering
("IPO").  (Amended Consolidated Complaint ("ACC") ¶¶ 24–36, 225–61, Doc. 150).
Lead Plaintiff Sjunde AP-Fonden ("AP7") and Additional Plaintiff James Stephen Muhl
(together, "Plaintiffs") purchased Rivian stock during or shortly after Rivian's IPO,
between November 10, 2021, and March 10, 2022 (the "Class Period").

        Plaintiffs allege that various Defendants violated Sections 10(b) and 20(a) of the
Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b–5 promulgated by the
Securities and Exchange Commission, and Sections 11, 12(a)(2) and 15 of the Securities
Exchange Act of 1933 (the "1933 Act") and Regulation S-K promulgated by the
Securities and Exchange Commission.  (CC ¶¶ 214–24, 318–44.)  The 1934 Act claims
allege that the Rivian Defendants made materially false and misleading statements in
Rivian's IPO prospectus and statements made during a December 16, 2021 earnings call
regarding Rivian's financial results for the third quarter of 2021 ("3Q21") and knowingly
concealed that material costs for each R1 EV far exceeded its sale price and that
substantially raising prices was inevitable.  (*Id.* ¶¶ 156–71.)  The 1933 Act claims allege
that: 1) Rivian's directors and executives violated Regulation S-K by failing to disclose
in Rivian's Registration Statement a known trend of material costs far exceeding the
EVs' retail prices; and 2) the Underwriter Defendants failed to conduct an adequate due
diligence investigation.  (*Id.* ¶¶ 294–312.)

_____

        [3] For the purposes of a defendant's motion to dismiss under Rule 12(b)(6), the Court
deems the well-pleaded allegations of a plaintiff's complaint to be true.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                   Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

Rivian designs and manufactures electric vehicles ("EVs") and accessories and sells them directly to consumers and businesses.  (*Id.* ¶ 30.)  Defendant Robert Scaringe founded Rivian in 2009 and began developing an all-electric pickup truck and an all-electric SUV after securing a major investor, a Saudi Arabian auto distribution company named Abdul Latif Jameel, in 2012.  (*Id.* ¶¶ 43–44.)  Rivian maintained a low profile until approximately January 2017, when it made headlines after purchasing a former Mitsubishi Motors manufacturing plant in Normal, Illinois.  (*Id.* ¶¶ 45–46.)

In December 2017, Rivian revealed to the public its plans to introduce its first EV— a five-passenger truck—in 2020, followed by a second vehicle—a seven-passenger SUV— in 2021.  (*Id.* ¶ 47.)  On November 26, 2018, as part of the Los Angeles Auto Show, Rivian unveiled the R1T—a two-row, five-passenger pickup truck—and the next day unveiled the R1S—a three-row, seven-passenger SUV.  (*Id.* ¶ 61.)  The base model of each EV included a quad-motor—*i.e.*, a motor to power each wheel of the vehicle— and a "[l]arge," "mid-tier" battery pack with a range of approximately 300 miles.  (*Id.* ¶ 65.)  Rivian set the initial retail pricing for the R1T and R1S base models at $69,000 and $72,500, respectively.  (*Id.*)  Rivian began taking pre-orders for the R1T and the R1S almost immediately after their debut at the Los Angeles Auto Show. (*Id.* ¶¶ 65–66.)  Observers of the EV sector recognized that Rivian's pricing "might be something of a bargain" for consumers and were impressed with "the world-beating specs, coupled with a very reasonable price tag."  (*Id.* ¶¶ 71–73.)  After rival EV maker Tesla introduced its own  pickup truck model in 2019, Rivian decreased the base prices for the R1T and R1S to $67,500 and $70,000, respectively. (*Id.* ¶¶ 85, 87.)

According to Plaintiffs, Rivian based its original R1 pricing on cost estimates provided by a third-party consultant whom Rivian retained to calculate the cost of each component or part of the bill of materials ("BOM").  (*Id.* ¶ 113.)  A former Rivian employee, FE-5, asserts that the consultant calculated the BOM cost for the R1T at approximately $70,000 in 2018.  (*Id.*)  FE-5 claims that Rivian's purchasing department

_____
CIVIL MINUTES – GENERAL                                                      3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                  Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

used the consultant's cost estimates as target prices when it negotiated with suppliers to purchase vehicle parts that had not yet been sourced.  (*Id.* ¶ 114.)  But by 2019 Rivian came to see that the consultant had vastly underestimated costs and Rivian would not be able to acquire parts at the prices the consultant had calculated.  (*Id.*)  FE-5 asserts that Rivian realized then that its proposed purchase prices for EV parts "were not even in the ballpark" and were "not realistic."  (*Id.*)  Some suppliers refused to negotiate with Rivian because its proposed prices were so low, and others criticized the company for being unable to estimate material costs accurately.  (*Id.*)

In December 2019, Rivian's then-Chief Financial Officer ("CFO"), Ryan Green, held a meeting with Rivian employees, including FE-5, and the consultant to evaluate the consultant's BOM cost estimates.  (*Id.* ¶ 115.)  During the meeting, the consultant attempted to justify its cost estimates, while FE-5 presented information indicating that the consultant's estimates were too low.  (*Id.*)  Shortly after the December 2019 meeting, Rivian terminated the consultant and brought its cost engineering operations fully in-house.  (*Id.* ¶ 116.)  Rivian expanded the size of its Cost Engineering Group—which included FE-5 and another former employee, FE-4—and put it in charge of assessing the cost of the entire vehicle, excluding batteries.  (*Id.*)

FE-4 asserts that as the Cost Engineering Group "built out" the costs of materials for the R1S and the R1T it recorded cost figures in a Rivian database known as "Project X," which tracked material costs for the R1S and R1T vehicles.  (*Id.*)  Senior executives at Rivian, including Scaringe, had access to Project X.  (*Id.*)  As the Cost Engineering Group continued sourcing materials for the R1S and R1T, the estimated cost of the BOM soared: both FE-4 and FE-5 assert that by 2020, the cost of the BOM exceeded $100,000—significantly more than the publicly disclosed retail prices of the R1S and R1T.  (*Id.* ¶ 117.)  In September 2021, when Rivian began manufacturing R1 EVs, all materials had been sourced and Rivian's costs were locked in with suppliers.  (*Id.* ¶ 118.)  According to FE-5, at that point the total cost for the BOM for the R1 EVs was in the

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

range of $110,000 to $115,000 per EV.  (*Id.*)  FE-4 asserts that the cost was as high as $118,000 per EV and had been increasing each year.  (*Id.*)  By the time of Rivian's IPO in November 2021, the cost of the R1S and R1T BOM far exceeded the retail prices for those vehicles.  (*Id.*)  Rivian's rising material cost estimates were also disclosed to Claire McDonough, Rivian's CFO, and other senior executives in "Revenue and Margins Reports" and during periodic Gate Review meetings. (*Id.* ¶¶ 40, 42, 118, 194.)

