POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Court-Appointed Lead Plaintiff*
*William Baker, Additional Plaintiff*
*Jill Sligay, and Co-Lead Counsel*
*for the Proposed Class*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| WILLIAM BAKER, JILL SLIGAY, LENARD ROQUE, and AMOLKUMAR VAIDYA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., JACK DORSEY, NED SEGAL, PARAG AGRAWAL, and DAMIEN KIERAN,<br><br>Defendants. | Case No. 2:22-cv-06525-MCS-E<br><br>**PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANTS JACK DORSEY, PARAG AGRAWAL, AND NED SEGAL'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE (DKT. 137)**<br><br>Judge:    Hon. Mark C. Scarsi<br>Date:    January 22, 2024<br>Time:    9:00 a.m.<br>Place:    Courtroom 7C |

# **TABLE OF CONTENTS**

I.　　JUDICIAL NOTICE AND INCORPORATION BY REFERENCE MUST BE APPLIED WITH CAUTION ....................................................... 1

II.　　DEFENDANTS SEEK TO USE THE EXHIBITS IMPROPERLY ............ 2

　　　　A.　　Exhibit A .............................................................................................. 2

　　　　B.　　Exhibits B and C .................................................................................. 3

　　　　C.　　Exhibits D and E .................................................................................. 4

　　　　D.　　Exhibit F ............................................................................................... 4

　　　　E.　　Exhibit G .............................................................................................. 5

III.　　CONCLUSION ....................................................................................... 6

1

## I.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE MUST BE APPLIED WITH CAUTION

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Consideration of matters outside the pleading converts a 12(b)(6) motion into a motion for summary judgment unless the external matters are considered under the incorporation-by-reference doctrine or judicial notice under Federal Rule of Evidence 201. *Id*.

As this Court has recognized, "[i]n the context of a securities fraud action, the Ninth Circuit has instructed courts to cautiously approach overreliance on extraneous materials at the pleading stage." *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *5 (C.D. Cal. Jan. 26, 2021). Here, the Individual Defendants have indulged the "alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage." *Khoja*, 899 F.3d at 998.

> Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access.

*Id*.

**Incorporation By Reference**: "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* at 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). But "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim," and the "inferences a court may draw from an incorporated document should also be approached with caution." *Id.* at

1

1002-03. In particular, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* at 1003.

**Judicial Notice**: Rule 201 provides a narrow exception that permits a court to judicially notice an adjudicative fact if it is "not subject to reasonable dispute," meaning the fact is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the Court may take judicial notice of the existence of a document, but not truth of its contents unless the fact that the party wishes to notice is "not subject to reasonable dispute." *Khoja*, 899 F.3d at 999-1002 (quoting Fed. R. Evid. 201(b)).

The Individual Defendants[1] seek to introduce seven extrinsic documents in support of their renewed motion to dismiss, claiming that all of these documents may be judicially noticed and are incorporated by reference in the TAC. The Individual Defendants' Request is improper and should be denied in part.

## II.    DEFENDANTS SEEK TO USE THE EXHIBITS IMPROPERLY

### A.    Exhibit A

Plaintiffs do not object to the Individual Defendants' quoting of two statements in Exhibit A concerning Twitter's user engagement metric "monetizable Daily Active

---

[1] Defendants Jack Dorsey, Parag Agrawal, and Ned Segal have defined themselves as the "Individual Defendants" in their Request for Judicial Notice and Incorporation by Reference (the "Request") in support of their motion to dismiss the Third Amended Class Action Complaint ("TAC"). For the Court's convenience, this objection uses that definition, though the TAC defines "Individual Defendants" to include Defendant Damien Kieran. Citations to "¶" are to the TAC (Dkt.130). Citations to "Ind.Br." are to the motion to dismiss filed by Dorsey, Agrawal, and Segal (Dkt.136). Citations to "Ex. __" or "Exhibit __" are to the exhibits to the Declaration of Jaime Bartlett (Dkt.138). Unless otherwise noted, emphases are added and internal quotations and citations are omitted.

2

Users," or "mDAU." Ind.Br. at 8:14-21. However, this extrinsic document is unnecessary, as the TAC itself sets forth both quotes. ¶282.

Defendants also attempt to use Exhibit A to establish that Twitter's mDAU metric, introduced in 2019, is the same as its prior DAU metric, and that Twitter "contrasted this metric with the metric used pre-2016." But the TAC alleges that Exhibit A was false and misleading, so it is not a "source[] whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201(b)), and it says nothing about "text message links." (Ind.Br. at 3:8). The Individual Defendants' "unscrupulous use of [this] extrinsic document[]" is improper. *Khoja*, 899 F.3d at 998.

### B.    Exhibits B and C

The Individual Defendants cite Exhibit B to argue that they did not mislead investors into believing that mDAU is limited to users who are shown advertisements. However, the documents do not support the Individual Defendants' position. Exhibit B states that Twitter's mDAU metric "effectively removes users who are not shown ads and therefore not able to generate revenue for the company." This proves *Plaintiffs'* allegation that Defendants misled investors into believing that mDAU, by "remov[ing] users who are not shown ads," is limited to users that *are* shown ads. Ex. B. at 3 of 3. Exhibit C states that mDAU is "a metric [Twitter] created to measure users exposed on a daily basis to advertising through the site or Twitter applications that are able to show ads." Ex. C at 5 of 12. This is further evidence that the market believed that mDAU reflected users that saw ads, or are "exposed . . . to advertising." Indeed, the article refers to Twitter's mDAU growth as "a rise in daily users who see ads on the site." *Id.* The Individual Defendants' introduction of these extrinsic documents "to dispute facts stated in [the TAC]" and "resolve competing theories against the [TAC]" is improper and, moreover, directly contradicted by the documents themselves. At a minimum, judicial notice is improper because the document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes." *Khoja*, 899 F.3d at 1000 (quoting

3

*Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)).

