David L. Anderson (SBN 149604)
dlanderson@sidley.com
Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants Parag Agrawal and Ned Segal*

Additional Counsel on Signature Page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., et al., <br><br> Defendants. | Case No. 2:22-cv-06525-MCS-E <br><br> **DEFENDANTS JACK DORSEY, PARAG AGRAWAL, AND NED SEGAL'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> *[Filed concurrently with Reply in Support of Request for Judicial Notice and Defendant Twitter, Inc.'s Reply in Support of Motion to Dismiss and Reply in Support of Request for Judicial Notice]* <br><br> Judge: Hon. Mark C. Scarsi <br><br> Hearing Date: January 22, 2024 <br> Hearing Time: 9:00 a.m. <br> Location: Courtroom 7C |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     DISCUSSION ..........................................................................................2

        A.      Falsity Is Not Adequately Alleged......................................................2

                1.      Statement 7 ...............................................................................2

                2.      Statement 8 ...............................................................................3

        B.      A Strong Inference of Scienter Is Not Pled. ..........................................4

                1.      Segal's statement is not an admission. ......................................4

                2.      Plaintiffs' application of *Shenwick* is misleading; they have not shown the core operations doctrine applies. .....................................................................................5

                3.      Plaintiffs' remaining arguments regarding scienter must also be rejected..................................................................6

        C.      Loss Causation .......................................................................................7

        D.      Section 20(a) Control Person Liability ...................................................9

III.    CONCLUSION.......................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
  561 F. App'x 598 (9th Cir. 2014)...................................................................5

*Brady v. Delta Energy & Commc'ns, Inc.*,
  2022 WL 3643659 (C.D. Cal. Aug. 5, 2022).................................................2

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*
  81 F.4th 918 (9th Cir. 2023)..........................................................................5

*In re Fibrogen, Inc.*,
  2022 WL 2793032 (N.D. Cal. July 15, 2022).................................................7

*In re Flowers Foods, Inc. Sec. Litig.*,
  2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) ................................................7

*Gammel v. Hewlett-Packard Co.*,
  2013 WL 1947525 (C.D. Cal. May 8, 2013)...................................................7

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ................................................2

*Jun Shi v. Ampio Pharms., Inc.*,
  2020 WL 5092910 (C.D. Cal. June 19, 2020).................................................5

*Mendoza v. HF Foods Grp. Inc.*,
  2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) ................................................4

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018)......................................................................7, 8

*Purple Mountain Tr. v. Wells Fargo & Co.*,
  432 F. Supp. 3d 1095 (N.D. Cal. 2020) .........................................................9

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014).........................................................................6

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015).................................................6

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ................................................................5

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ..........................................5, 6

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS -
CASE NO. 2:22-cv-06525-MCS-E

## I. INTRODUCTION

Plaintiffs' Opposition fails to rebut the many pleading deficiencies identified in Individual Defendants' motion to dismiss for the two Sets of mDAU Statements.

As explained in the Motion, it is undisputed that Statement 7 consistently and accurately defined mDAU as users who accessed Twitter via platforms where ads *could* be seen. Despite the clarity of the definition based on the *capability* to see ads, Plaintiffs claim that the market was misled into believing that all mDAU *actually saw* ads and *actually generated revenue.* Plaintiffs implausibly base their entire theory of falsity (and scienter) on a single never-repeated phrase in one Shareholder Letter from sixteen months before the first challenged statement. The Court should reject this implausible theory.

Plaintiffs fare no better with Statement 8. While the Court previously found falsity and scienter adequately alleged for Statement 8 in two 10-Qs at the end of the Class Period, the Court correctly found loss causation lacking. In an attempt to show loss causation, Plaintiffs have added new allegations that now contradict (and thus are fatal to) their theories of falsity and scienter. At the very least, Plaintiffs' new loss causation allegations show that there is no strong inference of scienter for one of the 10-Qs for which the Court previously found scienter, and there is no loss causation alleged for the other, so there are no statements for which both scienter and loss causation are alleged.

The Court should therefore grant the Motion for all the reasons stated therein.

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS -
CASE NO. 2:22-cv-06525-MCS-E

## II.   DISCUSSION

### A.   Falsity Is Not Adequately Alleged

#### 1.   Statement 7

The Opposition confirms Plaintiffs are relying on assumptions and unreasonable inferences to allege falsity for Statement 7.

