LATHAM & WATKINS LLP
Michele D. Johnson (CA Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
 *whitney.weber@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
 *andrew.clubok@lw.com*
Susan E. Engel (*Pro Hac Vice*)
 *susan.engel@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for X Corp., successor in interest
to named defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WILLIAM BAKER, JILL SLIGAY, LENARD ROQUE, and AMOLKUMAR VAIDYA, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>TWITTER, INC., JACK DORSEY, NED SEGAL, PARAG AGRAWAL, and DAMIEN KIERAN,<br><br>                    Defendants. | Case No. 2:22-cv-06525-MSC-E<br><br>**DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. Mark C. Scarsi<br>Date:   January 22, 2024<br>Time:   9:00 a.m.<br>Place:  Courtroom 7C |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     ARGUMENT ........................................................................................................... 1

        A.      Plaintiffs Do Not Plead Falsity ................................................................... 1

                1.      Set 1 About July 2020 Incident ...................................................... 1

                2.      Statement 2 About Cybersecurity Practices ................................... 2

                3.      Statement 3 About "Privacy by Design" ....................................... 3

                4.      Statement 4 About FTC Settlement ................................................ 4

                5.      Set 5 About Cybersecurity Risks .................................................... 5

                6.      Set 6 About Influence Campaigns ................................................... 5

                7.      Sets 7 and 8 About mDAU ............................................................. 7

        B.      Plaintiffs Do Not Plead a Strong Inference of Scienter ............................. 7

                1.      Plaintiffs Do Not Plead Motive ..................................................... 7

                2.      Plaintiffs Fail to Plead Individual Defendants' Scienter ............... 7

                3.      No Strong Inference of Scienter as to Twitter ............................... 9

        C.      Plaintiffs' Loss Causation Arguments Fail ............................................... 10

III.    CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

### CASES

*Arredondo v. Univ. of La Verne,*
618 F. Supp. 3d 937 (C.D. Cal. 2022)................................................................3, 6

*Brody v. Transitional Hosp. Corp.,*
280 F.3d 997 (9th Cir. 2002)....................................................................................3

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.,*
63 F.4th 747 (9th Cir. 2023)....................................................................................2

*In re AnaptysBio, Inc.,*
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) .......................................................8

*In re Cloudera, Inc. Sec. Litig.,*
2022 WL 14813896 (N.D. Cal. Oct. 25, 2022).......................................................3

*In re Equifax Inc. Sec. Litig.,*
357 F. Supp. 3d 1189 (N.D. Ga. 2019) ...................................................................2

*In re EZCorp, Inc. Sec. Litig.,*
181 F. Supp. 3d 197 (S.D.N.Y. 2016)......................................................................2

*In re Mattel Sec. Litig.,*
2021 WL 1259405 (C.D. Cal. Jan. 26, 2021)........................................................10

*In re Mellanox Techs., Ltd. Sec. Litig.,*
2014 WL 7204864 (N.D. Cal. Dec. 17, 2014) .......................................................4

*In re Quality Sys., Inc. Sec. Litig.,*
865 F.3d 1130 (9th Cir. 2017).................................................................................3

*In re QuantumScape Sec. Class Action Litig.,*
580 F. Supp. 3d 714 (N.D. Cal. 2022).....................................................................5

*In re Solarcity Corp. Sec. Litig.,*
274 F. Supp. 3d 972 (N.D. Cal. 2017).....................................................................9

*In re SolarWinds Corp. Sec. Litig.,*
595 F. Supp. 3d 573 (W.D. Tex. 2022).....................................................................3

*Kim v. Advanced Micro Devices, Inc.*,
   2019 WL 2232545 (N.D. Cal. May 23, 2019) .......................................................2

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ..........................................................................7

*Lomingkit v. Apollo Educ. Grp. Inc.*,
   2017 WL 633148 (D. Ariz. Feb. 16, 2017) .....................................................1, 3

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ..........................................................................10

*Lopez v. Ctpartners Exec. Search Inc.*,
   173 F. Supp.3d 12 (S.D.N.Y. 2016) ..................................................................4

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ..........................................................................4

*Nursing Home Pens. Fund v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ..........................................................................7

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021) ...................................................................7, 8, 9

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ............................................................................9

*Rok v. Identiv, Inc.*,
   2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ........................................................10

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ............................................................................8