Plaintiffs allege that Rivian's rising BOM costs significantly changed its near-term and long-term financial outlook: although based on its 2018 cost assumptions Rivian anticipated that the revenue from each R1 sales would cover nearly all of its material, by September 2021 it had locked in prices that ensured that it would lose over $40,000 per EV sold on material costs alone.  (*Id.* ¶¶ 113, 118–21.)  According to Plaintiffs, that the cost of the BOM far exceeded the R1T and R1S retail prices was highly material information to investors because it ensured Rivian would have a negative profit margin on each EV sold regardless of whether it ramped up production volumes.  (*Id.* ¶ 119.)  According to FE-4, Rivian may have been able to negotiate its material costs downward once its production volumes doubled, but those savings would be around only 5%.  (*Id.* ¶ 120.)  Because the BOM costs alone far exceeded the EVs' retail price and could not be spread across Rivian's production base, Rivian could not rely on increased production volumes to turn its gross profits on each R1 sale positive.  (*Id.* ¶¶ 119–21.)  According to Plaintiffs, by September 2021 Defendants knew that Rivian would incur significant losses on every R1 sold until production volumes increased and it: (a) sourced and started using cheaper components for the EV; and/or (b) raised prices.  (*Id.*)

Plaintiffs further allege that Rivian tried to re-source components at lower prices or generate cost reductions, to no avail.  (*Id.* ¶ 195.)  FE-4 asserts that the Cost Engineering Group proposed new ideas each month for reducing costs, but none of those ideas got any traction.  (*Id.*)  FE-4 recalls, for example, a proposal to reduce the cost for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                              Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

each EV by about $2,000 for the vehicle interior, which Scaringe rejected because he wanted to use real wood in the R1 interiors.  (*Id.*)

Former Vice President of Sales and Marketing at Rivian, Laura Schwab, also "started to raise the alarm" to the company's leadership that the R1 EVs "were underpriced, and each sale would result in a loss [sic] the company."  (*Id.* ¶¶ 37, 197.) According to Plaintiffs, Schwab's public statements corroborate the facts recounted by other former Rivian employees and show that Rivian's most senior executives knew that R1 EV sales would generate losses for Rivian unless and until the company significantly raised prices and/or substantially reduced BOM costs.  (*Id.* ¶ 197.)  Schwab criticized Rivian's "misleading and inaccurate messaging" on many topics—including pricing— and "voiced her concerns about [Rivian] making false commitments to customers and investors in multiple meetings with the company's senior leadership."  (*Id.* ¶ 198.) According to Schwab, Rivian's Chief Growth Officer, Jiten Behl, eventually "agreed that [Rivian] would need to raise the vehicle prices after the IPO" after repeatedly brushing off Schwab's concerns.  (*Id.*)

Reports of a Rivian IPO began to circulate on February 9, 2021, when Bloomberg reported that Rivian might launch its IPO in September 2021 at a valuation of approximately $50 billion.  (*Id.* ¶ 92.)  On May 28, 2021, Bloomberg reported that Rivian had selected underwriters for the IPO and may seek a valuation up to $70 billion.  (*Id.*) On August 27, 2021, Rivian announced that it intended to go public.  (*Id.* ¶ 93.)  On October 1, 2021, Rivian filed a preliminary Registration Statement and Prospectus for its IPO on Form S-1.  (*Id.* ¶ 94.)  Rivian later filed amendments to the registration statement and prospectus with the SEC on Forms S-1/A on October 22, 2021, November 1, 2021, and November 5, 2021.  (*Id.*)  Rivian also produced a Form 424(B)(4) Prospectus dated November 9, 2021, which it filed with the SEC on November 12, 2021.  (*Id.*)  The SEC declared the Registration Statement effective on November 9, 2021.  (*Id.* ¶ 95.)  The Registration Statement and Prospectus (together, the "Registration Statement") offered

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                          Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

153,000,000 shares of Rivian's Class A common stock at $78.00 per share.  (*Id.*)  Rivian also granted the Underwriter Defendants a 30-day period to purchase a maximum of an additional 22,950,000 shares of Class A common stock at the IPO price, minus underwriting discounts and commissions.  (*Id.*)

The Registration Statement highlighted the R1's specifications, including its "quad motor," and noted the backlog of "approximately 55,400" pre-orders.  (*Id.* ¶¶ 96–100.)  The Registration Statement also stated that Rivian's financial condition would suffer if "customers do not perceive our vehicles and services to be of sufficiently high value and quality, cost competitive and appealing in aesthetics or performance."  (*Id.* ¶ 124.)  According to Plaintiffs, the Registration Statement should have disclosed, though it did not, that: (a) R1 prices were set based on dated, inaccurate BOM cost estimates; (b) R1 BOM costs had risen by nearly 60% since R1 prices were set initially and were at least $40,000 higher than the R1 EVs' retail prices; (c) without significant changes to the R1's features and/or a significant increase in prices, Rivian was certain to lose tens of thousands of dollars on each R1 sale, including its 55,400 pre-orders. (*Id.* ¶¶ 295, 298–302, 304–5, 311.)

Plaintiffs allege that the Registration Statement's warning to investors regarding the financial harm that Rivian might suffer if its material costs increased was misleading because it characterized as a "risk" a problem that had already come to fruition.  (*Id.* ¶ 295.)  The Registration Statement was also misleading because it attributed Rivian's near-term "negative gross profit per vehicle" to high "fixed costs from investments in vehicle technology, manufacturing capacity, and charging infrastructure" without also stating that Rivian was generating—and would continue to generate—negative gross profits per vehicle of at least $40,000 on BOM costs alone.  (*Id.* ¶¶ 296, 298–99.)  Additionally, the Registration Statement allegedly misled investors by suggesting that Rivian expected to "generate positive gross profit" by increasing "product utilization" even though Rivian's negative profits would grow with each R1 EV sold.  (*Id.* ¶ 200.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                           Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

Plaintiffs' Amended Consolidated Complaint identifies the following actionable statements in the Registration Statement:

Statement 1

***Substantial increases in the prices for such components, materials and equipment would increase our operating costs and could reduce our margins if we cannot recoup the increased costs.  Any attempts to increase the announced or expected prices of our vehicles*** in response to increased costs could be viewed negatively by our potential customers and could adversely affect our business, prospects, financial condition, results of operations, and cash flows.[4]

(*Id.* ¶¶ 157, 294.)

Statement 2

Our decision to deeply vertically integrate our ecosystem has required substantial upfront investments in capabilities, technologies, and services that are often outsourced by other manufacturers.  For example, we are making investments in vehicle technology, manufacturing capacity, and charging infrastructure, and these expenses will appear in our cost of revenue.  ***We expect to operate at a negative gross profit per vehicle for the near term as our fixed costs from investments in vehicle technology, manufacturing capacity, and charging infrastructure are spread across a***

---

[4] The Court has numbered the alleged actionable statements and uses bold and italics to indicate the part of each statement that Plaintiffs allege is materially false and misleading.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                          Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

> ***smaller product base until we launch additional vehicles and ramp
> production.  This dynamic will cause our gross profit losses to increase on
> a dollar basis even as our revenue increases from ramping production
> volumes over the short to medium term.***

(*Id.* ¶¶ 159, 296.)