### C.    Exhibits D and E

The Individual Defendants cite Exhibits D and E, both *Reuters* articles, to argue that the author's belief that mDAU referred to "those who see ads" (Ex. D at 2 of 5), or "users who see advertising" (Ex. E at 2 of 11), was based "on sources other than the Statement 7 disclosures." (Ind.Br. at 9:9-10). The Individual Defendants' reasoning is that Exhibit D "discusses Twitter's projection for mDAU by Q4 2023" (*id*. at 9:10) and that Exhibit E refers to "an mDAU projection heard during an internal Twitter meeting." (*id*. at 9:11). This fails. Neither document establishes that the author—the same person is identified as the author of both articles—was *not* misled by the Statement 7 disclosures. Exhibit D at most suggests that the author was *also* misled by Twitter's mDAU projections Q4 2023. Likewise, the statement in Exhibit E that "Twitter is aiming to grow its monetizable daily active users, or users who see advertising, by 13 million this quarter, according to an internal meeting that was heard by Reuters," does not establish that the author's understanding of what mDAU is was based on, let alone exclusively on, the referenced "internal meeting." Ex. E at 2 of 11. It merely indicates that the report of Twitter's "aim[]" to increase mDAU "by 13 million this quarter" was based on the "internal meeting." *Id.* Even under the Individual Defendants' logic, these documents "[are] subject to varying interpretations, and there is a reasonable dispute as to what [they] establish[]," and thus judicial notice is improper. *Khoja*, 899 F.3d at 1000 (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)).

### D.    Exhibit F

The Individual Defendants cite this document only to establish that Twitter's quarterly report for the first quarter of 2022 was signed (including by Defendant Segal) on May 2, 2022. Plaintiffs do not object to this use of Exhibit F, but reserve the right to challenge any additional use of this document by Defendants.

4

### E.   Exhibit G

The Individual Defendants cite this document (a July 7, 2022 *Washington Post* article) three times. First, it serves (Ind.Br. at 16:14) as a secondary—and superfluous—citation to Elon Musk's May 13, 2022 Tweet that his agreement to acquire Twitter was "on hold" (Ex. G at 3 of 4), which is already quoted in full in the TAC (¶330). The Individual Defendants then cite Exhibit G twice to argue that "the market would have understood that Musk had his own motivations for making the claims he did," and thus disbelieved Musk's disclosures about Twitter. Ind.Br. at 17:17-18; *see also id*. at 18:19-20. But the document does not suggest, let alone establish, that the market disregarded Musk's concerns that Twitter's claims about mDAU and bots were false, as such issues formed "a big part of the public conversation around the company for years." Ex. G at 4 of 4. The Individual Defendants selectively quote Exhibit G to suggest that Musk's claims are not "persuasive" (Ind.Br. at 18:4). However, the law professor quoted in Exhibit G and then quoted by the Individual Defendants (Ind.Br. at 17:25-18:4) was not discussing whether Twitter's representations were false and misleading, but whether their falsity would permit Musk to terminate the merger agreement. The Individual Defendants cut off their quote immediately before it states that the law professor cited "Musk's own waiving of due diligence in his hasty acceptance of the deal" as a factor "undercut[ting] a lot of arguments [Musk] could try to make." Ex. G at 4 of 4. Exhibit G might establish that market participants were unsure whether Musk could terminate the merger agreement, but it does not establish that the market disbelieved Musk's disclosures about Twitter. Again, the Individual Defendants improperly seek to employ a document "subject to varying interpretations" to "dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. The Individual Defendants "improperly ask[] the district court to engage in fact-finding in the course of deciding the sufficiency of the [TAC]." *Id*. at 1006.

PLAINTIFFS' OBJECTION TO DORSEY ET AL. REQ. FOR JUDICIAL NOTICE       Case No. 2:22-cv-06525-MCS-E

## III.   CONCLUSION

For the reasons set forth above, the Individual Defendants' Request should be partially denied. Plaintiffs reserve the right to challenge any additional uses of the Exhibits by Defendants.

Dated: December 1, 2023

Respectfully submitted,
POMERANTZ LLP

By: */s/ Jonathan D. Park*

**THE ROSEN LAW FIRM, P.A.**

**POMERANTZ LLP**

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jeremy A. Lieberman (*pro hac vice* forthcoming)
Jonathan D. Park (*pro hac vice*)
Dolgora Dorzhieva (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jpark@pomlaw.com
ddorzhieva@pomlaw.com

Jonathan Horne (*pro hac vice*)
Brian B. Alexander (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
jhorne@rosenlegal.com
balexander@rosenlegal.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

*Counsel for Court-Appointed Lead Plaintiff William Baker, Additional Plaintiffs Lenard Roque and Amolkumar Vaidya, and Co-Lead Counsel for the Class*

*Counsel for Court-Appointed Lead Plaintiff William Baker, Additional Plaintiff Jill Sligay, and Co-Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ &**

6

**GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel*

7

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this document contains 1,721 words, including headings, footnotes, and quotations but excluding the caption, the table of contents, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits.

Dated: December 1, 2023

/s/ *Jonathan D. Park*
Jonathan D. Park

8