In February 2019, Twitter defined mDAU in a Shareholder Letter as users who access the platform via entry-points where ads *could* be seen. Ex. A at 3. Twitter also stated "[o]ur mDAU are not comparable to current disclosures from other companies, many of whom share a more expansive metric that includes people who are not seeing ads." *Id.* Plaintiffs assert that this single sentence, made **sixteen months** before the first challenged statement and never repeated again, misled the market throughout the entire Class Period into believing that all mDAU *actually saw* ads and generated revenue. Opp. at 8. To accept Plaintiffs' theory, the Court has to accept Plaintiffs' interpretation of this statement and assume the market **ignored** the subsequent, repeatedly-disclosed, and accurate definition of mDAU and other key disclosures and definitions. Mot. at 8-11. Plaintiffs fail to allege particular facts that support a plausible inference of falsity. *See Brady v. Delta Energy & Commc'ns, Inc.*, 2022 WL 3643659, at *5-6 (C.D. Cal. Aug. 5, 2022). The facts that Plaintiffs do allege do not plausibly lead to the self-serving conclusions Plaintiffs draw.

A plausible falsity theory cannot be found in any of Plaintiffs' other allegations or arguments in Opposition either. For example, Plaintiffs argue a material and growing number of mDAU did not see ads. Opp. at 8-9. But their data reflects revenue—not ad exposure—and shows 70% of mDAU generated some revenue. Mot. at 10. Plaintiffs simply cannot escape that Twitter clearly told the market that mDAU were "monetizable" not "monetized." *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *10 (N.D. Cal. Mar. 29, 2019) ("Just as 'water-resistant' does not mean 'water-proof,' reasonable investors understand that a 'vulnerability-resistant' product is not guaranteed to be immune from any and all

security issues."). And although Plaintiffs argue that Twitter's disclosure about the percent of fake or spam accounts was inaccurate, they are no longer challenging that statement in the TAC. Mot. at 10.

### 2.    Statement 8

Plaintiffs double down on their conflation of mDAU with Average mDAU (Opp. at 6-7) by ignoring Twitter's disclosures, which were unambiguous in their separate uses of each:

> We define mDAU as people, organizations, or other accounts who logged in or were otherwise authenticated and accessed Twitter on any given day through twitter.com or Twitter applications that are able to show ads. Average mDAU for a period represents the number of mDAU on each day of such period divided by the number of days for such period. Changes in mDAU are a measure of changes in the size of our daily logged in or otherwise authenticated active total accounts. To calculate the year-over-year change in mDAU, we subtract the average mDAU for the three months ended in the previous year from the average mDAU for the same three months ended in the current year and divide the result by the average mDAU for the three months ended in the previous year.

Ex. 4 at 5. Plaintiffs have not alleged particularized facts that plausibly lead to the conclusion that investors would have read Statement 8 (found in the very next paragraph) which states, "[a]fter we determine an account is spam, malicious automation, or fake, we stop counting it in our mDAU, or other related metrics" (*id.*), and interpreted it to mean that Twitter re-counted each preceding day's mDAU before calculating Average mDAU. That is not what is said or implied. "Stop" does not mean "stop and go back and redo what was done before."[1]

Moreover, Plaintiffs have not alleged particular facts about Mr. Segal's purported statement to Musk that would plausibly lead to the conclusion that he was admitting that Twitter's practice differed from what it disclosed. To the contrary, and as explained in the Motion, Mr. Segal's statement was consistent with Twitter's disclosure. Mot. at 11-12.

---

[1] Exhibit G has nothing to do with investors' purported understanding of when mDAU was calculated; it purports to describe Twitter's process of sample testing for fake accounts. *Id.* at 4.

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS -
CASE NO. 2:22-cv-06525-MCS-E

### B.    A Strong Inference of Scienter Is Not Pled.

Plaintiffs' arguments in defense of their scienter allegations suffer from the exact same defect as the allegations themselves: they are lodged collectively against "Defendants" or "Individual Defendants." Opp. at 11-15. The law does not permit this kind of "group pleading" of scienter. *See, e.g.*, *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021).