*Shash v. Biogen, Inc.*,
   84 F.4th 1 (1st Cir. 2023) .................................................................................9

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ............................................................9

*Warshaw v. Xoma Corp.*,
   74 F.3d 955 (9th Cir. 1996) ..............................................................................3

*Waterford Twnp. Police v. Mattel, Inc.*,
   321 F. Supp.3d 1133 (C.D. Cal. 2018) ..........................................................5, 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

TWITTER'S REPLY ISO MOTION TO DISMISS
THIRD AM. COMPLAINT
Case No. 2:22-cv-06525-MSC-E

*Weller v. Scout Analytics, Inc.*,
  230 F. Supp. 3d 1085 (N.D. Cal. 2017) ........................................................4

*West v. Ehealth, Inc.*,
  2016 WL 948116 (N.D. Cal. Mar. 14, 2016) ..................................................2

*Weston v. DocuSign, Inc.*,
  2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ................................................8

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .......................................................................3

*Xiaojiao Lu v. Align Tech., Inc.*,
  417 F. Supp. 3d 1266 (N.D. Cal. 2019) .....................................................4, 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

TWITTER'S REPLY ISO MOTION TO DISMISS
THIRD AM. COMPLAINT
Case No. 2:22-cv-06525-MSC-E

I.      INTRODUCTION

Plaintiffs' Opposition ("Opp.") confirms they are manufacturing a securities fraud lawsuit because—in hindsight—they disagree with how Twitter operated its business. But Plaintiffs cannot plead a claim by taking statements out of context and speculating that Individual Defendants *could* have known contradictory information. Plus, the "corrective" disclosures did not actually correct anything Defendants said.

The TAC should be dismissed, this time with prejudice.

II.     ARGUMENT

A.      Plaintiffs Do Not Plead Falsity

1.      Set 1 About July 2020 Incident

Plaintiffs argue **Statements 1a-1c** were misleading because—in Plaintiffs' view—those statements suggested Twitter was limiting engineers' access to user data in its production environment. Opp.3. But Plaintiffs' "interpretation" ignores what Twitter said.

In July 2020, Twitter disclosed attackers "accessed tools *only available to our internal support teams*" (not engineers) to take over certain accounts. Ex.2.[1] To "protect [its] service," Twitter said employee access to the tools used in the attack was limited:

- "Access to *these tools* is strictly limited";
- "*These tools* are constantly being improved";
- "[I]ndividuals with access to *these tools*, is substantially lower today."

TAC ¶¶39-41. These statements "impl[y] nothing about" engineers' access to data in Twitter's coding environment. *Lomingkit v. Apollo Educ. Grp. Inc.*, 2017 WL 633148, at *14-15 (D. Ariz. Feb. 16, 2017).

Plaintiffs argue the September blog post mentioned engineers, and investors thus would have interpreted the statement to mean (1) "Twitter requires a 'specific

---

[1] All emphasis added. Capitalized terms are defined in Twitter's Motion ("Mot."). Dkt.139.

justification'" for *any* employee to access user data, and (2) engineers' access to data through "tools" was limited. Opp.3-4. This, too, fails. *First*, Twitter disclosed its "engineering team members *have access*" to user data (*not* that it was limited), and the "specific justification" why: to "build and operate" Twitter "every day." Ex.5. *Second*, Twitter never suggested anything about engineers' access to support tools— and the TAC alleges engineers only had access to data through the "production environment." Opp.3; TAC ¶¶60-62. This tracks Twitter's statement that engineers had access to data to build Twitter's platform, while "*[o]ther* teams" had access to "proprietary tools to help with a variety of support issues." Ex.5; *see also Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *8 (N.D. Cal. May 23, 2019) ("no conflict" between statements and "omitted" information).

Plaintiffs' "out of context" reinterpretation of Statements 1a-1c does not satisfy *Twombly*'s plausibility standard, let alone the PSLRA's heightened falsity standard. *West v. Ehealth, Inc.*, 2016 WL 948116, at *5 (N.D. Cal. Mar. 14, 2016); *see also Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).

## 2. Statement 2 About Cybersecurity Practices

Plaintiffs argue **Statement 2** is actionable and misleading because Twitter claimed it was complying with "best practices" when it was not. Opp.8-9. Plaintiffs' arguments are meritless.