Statement 3

> ***Over the long term, we believe that we will be able to increase our gross
> margin in the long term and generate positive gross profit as production
> utilization increases and we leverage our investments.***

(*Id.* ¶¶ 160, 297.)

According to Plaintiffs, Statement 1 was materially false and misleading when
made because by the time of the IPO the cost of the R1 BOM already significantly
exceeded Rivian's retail prices, such that the "material risk of potential negative
consequences" resulting from increases in material costs was not a risk but a reality.  (*Id.*
¶¶ 158, 295.)  Furthermore, the omission of the fact that Rivian had already decided to
increase retail prices for the R1T and R1S before the IPO rendered untrue the claim that
there was a material risk of potential negative consequences that *could* occur *if* Rivian
raised its prices.  (*Id.*)  Plaintiffs allege that Statements 2 and 3 were materially false and
misleading when made because it identified one driver of Rivian's "negative gross profit
per vehicle"—that its "fixed costs . . . are spread across a smaller product base"—while
omitting the other significant driver of negative gross profits—that the cost of the R1
BOM alone exceeded retail prices.  (*Id.* ¶¶ 161, 298.)  It was also misleading to suggest
that the "dynamic" of Rivian's high fixed costs would "cause [Rivian's] gross profit
losses to increase on a dollar basis even as our revenue increases from ramping

_____
CIVIL MINUTES – GENERAL                                                9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

production volumes over the short to medium term" without also disclosing that Rivian's gross profit losses would increase with each EV sold because the R1 BOM cost exceeded the R1S and R1T retail prices.  (*Id.* ¶¶ 162, 299.)  And it was misleading to state that Rivian would be able to "generate positive gross profit[s]" on the R1 EVs by increasing "production utilization" and "leverag[ing its] investments" when the cost of the R1 BOM exceeded its retail price and ensured that gross profits per vehicle would remain negative until Rivian implemented price increases and reduced costs.  (*Id.* ¶¶ 163, 300.)

Rivian concluded its IPO on November 15, 2021.  (*Id.* ¶ 102.)  Through its IPO, Rivian raised gross proceeds of over $13.7 billion (before underwriting discounts, commissions, and estimated expenses) by selling 175,950,000 shares of its Class A common stock to the public at a price of $78.00 per share.  (*Id.*)  In the days following Rivian's IPO, Rivian's Class A common stock climbed and reached a high of nearly $180 per share on November 16, 2021.  (*Id.* ¶ 109.)

Plaintiffs allege that Rivian executives made additional misleading statements after the IPO, during a December 17, 2021 earnings call to discuss Rivian's financial results for 3Q21.  The Amended Consolidated Complaint identifies the following additional actionable statements in the 3Q21 earnings call:

Statement 4

***In the near term, we expect that this dynamic of high fixed cost associated with operating and running our large scale, highly vertically integrated plan amortized over a small but growing number of vehicles produced across the R1 and RCV platform will continue to have a negative drag on gross profit.***  As a result, in the third quarter we generated a negative gross profit of $82 million.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                   Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

(*Id.* ¶ 164.)


Statement 5


***And given the inflationary market backdrop, we also continue to evaluation [sic] the pricing for our vehicle [sic].***

(*Id.* ¶ 166.)


Statement 6


[Question:]   Claire mentioned that you're looking at opportunities to accelerate your strategy.  Are there things that you can do to maybe accelerate the ramp that you originally envisioned for the TR1 platform, just given the response to the product or are you I think Claire alluded to, inflation and looking at pricing, are you looking at opportunities to adjust pricing just based on what the demand is for the product?

[Answer (Scaringe):]   ***Now with regards to pricing, it's certainly the backdrop of inflation that we're seeing and the very strong demand for products not just looking our product (inaudible) broadly within the electrified space has caused us to look at our pricing and really I'd say recognizing the set of product features that we've been able to put together into the vehicles.***  And the vehicles are incredibly—you had a chance to drive them, they're incredibly fun to drive, very capable, over 800-horsepower, 0 to 60, three seconds, great on-road, great off-road but also a great everyday vehicle.  ***So in terms of the competitive step, we recognized they're very aggressively priced.***  That is something that we considered and talk about quite a bit as a management team.

(*Id.* ¶ 167.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                        Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

According to Plaintiffs, Statement 4 was materially false and misleading when made because, like Statements 2 and 3, it identified one driver of Rivian's negative gross profit per vehicle—its "high fixed costs"—while omitting the other significant driver of negative gross profits—that the cost of the R1 BOM alone exceeded retail prices. (*Id.* ¶ 165.) Statements 5 and 6 were materially false and misleading when made because they characterized the possibility of a price increase as a new development resulting from recent inflationary pressures when Rivian was already aware of pricing pressures and had committed to increase R1 prices before the IPO. (*Id.* ¶¶ 122–23, 168–69.)

Plaintiffs also allege that Rivian's 3Q21 Form 10-Q, which was filed on December 17, 2021, repeated the following actionable statement from the Registration Statement:

Statement 7

***Substantial increases in the prices for such components, materials and equipment would increase our operating costs and could reduce our margins if we cannot recoup the increased costs. Any attempts to increase the announced or expected prices of our vehicles*** in response to increased costs could be viewed negatively by our potential customers and could adversely affect our business, prospects, financial condition, results of operations, and cash flows.

(*Id.* ¶ 170.) Statement 7 was materially false and misleading when made for the same reasons Statement 1 was materially false and misleading. (*Id.* ¶ 171.)

On March 1, 2022, Rivian announced price increases of approximately 17% for the R1T—from roughly $67,500 to roughly $79,500—and 20% for the R1S—from roughly $70,000 to roughly $84,500. (*Id.* ¶ 175.) Additionally, the formerly standard "large" battery pack and quad motor option would cost purchasers an extra $12,000 to

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                              Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

$14,000.  (*Id*. ¶ 176.)  Rivian claimed that the price increases resulted from "inflationary pressure on the cost of supplier components and raw materials across the world."  (*Id*. ¶ 177.)  The new elevated prices would apply not only to all future orders, but also to nearly all extant pre-orders, excluding only purchasers already in the final stages of completing their transaction.  (*Id*. ¶ 175.)  According to Plaintiffs, these price increases revealed what Rivian and its executives had known since before Rivian's IPO: that Rivian's original pricing was unsustainable and price increases were needed to address increasing supplier components and raw materials costs. (*Id*. ¶¶ 142, 175.)

Following the disclosure of the price increases, Rivian's Class A common stock price fell $14—over 20%—from $67.56 per share on February 28, 2022, to close at $53.56 per share on March 2, 2022.  (*Id*. ¶ 178.)  Market analysts singled out the price increases as causing the decline in the price of Rivian's stock.  (*Id*. ¶¶ 179–81.)  On March 3, 2022, after facing backlash from customers who had already ordered R1 EVs, Rivian reversed its decision to raise prices for pre-order holders who had placed their orders prior to March 1, 2022.  (*Id*. ¶ 182.)  Rivian shares fell further after this development, from $53.56 at the close of March 2, 2022, to $41.16 at the close of March 10, 2022.  (*Id*. ¶ 184.)  Rivian also disclosed a projected EBITDA of negative $4.75 billion for fiscal year 2022, which it attributed to its intent to "minimize price increases to customers in the near term," on March 10, 2022.  (*Id*. ¶ 185.)  In response to this projection, Rivian's stock fells nearly 8% to close at $38.05 on March 11, 2022 and $35.83 on March 14, 2022.  (*Id*. ¶ 186.)  Market analysts attributed the continuing decline of Rivian's stock price to backlash around Rivian's proposed price increases and anticipated diminution of demand for R1 EVs.  (*Id*. ¶¶ 187–88.)