### 1.    *Segal's statement is not an admission.*

Plaintiffs start, unsurprisingly, with the Court's prior finding that scienter was sufficiently alleged as to Mr. Segal only for Statement 8, and only with respect to the 10-Qs for 1Q 2022 (ended March 31, 2022) and 2Q 2022 (ended June 30, 2022). Dkt. 123 at 21. The Court can and should revisit its ruling regarding these scienter allegations because Plaintiffs' expanded allegations in the TAC now demonstrate their inadequacy. Mot. at 11-12, 14-15.

*First*, Plaintiffs' new allegations show that Mr. Segal's statement was consistent with Statement 8, and therefore does not support scienter. *Id.*

*Second*, at the very least, the inference of scienter does not extend to Twitter's 10-Q for 1Q 2022 (ended March 31, 2022), because that document was filed on May 2, 2022, and Musk himself subsequently claimed that he had been seeking information on mDAU from Twitter since May 9, 2022. Mot. at 14 n.7.

*Finally*, Mr. Segal's purported admission is also inadequate to allege scienter as to Mr. Agrawal. Plaintiffs imply that Mr. Agrawal "attended the meeting" where Mr. Segal purportedly made the statement. Opp. at 11. But the TAC alleges only that Mr. Agrawal attended a *different* meeting on May 2, 2022. ¶ 318. Nor should the Court accept Plaintiffs' conclusory assertions that Mr. Agrawal had "direct involvement in responding to Musk's inquiries about mDAU" and that Messrs. Segal and Agrawal were motivated to misstate the truth about mDAU because they "stood to gain millions" from the merger. Opp. at 11. Neither of these assertions are even alleged in the TAC and such generalized assertions of job title and motive are

patently inadequate anyway. *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 601 (9th Cir. 2014).[2]

### 2. *Plaintiffs' application of <u>Shenwick</u> is misleading; they have not shown the core operations doctrine applies.*

Plaintiffs fundamentally misapply the core operations doctrine in their Opposition. Mot. at 13-14. Neither *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1145 (N.D. Cal. 2017), nor Plaintiffs' other authorities stand for the proposition that the importance or tracking of a metric within a company, standing alone, is sufficient to invoke the core operations doctrine. Instead, Plaintiffs need (i) particularized allegations about contrary information that existed contemporaneously within the company *and* (ii) detailed and specific allegations about management's exposure to that information. *Jun Shi v. Ampio Pharms., Inc.*, 2020 WL 5092910, at *6 (C.D. Cal. June 19, 2020); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).[3]

Plaintiffs cannot bypass the core operations requirements merely because a Twitter shareholder was once permitted to plead scienter for different alleged misstatements via core operations, particularly because that shareholder did not rely on core operations alone. In *Shenwick*, the court held that defendants' statements about the positive trend in MAU were misleading because defendants failed to disclose that DAU was simultaneously declining. 282 F. Supp. 3d at 1138. The court found core operations supported an inference of scienter because plaintiff "plausibly alleged," including based on confidential witness allegations that management "closely monitored" DAU, that Twitter "consistently relied on DAU as its key user engagement metric" and plaintiff had alleged facts suggesting that internally the

---

[2] The notion that the merger could motivate Messrs. Segal and Agrawal to misstate the truth is also absurd. Statements 7 & 8 were repeated quarterly starting in July 2020, long before the merger was a possibility.

[3] *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 940 (9th Cir. 2023), is irrelevant because the court did not apply the core operations doctrine at all.

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

company looked at DAU and MAU "in combination," *i.e.*, that they looked at the very comparison of trends that they were alleged to have withheld from the market. *Id.* at 1146. The court found scienter based on core operations in combination with allegations that individual defendants had access to contradictory specific DAU numbers, as well as the temporal proximity of individual defendants' evasive responses to questions about DAU. *Id.* at 1146-49.

Here, in contrast, Plaintiffs do not allege the existence of contemporaneous information within Twitter that contradicted Statements 7 or 8 when they were made. The purported data Plaintiffs cite (Opp. at 13 n.4) is derived from Musk's Verified Second Amended Counterclaims, Answer, and Affirmative Defenses to Plaintiff's Verified Complaint in *Twitter, Inc. v. Musk, et al.*, C.A. 2022-0613-KSJM (Del. Ch. Oct. 4, 2022). ¶ 288 n.43. Neither Plaintiffs nor Musk, however, describe who made these calculations or when. And, Plaintiffs do not plead detailed and specific allegations as to any Individual Defendant showing their exposure to that contrary information in any event.