*First*, Plaintiffs admit Segal's statement is a "general statement of optimism" (*i.e.*, puffery). Opp.9. That it "concern[ed] cybersecurity" does not make it actionable. *Id.* Plaintiffs' cases make this clear. There, defendants said they had put into place a specific "best practice," or "*ensure*[*d* they] met established best practices." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1223 (N.D. Ga. 2019); *In re EZCorp, Inc. Sec. Litig.*, 181 F. Supp. 3d 197, 207 (S.D.N.Y. 2016). Segal made no such guarantee—saying instead that Twitter was "considering," "investing," and "learning" about "developing best practices and applying them."

TAC ¶120.  These "generalizations" "are precisely the type of puffery" Plaintiffs' authorities explain are nonactionable.  *EZCorp*, 181 F. Supp. 3d at 207.[2]  And to the extent Segal spoke about any specific business practice—giving people physical keys—Plaintiffs concede "Twitter followed" it.   Opp.8; Op.8-9 ("subjective assessment" about "commitments" nonactionable).

*Second*, Plaintiffs claim Segal's statement about "developing best practices" was misleading because "all engineers" had access to user data in the production environment.  Opp.8.  But Segal said nothing about who had access to data, or how.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (plaintiffs cannot "rewrite[]" statements).  A statement is not misleading "even if it is incomplete."  *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *Lomingkit*, 2017 WL 633148, at *14.

### 3.      Statement 3 About "Privacy by Design"

Plaintiffs argue **Statement 3**—that Twitter enhanced training on "privacy by design"—implied Twitter deleted user data because "investors assume technical terms take their technical meaning unless defendants say otherwise."  Opp.10.  As an initial matter, Plaintiffs ignore Twitter's argument that it *did* "say otherwise."  *See* Mot.9-10; *see also Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 948 (C.D. Cal. 2022) (unaddressed arguments accepted).  The "privacy by design" term was hyperlinked to another article describing Twitter's "processes to review the products [it] launch[es]," which said nothing about data deletion.  Ex.6.  Plaintiffs cannot substitute their definition of the term for the meaning Twitter actually employed.  *See In re Cloudera, Inc. Sec. Litig.*, 2022 WL 14813896, at *8 (N.D. Cal. Oct. 25, 2022).

---

[2] Two of the other cases Plaintiffs cite are about "specific aspects of a company's operation," and are not relevant here.  Opp.9 (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)).  And the third is about scienter, not falsity.  *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 585 (W.D. Tex. 2022).

And even if Plaintiffs' definition were accepted, they do not allege facts suggesting that employee "*training*" on privacy by design (TAC ¶140) meant Twitter *was* deleting certain data. *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276-78 (N.D. Cal. 2019).

### 4.    Statement 4 About FTC Settlement

Plaintiffs argue Kieran's statement that the "issue" leading to the FTC settlement was "addressed" in 2019 was false because: (1) Twitter had "unmanaged pools containing user data" beyond 2019; and (2) Kieran purportedly said those pools could lead to data misuse. Opp.11-12.

To start, and as Plaintiffs ignore, Twitter did not say it addressed data pools— it said it addressed the incident underlying the FTC complaint. Opp.11-12. That complaint said nothing about data pools, or that data pools led to misuse of data. Mot.10. Plaintiffs' "conclusory allegations" and speculation cannot satisfy the PSLRA. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

Nor did Kieran "dr[a]w the connection" between the FTC settlement and data pools. Opp.12 (citing TAC ¶163). Plaintiffs cite a Board update, but it "does not mention" data pools *at all*. *Weller v. Scout Analytics, Inc.*, 230 F. Supp. 3d 1085, 1094 (N.D. Cal. 2017); *In re Mellanox Techs., Ltd. Sec. Litig.*, 2014 WL 7204864, at *3 (N.D. Cal. Dec. 17, 2014). Nor did it report that Twitter had not "taken steps" to "prevent recurrence." Opp.12. Just the opposite, Kieran said Twitter *had* in place "infrastructure" and "processes" to prevent misuse, which it continued to improve. TAC ¶163.

Finally, although Plaintiffs allege a "mid-2021" event involving misuse of user data, they point to no facts that the supposed event stemmed from the same problem that led to the FTC settlement. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp.3d 12, 32 (S.D.N.Y. 2016).