According to Plaintiffs, Rivian's disclosures from March 1, 2022 to March 10, 2022 partially corrected or reflected the materializing of risks that Rivian and its executives concealed or misrepresented in the seven alleged actionable statements identified above. (*Id*. ¶ 189–90.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                   Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

## II.    LEGAL STANDARD

### A.    12(b)(6) Generally

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  But "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B.    Pleading Fraud Under Rule 9(b)

Claims sounding in fraud must also pass muster under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that allegations of fraud be made "with particularity."  *See* Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b)'s higher pleading standard, plaintiffs bringing claims sounding in fraud must sufficiently allege "'the who, what, when, where, and how' of the misconduct charged[.]"  *Brenner v. Procter & Gamble Co.*, 2016 WL 8192946, at *5 n.5 (C.D. Cal. Oct. 20, 2016) (Staton, J.) (citing *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)).

### C.    Pleading Requirements Under the PSLRA

The PSLRA mandates that "securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Dura Pharms., Inc. v. Broudo*,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                          Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

544 U.S. 336, 345 (2005) (alterations in original) (quoting 15 U.S.C. §§ 78u–4(b)(1)–(2)); *see also Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("The PSLRA has exacting requirements for pleading 'falsity.'").  Plaintiffs also bear the burden of proving that the defendant's misrepresentations "'caused the loss for which the plaintiff seeks to recover.'"  *Dura Pharms.*, 544 U.S. at 345–46 (quoting § 78u-4(b)(4)).

There is "an inevitable tension . . . between the customary latitude granted the plaintiff on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and the heightened pleading standard set forth under the PSLRA."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  As with any Rule 12(b)(6) motion, the Court will "accept all factual allegations in the complaint as true."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  The Court will also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id.*  In the context of the PSLRA, this examination involves the "dual inquiry" of, first, "whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter," and second, a "'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness."  *Zucco Partners, LLC v. Digimarc, Corp.*, 552 F.3d 981, 992 (9th Cir. 2009).  The Ninth Circuit has further clarified that a court may continue to engage in this two-step analysis as long as it "does not unduly focus on the weakness of individual allegations to the exclusion of the whole picture"; alternatively, it may conduct only a holistic review, mindful that it does not "simply ignore the individual allegations and the inferences drawn from them."  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703 (9th Cir. 2012).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                         Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

## III.  **DISCUSSION**

### A.  **Section 10(b) and Rule 10b–5 Claims**

To show securities fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act, plaintiffs must allege facts sufficient to establish (1) a material misrepresentation or omission; (2) made with scienter, *i.e.*, a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation.  *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), *amended* (Sept. 11, 2014).

Here, the elements at issue are falsity and scienter.  (*See generally* Rivian Mot.; Opp. at 28–39; Rivian Reply.)  The Court addresses the falsity of the challenged statements first, and then scienter.

### 1.  **Whether Statements 1 and 7 Were Materially False or Misleading**

The PSLRA applies to Plaintiffs' Section 10(b) and Rule 10b–5 claims.  As this Court has already explained, "[t]o survive the higher pleading standards required by the PSLRA, the complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed.'"  *Crews v. Rivian Auto., Inc.*, 2023 WL 3050081, at *9 (C.D. Cal. Feb. 16, 2023) (quoting 15 U.S.C. § 78u–4(b)(1)(B)).  "A plaintiff may rely on contemporaneous statements or conditions to demonstrate why statements were false when made, but such circumstantial evidence must be pleaded with particularity."  *Id.* (citing *In re Stratosphere Corp. Sec. Litig.*, 1997 WL 581032, at *13 (D. Nev. May 20, 1997)).  Thus, to be actionable, a statement must be "known to be false

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                   Date: July 03, 2023

Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

or misleading at [the time made] by the people who made them." *Id.* (quoting *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001)).

Statement 1 pertains to the risk to Rivian's business and margins that increasing costs and increasing prices posed.  (ACC ¶¶ 157, 294.)  Rivian stated in the Prospectus that "increases in the prices for . . . components, materials and equipment would increase our operating costs and could reduce our margins if we cannot recoup the increased costs" and that "attempts to increase the announced or expected prices of [Rivian] vehicles in response to increased costs could be viewed negatively"  and adversely affect Rivian's business.  (*Id.*)  Statement 7 is identical to Statement 1, but it appeared in Rivian's 3Q21 Form 10-Q, rather than the Prospectus.  (*Id.* ¶ 170.)

Plaintiffs argue that Statement 1 is actionable because by the time of Rivian's IPO the BOM costs for the R1 EVs had already increased and far exceeded retail prices.  (*Id.* ¶ 295.)  They also argue that Statement 1 is actionable because Rivian had already decided that it would increase prices for the R1 EVs before the IPO.  (*Id.*)  According to Plaintiffs, when Defendants addressed potential price increases, they should have disclosed that the pricing structure for the R1 EVs was already "upside down"—that "R1 BOM costs materially exceeded its retail prices, which ensured that Rivian would generate negative gross profits on the R1 unless and until it significantly reduced BOM costs and/or increased prices."  (Opp. at 13, 18–25.)

"The Ninth Circuit has held that 'risk factors' are not actionable without further factual allegations indicating that the risks had already 'come to fruition.'" *In re Eargo, Inc. Sec. Litig.*,  2023 WL 1997918, at *10 (N.D. Cal. Feb. 14, 2023) (quoting *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009)).  Here, Plaintiffs argue that the risks warned of had already come to fruition because Rivian's BOM costs at the time of the IPO already necessitated price increases and Rivian had decided to increase

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                      Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

prices.  According to Plaintiffs, Statement 1 was materially false and misleading because it presented as possibilities problems that had already materialized.

In response, the Rivian Defendants argue that Statement 1 was not materially false and misleading because: (a) Rivian had no obligation to disclose BOM costs; (b) Rivian did not promise that its pricing would never change or tout its pre-March 2022 pricing; (c) the BOM figures in the Amended Consolidated Complaint are not indicative of Rivian's ability to achieve profitability at scale because they all date from before the IPO or during Rivian's first month of production; and (d) Rivian had to increase prices in March 2022 due to a precipitous rise in materials costs that post-dated the IPO.  (Rivian Mot. at 8–13.)