> ### 3. *Plaintiffs' remaining arguments regarding scienter must also be rejected.*

Imputation to Twitter (Opp. at 13-14): Plaintiffs allege Kayvon Beykpour was responsible for growing mDAU and knew how it was calculated. These general allegations are inadequate to plead a strong inference that he knew anything demonstrating that either Statement 7 or 8 was false or misleading.

Statement Specificity (Opp. at 14): No case cited by Plaintiffs found a strong inference of scienter solely on the basis of the specificity of the public statements. *See Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014); *Shenwick*, 282 F. Supp. 3d at 1147-48; *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015).

Concealment and Motive (Opp. at 14-15): Plaintiffs' concealment and motive arguments fail because they do not tie back to any conduct or motive that existed in

2019, when the allegedly inaccurate statement, which purportedly rendered all later accurate statements about mDAU misleading, was made. Nor do Plaintiffs explain how the purported failure to give mDAU data to Musk from May to October 2022 supports scienter for statements made in all the periodic filings that predate that time.[4] And Plaintiffs' assertion that the Individuals Defendants wanted to "live up to" promises about mDAU, (Opp. at 15), "provides much less support for scienter than allegations in other cases that defendants engaged in inside trading or sought other personal benefits." *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *21 (C.D. Cal. May 8, 2013).

### C.    Loss Causation

The Motion explained numerous ways in which the TAC fails to adequately allege loss causation for the mDAU statements.

*First*, the alleged corrective disclosures did not actually correct the alleged misstatements. Two of the three alleged corrective disclosures were solely concerned with Twitter's estimate of the percentage of fake or spam accounts in mDAU, which is no longer at issue in this case. Mot. at 16. And the third alleged corrective disclosure (the July 8 SEC letter) did not say anything about the percentage of mDAU who actually saw ads or generated revenue, which is the primary basis on which Plaintiffs allege falsity. *Id.* at 16-17.

Plaintiffs try to brush aside this disconnect by claiming that their corrective disclosures "resulted from the Defendants' unwillingness or inability to disclose facts about mDAU to Musk." Opp. at 17. But the securities laws require more than just a corrective disclosure tied to the same general subject. Instead, Plaintiffs must "trac[e] the loss" back to "the *very facts* about which [Defendants] lied."

---

[4] Plaintiffs' cases are distinguishable on their facts, involving post-hoc data manipulation or threats to silence internal dissent, and neither support the idea that an alleged failure to share information supports scienter as to statements made in the past. *In re Fibrogen, Inc.*, 2022 WL 2793032, at *21 (N.D. Cal. July 15, 2022); *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *13 (M.D. Ga. Mar. 23, 2018).

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS - CASE NO. 2:22-cv-06525-MCS-E

*Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (emphasis added, citations omitted). Here, at most, only one of the alleged corrective disclosures (the July 8 letter) is related in any way to only one of the challenged Statements (Statement 8).

*Second*, the alleged corrective disclosures would not have been treated as statements of fact by the market, given that they were all made by or on behalf of Musk, and the market knew both that Musk had his own reasons for making these statements and that Musk had repeatedly stated he lacked information about mDAU. Mot. at 17-19. Plaintiffs do not even attempt to defend the May 13 tweet or July 7 *Washington Post* article as statements of fact, and instead only argue that the July 8 SEC letter was "sufficiently credible." Opp. at 18-19.

But Plaintiffs ignore the July 8 letter's repeated statements that Twitter has "not provided much of the information . . . that is necessary for [Musk] to make an assessment of the prevalence of false or spam accounts on its website," and the letter's accordingly limited claim that Statement 8 "*appears* to be false" and that Musk would have the right to seek recission of the Merger Agreement "*in the event* these material representations are determined to be false." Ex. F at 3, 6 (emphasis added). The market would have understood these claims of *potential* falsity in context: namely, they came a day after the *Washington Post* reported that Musk "might try to wriggle out of the deal" for reasons unrelated to spam or fake accounts. Ex. G at 1. Thus, the overwhelming takeaway for the market (and the reason for the stock drops) was that Musk was trying to terminate the Merger Agreement, not that Musk was disclosing some truth about mDAU.[5]

*Third*, Individual Defendants explained that Plaintiffs have not pled loss causation for any alleged misstatements in the 2Q 2022 10-Q because they have not

---

[5] That the market was reacting to Musk's intention to terminate the agreement, and not to some new "truth" about mDAU, is reinforced by the fact that when Twitter actually did restate mDAU, the market did not react. Mot. at 19-20.