### 5.   Set 5 About Cybersecurity Risks

Plaintiffs repeat their argument that Twitter's cybersecurity risk-disclosures misleadingly portrayed as hypothetical a risk of breaches that *had* happened.  Opp.12 (citing *In re Facebook, Inc. Sec. Litig.*, 2023 WL 8365362 (9th Cir. Dec. 4, 2023) pre-amendment).  *Facebook* only confirms the TAC should be dismissed.

In *Facebook*, defendants said user data "*may be* improperly accessed" by third parties, which "*could* result" in negative outcomes—knowing Cambridge Analytica *had* accessed user data.  2023 WL 8365362, at *8.  The Ninth Circuit found the statements actionable because they "represented the risk … as purely hypothetical when that exact risk had already transpired."  *Id.* at *9.  The opposite is true here. Twitter disclosed it *did* "experience cyber-attacks of varying degrees *on a regular basis*," said attackers "*have* obtained … access to our data," provided an example of a successful attack, and said its system "may *now*" contain vulnerabilities.  Ex.4; *see also* Op.14.[3]

Plaintiffs' argument that the disclosure was misleading because of "spies" fares no better.  Plaintiffs do not allege any "corroborating details about" the purported employee-spies, much less "provide a one-to-one connection" between "spies" and the risk-disclosure.  *See Waterford Twnp. Police v. Mattel, Inc.*, 321 F. Supp.3d 1133, 1147 (C.D. Cal. 2018).  There are no facts alleged that "spies" participated in any breach—and, regardless, Twitter warned its systems *could* be "breached" by "employee [] malfeasance."  Opp.12-14.

### 6.   Set 6 About Influence Campaigns

Plaintiffs do not point to *any* facts suggesting Twitter's purported failure to disclose DoD-associated accounts or a "campaign" by Chinar Corp in **Statements 6a-6f** "significantly altered the 'total mix' of information" available to investors,

---

[3] Twitter's risk-factor disclosures are unlike the "hyper-technical" disclosures (made across multiple documents) about battery tests at issue in *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714 (N.D. Cal. 2022) (Opp.13).

Mot.12—particularly given over 35 information campaigns *were* disclosed. *Arredondo*, 618 F. Supp. 3d at 948. Plaintiffs also continue to ignore *what* Twitter said it would disclose, and *when*.

Plaintiffs argue Twitter should have disclosed a 2017 **DoD** "campaign." Opp.16. Plaintiffs recognize Twitter only began disclosing influence operations in 2018, but claim Twitter made a commitment to disclose campaigns "regardless of when they occurred." Opp.16. They cite no facts in support—indeed, their own allegations show Twitter said it would disclose operations "*in the future*." TAC ¶216. Plaintiffs also say the DoD campaign "continued" "through 2020." Opp.16 (citing TAC ¶¶232, 240). But Plaintiffs point to allegations that DoD-related accounts remained on the platform, *not* that those accounts engaged in any operations. *Id.*; Mot.12-14 & n.3.

Plaintiffs also argue Twitter should have disclosed a **Chinar Corp** operation. Opp.15-16. But Plaintiffs concede Twitter said it would disclose only operations that were "reliably identified." *Id.* at 16. And they admit Twitter never attributed those Tweets to Chinar Corp. *Id.* at 15. Indeed, Plaintiffs point to Roth's op-ed (*id.*), but that referred to a "campaign operated by a branch of the Indian military," *not* Chinar Corp. TAC ¶243. Plaintiffs' speculation that "Chinar Corp is *likely* responsible," Opp.15, does not plead falsity. *Mattel*, 321 F. Supp.3d at 1148.

More importantly, Plaintiffs admit that *before* the March 2022 statement (**Statement 6f**), Twitter disclosed it was "changing [its] approach" and would "stop publicly disclosing detailed datasets." Opp.16. So now Plaintiffs argue Twitter did not say it "would stop disclosing the operations themselves," as if the operations were distinct from the data. *Id.* Their TAC shows there is no such distinction—Twitter disclosed campaigns only *through* datasets. TAC ¶216 (Twitter would "disclose datasets"); *id.* ¶217 (disclosing "full datasets"). Agrawal's statement about what Twitter had done "over the years" must thus be read in context of what Twitter also said it would do *going forward*. Mot.14; *Align Tech*, 417 F. Supp.3d at 1276

(plaintiffs "cherry-pick[ed] portions of Defendants' statements and ignore[ed] other portions").