The Rivian Defendants' arguments fall short and mischaracterize Plaintiffs' theory of falsity.  Plaintiffs' point is not that Rivian had an obligation to disclose BOM costs, but rather that Rivian misled investors when it represented material cost increases as a *possibility* rather than a known problem with which Rivian had been contending for years already.  Plaintiffs' new allegations based on statements from FE-4 and FE-5, which the Court assumes to be true at this stage, show that Rivian's original pricing for the R1 EVs was not only based on erroneous BOM cost calculations by a third-party consultant who was eventually fired, but also that Rivian's estimates of the BOM cost for each R1 unit increased between 2018 and the 2021 IPO.  (ACC ¶¶ 113–18.)  The Amended Consolidated Complaint contains sufficiently detailed factual allegations to show that Rivian had been struggling with bringing BOM costs down for years before the IPO, without success.  For example, FE-5 claims that by 2019 Rivian came to see that the consultant had vastly underestimated costs and Rivian would not be able to acquire parts at the prices the consultant had calculated.  (*Id.* ¶ 114.)  FE-5 also claims that suppliers refused to negotiate with Rivian because its proposed prices were so low and criticized the company for being unable to estimate material costs accurately.  (*Id.*)  Additionally, both FE-4 and FE-5 assert that by 2020, the cost of the BOM exceeded $100,000—

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                              Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

significantly more than the publicly disclosed retail prices of the R1S and R1T.  (*Id.* ¶ 117.)  And FE-4 claims that the BOM cost for each R1 EV had been increasing each year before 2021.  (*Id.* ¶ 118.)  These facts are sufficient to show that the risk of increasing material costs was not a mere possibility as suggested by Statement 1, but an issue that had already come to fruition.  Whether Rivian was already producing R1 EVs at scale or not does not change the fact that these allegations, if true, show that production at scale would not resolve another critical obstacle to profitability: that the BOM cost for each R1 far exceeded its retail price.

These facts also set this case apart from *In re Noah Educational Holdings, Ltd. Securities Litigation*, 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010).  There, the plaintiff alleged that the omission of a two-month "spike" in raw material costs for certain components of the company's key product violated the securities laws.  *Id.* at *6.  The district court dismissed the plaintiff's claims based on that omission because his "own characterization of the changes in raw-material costs as a 'spike' . . . belies allegations that Noah was experiencing a trend of rising costs in raw materials before the IPO."  *Id.* The district court additionally observed that "[t]he cost of raw materials is only one step removed from Noah's reported cost of revenue, a prominent financial metric," and suggested that the plaintiff seemed to attempt "little more than an end-run around the carefully delineated SEC regulations that specify what financial data must be disclosed in offering documents."  *Id.* at *7.  By contrast, Plaintiffs' facts here show rising BOM costs throughout a span of years, not two months.  Furthermore, Plaintiffs' theory is not that Rivian should have disclosed BOM costs—that it should have disclosed a financial metric that it was not required to disclose—but that the vast negative difference between the BOM cost for each R1 EV and its retail price at the time of the IPO made any statements about *possible* increases in material costs and vehicle prices misleading because those increases had already been determined.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                           Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

Accordingly, the Court concludes that Statement 1 was false or misleading when made.  Because Statement 7 is identical to Statement 1, the same conclusion applies to Statement 7.

### 2.    Whether Statement 2 Was Materially False or Misleading

Statement 2 pertains to Rivian's expectation that it would continue "to operate at a negative gross profit per vehicle for the near term as our fixed costs from investments in vehicle technology, manufacturing capacity, and charging infrastructure are spread across a smaller product base until we launch additional vehicles and ramp production."  (ACC ¶¶ 159, 296.)

According to Plaintiffs, Statement 2 misled investors because it focused on one driver of Rivian's negative gross profits while omitting another significant driver of those negative gross profits: the BOM cost for each R1 unit.  (*Id.* ¶ 161.)  Plaintiffs argue that Statement 2 was misleading because it identified one cause but failed to disclose another significant cause. (Opp. at 18–19.)  Plaintiffs' position is that Rivian's disclosure regarding high fixed costs required it to disclose the other reason for its negative gross profits: high BOM costs.  (*Id.*)

The Rivian Defendants argue that Statement 2 was not objectively false because Rivian's near-term negative gross profits did in fact result from the high fixed costs spread across a smaller product base.  (Rivian Mot. at 13–14.)  They also argue that Statement 2 was not misleading because Rivian explicitly disclosed that it might never be profitable and that it expected continued lack of profitability even while production scaled up.  (*Id.*)

The Court previously found that Statement 2 was not misleading on the following grounds.  First, the Court noted that "the Prospectus clearly indicated that Rivian did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

expect to be profitable for the foreseeable future and warned that Rivian might never achieve positive margins."  *Crews*, 2023 WL 3050081, at \*11.  Second, the Court observed that use of the phrase "near term" was not misleading even if Rivian did not project profitability until 2025, as the prior iteration of the Consolidated Complaint alleged.  *Id.*  Third, the Court rejected an interpretation of Statement 2 as implying that "Rivian could become profitable by simply ramping up R1 production volumes," since Statement 2 "explicitly identifies *both* launching additional vehicles *and* ramping up production as key to overcoming negative margins."  *Id.* (emphasis in original).  According to the previous Consolidated Complaint, Rivian planned to implement a new and cheaper dual motor for the R1 EVs, which would bring down the per-unit BOM cost.  *See id.*  For those reasons, Statement 2 did "not present a false picture of Rivian's profitability prospects and the causes behind negative margins."  *Id.*

Plaintiffs' new allegations and clarifications regarding their theory of falsity cast Statement 2 in a new light and warrant a different conclusion this time.  Plaintiffs' Amended Consolidated Complaint alleges that "Rivian would have operated at a negative gross profit per vehicle even if its fixed costs had been spread over a larger product base" and that "even if Rivian's fixed costs were $0, it still would have operated at a negative gross profit per vehicle."  (ACC ¶ 161.)  The statements from FE-4 and FE-5 in the Amended Consolidated Complaint show why: the BOM cost for each R1 unit right before the IPO exceeded its retail price by approximately $40,000.  (*Id.* ¶ 118.)  According to Plaintiffs, it was misleading for Rivian to represent that high fixed costs were the main driver of negative gross profits and that scaling up production would improve Rivian's gross profits because the "delta" between the R1 BOM and its retail price ensured that Rivian's gross profit losses would increase with every R1 sold.  (*Id.* ¶ 162.)  Statement 2 misled investors by misidentifying and obscuring the key facts that would ensure Rivian's continuing negative gross profits absent price increases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                      Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

The Court understands that Statement 2 is technically accurate and that it was accompanied by statements disclaiming that Rivian would ever become profitable and in fact had a history of losses.  It is also well established that the securities laws do not impose a "rule of completeness for securities disclosures because 'no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.'"  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014).

Nevertheless, the Court finds that Plaintiffs press a plausible interpretation of what Statement 2 implies and why it is misleading.  First, Statement 2 implies that Rivian could get on a path to profitability by scaling up production and spreading out fixed costs across a larger product base.  Second, that implication would be false because scaling up would not address a major obstacle to profitability: that the BOM cost for each R1 unit far exceeded its retail price.  Plaintiffs' point is not that Statement 2 was simply incomplete, but rather that it focused on one factor driving negative gross profits that is common to many startup companies while ignoring the proverbial elephant in the room— *i.e.*, that scaling up would drive Rivian's gross losses up because each R1 EV's component costs far exceeded its retail price.  What Plaintiffs allege was concealed from investors is not a garden-variety adverse event, but a major obstacle to profitability unique to Rivian.