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS -
CASE NO. 2:22-cv-06525-MCS-E

alleged any corrective disclosures concerning mDAU after that 10-Q was signed on July 22, 2022. Mot. at 19. Plaintiffs do not address this point and therefore concede it. This is a critical concession.

As explained above, the Court previously found that Plaintiffs had adequately alleged scienter for Statement 8 only for the 1Q 2022 10-Q and the 2Q 2022 10-Q. While Individual Defendants believe that Plaintiffs' new allegations show that scienter is not adequately pled for *any* of the alleged misstatements, at the very least, Plaintiffs' own alleged corrective disclosure shows that scienter is not adequately pled for the 1Q 2022 10-Q. *See supra.* Even if the Court were to find scienter adequately alleged for the 2Q 2022 10-Q, Plaintiffs now concede that they have not alleged loss causation for that 10-Q. That means there are no statements for which *both* scienter and loss causation are adequately alleged, thus warranting dismissal.[6]

## D.    Section 20(a) Control Person Liability

"The fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a 'controlling person.'" *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1107 (N.D. Cal. 2020) (citation omitted); Mot. at 21. Plaintiffs have made no attempt to show with any specificity who among the Individual Defendants allegedly controlled which challenged statements or at which times. And clearly, not all of the Individual Defendants had control over all of the alleged misstatements. For example, Mr. Dorsey had resigned from Twitter before many of the challenged statements were even made. Another example is Plaintiffs' failure to show how Mr. Segal, as CFO, could have controlled a blog post written by non-finance employees. Plaintiffs have therefore failed to sufficiently plead a 20(a) claim.

---

[6] Individual Defendants also explained that Plaintiffs could not plead any "materialization of the risk." Mot. at 20. Plaintiffs do not address this argument and so appear to concede this point.

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS -
CASE NO. 2:22-cv-06525-MCS-E

## III.   CONCLUSION

For the foregoing reasons, and the reasons stated in the Individual Defendants' motion and the Company Brief and Reply, the Individual Defendants respectfully request that the Court dismiss all claims against them with prejudice.

Respectfully Submitted,

Dated: December 15, 2023   SIDLEY AUSTIN LLP

By */s/ Jaime A. Bartlett*
David L. Anderson (SBN 149604)
dlanderson@sidley.com
Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants Parag Agrawal and Ned Segal*

Dated: December 15, 2023   MUNGER, TOLLES & OLSON LLP

By */s/ George M. Garvey*
George M. Garvey (SBN 89543)
george.garvey@mto.com
Abraham R. Oved (SBN 335927)
avi.oved@mto.com
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100

*Attorneys for Defendant Jack Dorsey*

**CIVIL L.R. 5-4.3.4(a)(2)(i) ATTESTATION**

I, Jaime A. Bartlett, am the ECF user whose ID and password are being used to file DEFENDANTS JACK DORSEY, PARAG AGRAWAL, AND NED SEGAL'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT. In compliance with Civil Local Rule 5-4.3.4(2)(i), I hereby attest that counsel for all signatories listed on the signature page have concurred in this filing.

Dated: December 15, 2023          By:     /s/ *Jaime A. Bartlett*
                                          Jaime A. Bartlett


**CIVIL L.R. 11-6.1 CERTIFICATE OF COMPLIANCE**

I, Jaime A. Bartlett, the undersigned, counsel of record for Parag Agrawal and Ned Segal, certifies that this brief contains 2,994 words, which complies with the word limit of Section 9(d) of the Honorable Mark C. Scarsi's Civil Standing Order.

Dated: December 15, 2023          By:     /s/ *Jaime A. Bartlett*
                                          Jaime A. Bartlett

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS -
CASE NO. 2:22-cv-06525-MCS-E