### 7. Sets 7 and 8 About mDAU

Twitter joins Sections III.A of Individual Defendants' Motion to Dismiss (Dkt.136) and II.A of their Reply.

### B. Plaintiffs Do Not Plead a Strong Inference of Scienter

#### 1. Plaintiffs Do Not Plead Motive

Plaintiffs concede the TAC "does not allege that Defendants sold stock" or had any financial motive to commit securities fraud. Opp.19-20; Mot.15-16 (citing cases). Instead, Plaintiffs argue Defendants "had a motive" to "reassur[e] the public" and "preserve [Twitter's] relationship" with other parties. Opp.19-20. But these are the type of "generalized assertions of motive" to "enhance" Twitter's business that are "inadequate to meet the [PSLRA's] heightened pleading requirements." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).

#### 2. Plaintiffs Fail to Plead Individual Defendants' Scienter

Without motive, Plaintiffs' remaining scienter allegations come nowhere close to pleading a "strong inference of scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021); Mot.15-16.

For **Statements 1b-1c**, Plaintiffs abandon their allegation that Zatko's February 2021 and 2022 memos support Agrawal and Kieran's scienter—for good reason, as the Court already rejected Plaintiffs' attempt to rely on after-the-fact presentations and statements. Mot.17-18; Opp.20; Op.20. Instead, Plaintiffs double down on their speculative "would-have" allegations, claiming the Individuals "could" "access" or "easily find" unspecified contradictory information in Twitter's records or the media. Opp.5-7. But as Plaintiffs' authorities explain, it is not enough to allege defendants "could" access data—Plaintiffs must point to "hard numbers or other *specific* information" Defendants had contradicting their statements. *See Nursing Home Pens. Fund v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004)

(strong inference where financial motive *and* specific contradictory information); *Weston v. DocuSign, Inc.*, 2023 WL 3000583, at \*21 (N.D. Cal. Apr. 18, 2023) (stock sales, statements defendants "monitored data," and detailed data showing missed growth targets enough).  Plaintiffs include no "detailed and specific allegations about management's exposure" to facts contradicting their statements at the time. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008); Mot.16-17.

This similarly dooms Plaintiffs' attempt to rely on the core operations doctrine, which applies in "rare circumstances" where the "nature of the relevant fact is of such prominence" that defendants had to be aware of it. *Prodanova*, 993 F.3d at 1111.  None of Plaintiffs' allegations suggest Agrawal or Kieran "would have known" their statements were false. *Id*.

For **Statement 2**, Plaintiffs argue "Segal *would have* attended the February 2021 meeting," so would have known Twitter did not employ "best practices." Opp.9-10.  "Would have" allegations are not particularized facts, nor does Zatko's report contradict Segal's statement about training or security keys.  Mot.16-17.

For **Statements 3-4**, Plaintiffs argue Agrawal and Kieran knew about data pools (and thus knew their statements were false) "because the FTC told them as much."  Opp.11-12.  But they do not cite the FTC Complaint—because it says *nothing* about data deletion or pools.  Mot.18-19.  Plaintiffs point to no facts showing either Individual's statement was *knowingly* or *recklessly* false.  Mot.18-19.

For **Statement 5**, Plaintiffs continue to rely on Zatko's 2021 presentation to argue "Twitter experienced regular hacks."  Opp.14.  But Twitter said exactly that. Mot.18; *supra* II.A.5.  These statements are not inconsistent—nor do Plaintiffs plead that the Individuals "knew" they were.  *In re AnaptysBio, Inc.*, 2021 WL 4267413, at \*11 (S.D. Cal. Sept. 20, 2021).