Accordingly, the Court concludes that Plaintiffs have adequately pleaded that Statement 2 was materially false or misleading when made.

### 3.  Whether Statement 3 Was Materially False or Misleading

Statement 3 also pertains to Rivian's belief that it would "be able to increase [its] gross margin in the long term and generate positive gross profit" as it increased "production utilization" and "leverage[d]" its investments.  (ACC ¶¶ 160, 297.)  Plaintiffs

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01524-JLS-E                          Date: July 03, 2023
Title: Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

argue that Statement 3 was materially false and misleading for the same reasons as Statement 2: because it created a false impression that Rivian would be able to achieve positive gross profits simply by scaling up, when in fact the BOM cost made that impossible. (*Id.* ¶ 161.)

The Rivian Defendants argue that Statement 3 expresses a bona fide belief regarding Rivian's profitability prospects and that Plaintiffs' allegations are insufficient to show that it was objectively false. (Rivian Mot. at 24–25.) They also emphasize that Rivian disclaimed profitability expressly during its IPO and "for the foreseeable future." (*Id.* at 25, quoting Prospectus at 57.)

Because the Court has already found Plaintiffs' theory of falsity for Statement 2 plausible, the Court concludes that Plaintiffs have adequately pleaded that Statement 3 was materially false or misleading when made for the same reasons.

### 4.    Whether Statement 4 Was Materially False or Misleading

Statement 4 addresses the same topic as Statements 2 and 3. During Rivian's 3Q21 earnings call, McDonough addressed the company's negative gross profit for the quarter and stated that Rivian expected "that this dynamic of high fixed cost associated with operating and running our large scale, highly vertically integrated plan amortized over a small but growing number of vehicles produced across the R1 and RCV platform will continue to have a negative drag on gross profit." (ACC ¶ 164.) According to Plaintiffs, Statement 4 was materially false and misleading when made for the same reasons as Statements 2 and 3.

Having accepted Plaintiffs' arguments as to the falsity of Statements 2 and 3, the Court applies the same reasoning to Statement 4 and concludes that Plaintiffs have adequately pleaded that Statement 4 was materially false or misleading when made.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

### 5.    Whether Statements 5 and 6 Were Materially False or Misleading

Statement 5 is the first of two statements related to pricing changes for Rivian's R1 EVs.  During the 3Q21 earnings call, McDonough stated: "And given the inflationary market backdrop, we also continue to evaluation [sic] the pricing for our vehicle [sic]." (ACC ¶ 166.)  Statement 6 is the second statement addressing pricing changes. Responding to an analyst's question whether Rivian was considering adjusting R1 prices "based on what the demand is for the product[,]" Scaringe cited "the backdrop of inflation that we're seeing and the very strong demand for products" in the EV sector generally as causes prompting Rivian "to look at our pricing" and recognized that R1 EVs were "very aggressively priced."  (*Id.* ¶ 167.)

According to Plaintiffs, Statements 5 and 6 were false and misleading because "they led the market to believe that Rivian was considering a price increase because of post-IPO inflation and increased demand for its vehicles" while "in truth Rivian had already decided to increase prices in order to mitigate the losses that Rivian had been suffering (and would otherwise continue to suffer absent a price increase) on each vehicle sold."  (*Id.* ¶ 168.)  Statements 5 and 6 also "gave the misleading impression that the possibility of a price increase due to inflation was a new development, when they knew prior to the IPO that the cost of the R1 Platform's bill of materials vastly exceeded the retail prices of the R1S and R1T."  (*Id.* ¶ 169.)

The Court held previously that Statements 5 and 6 were not actionable.  As the Court explained, regardless of whether "Rivian's pre-IPO internal forecasts indicated that the profit margins for the R1 would remain negative into 2025 absent price increases and lowered costs" these statements were not misleading because "increasing inflationary pressures exacerbated the problem of high costs, which weighed in favor of raising prices."  *Crews*, 2023 WL 3050081, at *12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                   Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

Plaintiffs have purged from the Amended Consolidated Complaint any allegations that Rivian's internal forecasts indicated that it would not be profitable until 2025.  Now, Plaintiffs allege instead that the BOM for the R1 EVs was "locked in" when these statements were made, such that a price increase was necessary regardless of inflationary pressures and high demand.  (ACC ¶¶ 118–19, 196.)

During oral argument, counsel for Rivian argued that the allegations regarding future profitability projections in the initial Consolidated Complaint that were removed from the Amended Consolidated Complaint were the "law of the case" and should be considered by the Court in evaluating the plausibility of the operative complaint.  But withdrawn allegations are neither the law of the case nor conclusive judicial admissions. *See, e.g.*, *West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171–72 (3d Cir. 2013) ("Even if Plaintiffs' allegations in the original complaint constituted judicial admissions, it does not follow that they may not amend them.  This Court and several of our sister courts have recognized that judicial admissions may be withdrawn by amendment. . . .  Indeed, effectively disallowing amendment by looking to the original pleading is contrary to the liberal amendment policy embodied in Rule 15."); *see also Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir.1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission.") (cleaned up).  Therefore, the Court declines to treat allegations that have been excluded from the Amended Consolidated Complaint as judicial admissions to which Plaintiffs are bound.

Rather, Plaintiffs' new allegations here lead the Court to depart from its previous conclusions regarding whether these statements were materially false or misleading. When the Court previously concluded that Statements 5 and 6 were not false or misleading, it reasoned that "[r]ising inflation and high demand would be crucial factors guiding a decision to raise customer prices regardless of such forecasts" and "Rivian did

_____
CIVIL MINUTES – GENERAL                                                        25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

not need to address all relevant considerations or disclose its internal profitability projections and pricing strategy" while addressing potential price increases.  *Crews*, 2023 WL 3050081, at *12.  As discussed above, Plaintiffs' new allegations show that Rivian had been attempting to bring down the BOM cost for each R1 EV for years—to no avail—and that Rivian would lose approximately $40,000 for each R1 sold even if its fixed costs were nil.  If proven, those allegations would establish that raising R1 EV retail prices was inevitable, and the inevitability of price increases was clear to Rivian before the IPO.  In that scenario, price increases would be necessary and happen regardless of inflationary pressures and high customer demand.  If Plaintiffs' allegations are true, that is, Scaringe's and McDonough's comments during the 3Q21 earnings call misled investors about why Rivian would increase prices and concealed a more significant, long-standing obstacle to Rivian's profitability.

Securities laws do not demand "complete disclosure of all material information whenever a company speaks on a particular topic," and "a company can speak selectively about its business so long as its statements do not paint a misleading picture."  *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 615 (9th Cir. 2022).  Here, however—if Plaintiff's allegations are true—Statements 5 and 6 painted a misleading picture by misidentifying and omitting the most important factor that prompted Rivian to raise R1 EV prices.

Accordingly, the Court concludes that Plaintiffs have adequately pleaded that Statements 5 and 6 were materially false or misleading when made.