Finally, Plaintiffs argue Agrawal made **Statement 6f** with scienter because "*executives* micromanaged Twitter's India operations."  Opp.17.  But that says

nothing about whether *Agrawal* knew of an alleged Chinar Corp campaign. Op.19. And while Plaintiffs point to Zatko's October 2021 memo, Opp.17-18, they do not allege Agrawal ever reviewed it. Mot.19. Even if he did, Plaintiffs do not explain how knowing about "accounts registered by the Chinar Corp" (most of which were "caught" and "suspended") rendered false his general statement about Twitter's transparency "over the years." Mot.19; TAC ¶248; *supra* II.A.6. Together with Twitter's earlier disclosure that it would stop publicly disclosing misinformation campaigns, the more compelling inference is that Agrawal believed his statement about Twitter's efforts to combat misinformation "over the years" was truthful. *Prodanova*, 993 F.3d at 1107, 1113.[4]

### 3.    No Strong Inference of Scienter as to Twitter

By failing to plead Individual Defendants' scienter for **Statements 1b-1c, 2-5,** and **6f**, Plaintiffs cannot plead Twitter's scienter. Mot.16-19. Nor have they established Twitter's scienter for **Statements 1a** or **6a-6e**.

For **Statement 1a**, Plaintiffs have no support for their argument that Agrawal and Kieran *would have* authored the statement. Opp.19. Plaintiffs cannot plead scienter based on presumptions, rather than particularized facts. Mot.20; *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006 (N.D. Cal. 2017).

Plaintiffs also argue that Roth "personally drafted and/or approved" **Statements 6a-6e**. Opp.19 (citing TAC ¶237). But the TAC only speculates Roth "*would have*" done so (TAC ¶237), which is not sufficient. Mot.20 (citing cases). In fact, for **Statement 6e**, Plaintiffs admit Roth *did not* make the statement—Plaintiffs attributed it to Minshall, and concede they do not plead her scienter.

---

[4] Unlike in the cases Plaintiffs cite, Agrawal did not provide any specific details about underlying campaigns. *See* Opp.18 (citing *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014) ("corrosion [] seen in the 34 inch oil transit line"); *Shash v. Biogen, Inc.*, 84 F.4th 1, 14 (1st Cir. 2023) ("higher dose" of specific drug); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1147 (N.D. Cal. 2017) (DAU was "dependent by market and you can have mixed shifts" revealed "knowledge of the [underlying] DAU numbers")).

Opp.19.  Moreover, Plaintiffs do not respond to Twitter's argument that Roth's essay does not show that he believed Statements 6a-6e were false when made, which alone requires dismissal.  Mot.21.

### C.   Plaintiffs' Loss Causation Arguments Fail

Plaintiffs still do not try to connect the August 23 Disclosures to any of the alleged misstatements.  Opp.21.  Neither **Statement 3** nor **4** was corrected by information about data pools or Twitter's failure to delete data—subjects *not mentioned* in the challenged statements.  *Supra* II.A.3-4.

Plaintiffs' only other argument—that the August 23 *WaPo* article's "reference to a non-public report concerning foreign intelligence matters" revealed **Statements 6a-6f** were false—is a misdirection.  Opp.21-22.  The August 23 Disclosures did not say *anything* about influence campaigns.  Ex.18.  And Plaintiffs' reliance on *In re Mattel Securities Litigation*, 2021 WL 1259405 (C.D. Cal. Jan. 26, 2021), is misplaced.  There, defendants announced Mattel learned of a whistleblower letter that was "quickly corroborated" by a financial restatement, and accompanied by the "drastic response" of "pull[ing] an already-priced bond offering," suggesting the financials were wrong.  *Id.* at *3, *12.  Here, Twitter denied the allegations in Zatko's report (Ex.18), and to date has never "corroborated" the Chinar Corp allegations.  *Rok v. Identiv, Inc.*, 2017 WL 35496, at *19 (N.D. Cal. Jan. 4, 2017).  An announcement that "simply puts investors on notice of a *potential* future disclosure of fraudulent conduct" cannot, "without more," establish loss causation.  *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).

### III.   CONCLUSION

Twitter requests that the Court dismiss the TAC with prejudice.

Dated:  December 15, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Michele D. Johnson*
Michele D. Johnson (CA Bar No. 198298)
 michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235

Whitney B. Weber (CA Bar No. 281160)
 whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Andrew B. Clubok (*Pro Hac Vice*)
 andrew.clubok@lw.com
Susan E. Engel (*Pro Hac Vice*)
 susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for X Corp., successor in interest to named defendant Twitter, Inc.*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Twitter, Inc., certifies that this brief contains 2,996 words, which complies with the word limit of L.R. 11-6.1.


Dated:  December 15, 2023          /s/ *Michele D. Johnson*
                                   Michele D. Johnson