### 6.    Whether Plaintiffs Have Pleaded Scienter with Particularity

"[T]he PSLRA's pleading requirements were put in place so that only complaints with particularized facts giving rise to a strong inference of wrongdoing survive a motion to dismiss[.]"  *Gompper*, 298 F.3d at 897.  "[W]hen determining whether plaintiffs have

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                             Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Id.*  A scienter inference is strong if it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  Particular allegations that a defendant was aware of or "had actual access to the disputed information raise a strong inference of scienter." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (cleaned up).

Plaintiffs allege that Rivian's senior executives, including Scaringe and McDonough: (a) were heavily involved in all aspects of the R1 design and pricing; (b) developed and had access to an internal database, Project X, that monitored R1 BOM costs; (c) received reports addressing R1 BOM costs; and (iv) attended meetings where rising R1 BOM costs were discussed, including "Gate Review" meetings.  (ACC ¶¶ 40, 113–18, 123, 192–200.)  Plaintiffs further allege that Rivian's then-CFO called a meeting in December 2019 to address R1 BOM cost increases, that Rivian terminated its cost consultant over escalating R1 BOM costs after that meeting, that Scaringe was personally involved in efforts to reduce R1 BOM costs, and that senior Rivian executives participated in pre-IPO discussions about the need to increase R1 prices, but deliberately avoided doing so until after the IPO.  (*Id.*)  According to Plaintiffs, these allegations raise a strong inference of scienter when viewed holistically.  (Opp. at 32.)  Plaintiffs further argue that an inference that Rivian senior executives were *not* aware that the BOM cost for each R1 EV was $40,000 higher than its retail price at the time of the IPO and during the December 2021 earnings call is implausible.  (*Id.*)

The Rivian Defendants argue, first, that Plaintiffs' new allegations cannot establish scienter because Plaintiffs do not allege that either FE-4 or FE-5 interacted personally with the Rivian Defendants and therefore cannot make any reliable statements about their states of mind.  (Rivian Mot. at 2–3.)  The Rivian Defendants further argue that the Amended Consolidated Complaint does not allege with sufficient particularity

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

what responsibilities FE-4 and FE-5 had within Rivian, such that they would know what information Rivian senior executives knew or had access to.  (*Id.* at 3–5.)  Additionally, the Rivian Defendants argue, the new FEs' allegations do not pertain to BOM cost issues within the relevant period, as they only concern pre-IPO events. (*Id.* at 5–6.)  Last, the Rivian Defendants argue that FE-4 and FE-5 are not reliable because their accounts are not consistent with one another's or with statements from other former employees present in the previous iteration of the Consolidate Complaint.  (*Id.* at 6–7.)

The Rivian Defendants' arguments here are strained and demand too much at the pleading stage, even under the PSLRA's exacting standards.  Exactly what responsibilities and titles FE-4 and FE-5 had within Rivian is not material here, especially since Defendants do not dispute key facts in their statements—for example: that Rivian relied on significantly off-base calculations by a third-party consultant it eventually fired; that Rivian had a Cost Engineering Group that tracked BOM costs through Project X; and that senior executives discussed high BOM costs at Gate Review meetings.  Nor is it material that FE-4 and FE-5 have offered slightly different figures for the delta between the BOM cost for each R1 EV and its retail price prior to the IPO: a difference of a few thousand dollars is more indicative of agreement between the FEs than contradiction.  Thus, the Court rejects the Rivian Defendants' arguments as to the reliability of FE-4 an FE-5.

Having found that FE-4 and FE-5 appear sufficiently reliable to accept their statements as true at the pleading stage, the Court concludes that their allegations are enough to support a strong inference of scienter.  The reason is simple: Plaintiffs are correct that the inference that Rivian senior executives knew that the BOM cost for each R1 EV exceeded its retail price by approximately $40,000 leading up to the IPO is far more plausible than the inference that those executives were in the dark about the issue.  The R1 EVs were not just one of many products Rivian would market: they were *the* Rivian product, its flagship offering.  It is simply not credible that Rivian senior

_____
CIVIL MINUTES – GENERAL                                                              28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

executives would be unaware of the "upside down" pricing structure of Rivian's flagship EVs leading up and in the months after the IPO.  *Cf. Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709–11 (7th Cir. 2008) (Posner, J.)  (concluding that it was "conceivable" but "exceedingly unlikely" that a company's CEO and senior management team were unaware of major issues with the company's flagship products).  Accordingly, the Court finds that Plaintiffs have pleaded scienter with the requisite particularity.

### B.  Section 20(a) Claims

Under Section 20(a) of the 1934 Act, "certain 'controlling' individuals [are] also liable for violations of section 10(b) and its underlying regulations."  *Zucco Partners*, 552 F.3d at 990 (citing 15 U.S.C. § 78t(a)).  Because a Section 20(a) claim is derivative, "a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'"  *Id.* (cleaned up).

Here, the Rivian Defendants do not challenge Plaintiffs' Section 20(a) claims on any grounds separate from their arguments against Plaintiffs' Section 10(b) and Rule 10b–5 claims.  Accordingly, because the Court has concluded that Plaintiffs' Section 10(b) and Rule 10b–5 claims are adequately pleaded, their Section 20(a) that are derivative of those claims may proceed as well.

### C.     Section 11 Claims — Statements 1, 2, and 3

To state a claim under Section 11, a plaintiff must plead facts proving the following elements: "'(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment.'"

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)).  Section 11 liability arises from false or misleading statements in the Registration Statement.  15 U.S.C. § 77k(a).

"Although the heightened pleading requirements of the PSLRA do not apply to section 11 claims, plaintiffs are required to allege their claims with increased particularity under Federal Rule of Civil Procedure 9(b) if their complaint sounds in fraud." *Rubke*, 551 F.3d at 1161 (cleaned up).  To determine whether a complaint sounds in fraud, a court must closely examine the complaint's language and structure to assess "whether the complaint alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim." *Id.* (cleaned up).  But "[w]here . . . a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Id.*

The Court has already concluded that Plaintiffs have adequately pleaded that Statements 1, 2, and 3 were materially false or misleading when made under the exacting PSLRA standard.  It follows that Plaintiffs Section 11 claims pass muster under the less exacting requirements of Rule 9(b) and Rule 8 that apply to Section 11 claims.  Accordingly, the Court concludes that Plaintiffs' Section 11 claims based on Statements 1, 2, and 3 are adequately pleaded.

### D.      Item 105 and Item 303 Claims

Item 105 of SEC Regulation S-K requires that offering materials regulation statements filed on form S-1 include "a discussion of the most material factors that make an investment in the registrant or offering speculative or risky."  17 C.F.R. § 229.105.  Item 303 of SEC Regulation S-K, on the other hand, requires that offering materials disclose "any known trends or uncertainties that have had or are reasonably likely to have

_____
CIVIL MINUTES – GENERAL                                                              30

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii).  A "disclosure duty exists where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).  Allegations sufficient to state a claim under Items 105 and 303 are also sufficient to state a claim under Sections 11 and 12(a)(2) of the 1933 Act. *Id.*

"Management's duty to disclose under Item 303 is much broader than what is required under the standard [applicable to claims for securities fraud.]"  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1055 (9th Cir. 2014).  The Ninth Circuit has quoted approvingly the following SEC interpretation of Item 303:

Where a trend, demand, commitment, event or uncertainty is known, management must make two assessments:

(1) Is the known trend, demand, commitment, event or uncertainty likely to come to fruition?  If management determines that it is not reasonably likely to occur, no disclosure is required.

(2) If management cannot make that determination, it must evaluate objectively the consequences of the known trend, demand, commitment, event or uncertainty, on the assumption that it will come to fruition. Disclosure is then required unless management determines that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur.

_____
CIVIL MINUTES – GENERAL                                                    31

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

*Id.* (quoting Management's Discussion and Analysis of Financial Condition and Results of Operations, Exchange Act Release No. 34–26831, 54 Fed. Reg. 22427, 22430 (May 24, 1989)).

Here, Plaintiffs allege that Defendants violated Items 105 by failing to disclose that

at the time of the IPO, the cost of the R1 Platform's bill of materials exceeded its retail prices, that unless Rivian implemented material price increases and/or material cost reductions, the R1 Platform would never achieve profitability, and that the Company had decided to increase R1T and R1S prices after the IPO.

(ACC ¶ 304.)  Similarly, they allege that Defendants violated Item 303 by failing to disclose that

(i) the cost of the bill of materials for the R1 Platform had significantly increased in the years leading up to the IPO and materially exceeded the retail prices of the R1S and R1T at the time of the IPO, and its reasonably likely impact on Rivian's profitability and financial condition; (ii) absent a material price increase and/or significant reductions in material costs applicable to current and future R1 pre-orders, the R1 Platform could not become profitable and would continue to lose money on each R1 sale; and (iii) Rivian's decision to increase R1S and R1T retail prices following the IPO and the reasonably likely impact it would demand for its vehicles.

(*Id.* ¶ 311.)  According to Plaintiffs, "the negative delta between the R1 BOM cost and retail prices existed long before the IPO, and worsened as Rivian locked in pricing with its suppliers." (Opp. at  16; ACC ¶¶ 279–85.)  They argue that, because "Rivian fired its

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

cost consultant, attempted to reduce BOM costs, and decided to increase the R1 pricing before the IPO," those facts show that the negative difference between the R1 EVs and their BOM cost was a trend known to management and sufficiently enduring to trigger a disclosure obligation.  (Opp. at 17.)

In its previous Order, the Court concluded that Plaintiffs failed to allege Item 105 and Item 303 violations because they had not shown that Rivian had a firm plan to increase prices after the IPO and because "there were no known, actual margins for the R1 until approximately two months before the IPO." *Crews*, 2023 WL 3050081, at *16–17.  The Court found that Plaintiffs had not stated with sufficient clarity what they thought Rivian should have disclosed and rejected the idea that Rivian had an obligation to disclose future plans to increase its prices. *Id.*

Now, Plaintiffs have clarified what they claim Defendants had an obligation to disclose under Item 105 and Item 303: that the BOM cost for each R1 vehicle was significantly in excess of its retail price at the time of the IPO and that the R1 platform would never achieve profitability without price increases.  As Plaintiffs put it:

> For IPO investors, investing $13 billion in a company that could become profitable by scaling production volumes presents one set of risks, while investing in a company that sells $110,000 worth of car parts to consumers for just $70,000 presents a wildly different and far more severe set of risks. It is these severe risks that were hidden from investors.

(Opp. at 2.)  What Plaintiffs argue was a material fact that should have been disclosed is not, as the Court put it previously, "that the R1 [BOM] cost exceeded its purchase price at the time of the IPO," but rather that the BOM cost so exceeded R1 retail prices that R1 sales could not possibly become profitable absent a price increase.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023
Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

The Court is persuaded that the substantial negative differential between R1 retail prices and the platform's BOM cost meets the materiality threshold for Item 303—which is even broader than the materiality threshold for securities fraud.  Furthermore, the Court is persuaded that the persistent "negative delta" between the R1 BOM retail price and its BOM cost may be considered a "significant factor" making investment in Rivian especially "risky"—such that it would need to be disclosed under Item 105.  The Court therefore finds that Plaintiffs have alleged sufficient facts showing that Rivian violated Regulation S-K by not disclosing that high—and continuously rising—BOM costs for the R1 EVs posed a significant risk to its profitability prospects.   Although Plaintiffs have not pleaded enough facts to show that Defendants affirmatively misled investors, they have pleaded enough facts that, if proven, could show that Defendants failed to disclose trends and risks material to reasonable investors.

Accordingly, the Court concludes that Plaintiffs have adequately pleaded violations of Item 105 and Item 303.

### E.      Section 12(a)(2) Claims

Additional Plaintiff Muhl asserts a separate claim Section 12(a)(2) claim against the Underwriter Defendants on behalf of all persons who purchased Rivian Class A common stock issued in or traceable to the IPO.  (ACC ¶¶ 332–38.)  "Sections 11 and 12(a)(2) are 'Securities Act siblings' with similar elements. *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *31 (N.D. Cal. Oct. 1, 2015) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).  "To plead a claim under Section 12(a)(2), the plaintiff must allege that (1) the defendant is a statutory seller; (2) the sale was effected by means of a prospectus or oral communication; and (3) the prospectus or oral communication contained a material misstatement or omission." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *8 (C.D. Cal. May 5, 2011).  "The

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-01524-JLS-E                                    Date: July 03, 2023

Title:  Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al

'misstatement or omission' requirement under Section 12(a)(2) is materially identical to that under Section 11." *In re Velti PLC*, 2015 WL 5736589, at \*31.

The Underwriter Defendants argue that Muhl's Section 12(a)(2) claim must fail for the same reasons as Plaintiffs Section 11 claims.  (Underwriters' Mot. at 15.)  Because the Court has already concluded that Plaintiffs' Section 11 claims are adequately pleaded, that is not a proper basis to dismiss Muhl's Section 12(a)(2) claim.  Accordingly, the Court finds that Muhl's Section 12(a)(2) claim is properly pleaded.

**F.     Section 15 Claims**

Last, the Court addresses Plaintiffs' Section 15 claims against Baker, McDonough, Scaringe, and the Director Defendants.  Section 15 imposes secondary liability on someone who "controls" any person who is liable for a primary violation under either Section 11 or Section 12 of the 1933 Act.  *See, e.g.*, *In re ZZZZ Best Sec. Litig.*, 1994 WL 746649, at \*6 (C.D. Cal. Oct. 26, 1994).  Like Section 20, Section 15 imposes "controlling person" liability that is predicated on a primary violation.  *See, e.g.*, *In re Rigel Pharms.*, 697 F.3d at 886 ("Section 20(a) and section 15 both require underlying primary violations of the securities laws.") (citing 15 U.S.C. §§ 77o, 78t(a)).

Here, as with Plaintiffs' Section 20(a) claims, the Court concludes that because Plaintiffs have adequately pleaded the primary claims under Section 11 the derivative claims under Section 15 can go forward.

**IV.     CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss are DENIED.

                                                                    Initials of Deputy Clerk:  vrv