1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                          CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  WILLIAM BAKER, JILL SLIGAY, | Case No. 2:22-cv-06525-MCS-E |
| 12  LENARD ROQUE, and | |
| 13  AMOLKUMAR VAIDYA, | |
| Individually and on Behalf of All | **ORDER RE: DEFENDANTS'** |
| 14  Others Similarly Situated, | **MOTIONS TO DISMISS THIRD** |
| | **AMENDED COMPLAINT (ECF** |
| 15  Plaintiffs, | **Nos. 136, 139, 142)** |
| 16 | |
| 17  v. | |
| 18  TWITTER, INC., JACK DORSEY, | |
| 19  NED SEGAL, PARAG AGRAWAL, | |
| and DAMIEN KIERAN, | |
| 20 | |
| 21  Defendants. | |

22        Individual Defendants Jack Dorsey, Ned Segal, Parag Agrawal, and Ned Segal
23   move to dismiss the third amended complaint ("TAC", ECF No. 130) of Lead Plaintiff
24   William Baker et al. (Individual Defs. Mot., ECF No. 136.) Lead Plaintiff opposed the
25   motion, (Individual Defs. Opp'n, ECF No. 148), and the Individual Defendants replied,
26   (Individual Defs. Reply, ECF No. 153). Separately, Twitter, Inc., moves to dismiss Lead
27   Plaintiff's TAC. (Twitter Mot., ECF No. 139.) Lead Plaintiff opposed the motion,
28   (Twitter Opp'n, ECF No. 146), and Twitter replied, (Twitter Reply, ECF No. 155).

Damien Kieran, whom Lead Plaintiff purports to name as a defendant in the TAC, also filed a motion to dismiss the complaint. (Kieran Mot., ECF No. 142.) Lead Plaintiff opposed the motion, (Kieran Opp'n, ECF No. 150), and Kieran replied, (Kieran Reply, ECF No. 157).

The Individual Defendants separately filed a request for judicial notice of documents filed in support of their motion to dismiss. (Individual Defs. RJN, ECF No. 137.) Lead Plaintiff opposed the request, (Opp'n Individual Defs. RJN, ECF No. 149), and the Individual Defendants replied, (Reply Individual Defs. RJN, ECF No. 154). Twitter also filed a request for judicial notice of documents filed in support of its motion to dismiss. (Twitter RJN, ECF No. 141.) Lead Plaintiff opposed the request, (Opp'n Twitter RJN, ECF No. 147), and Twitter replied, (Twitter Reply RJN, ECF No. 155).

## I.    BACKGROUND

This is a securities fraud case concerning allegedly false and misleading statements made between July 30, 2020 and August 23, 2022. (TAC ¶ 1.) Lead Plaintiff, in yet another complaint exceeding 100 pages, alleges all Defendants made a number of false and misleading statements on a variety of topics including Twitter's security practices, its method of measuring user engagement (known as monetizable Daily Active Users ("mDAU")), and Twitter's commitment to publicly disclosing state-backed campaigns. (*Id.* ¶¶ 39–405.)

On December 16, 2022, the Court appointed William Baker as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"). (Order Appointing Lead Pl., ECF No. 50.) Following this appointment, Lead Plaintiff filed a corrected amended complaint. (CAC, ECF No. 81.) All Defendants filed motions to dismiss the CAC, which the Court granted in part and denied in part. (Order, ECF No. 123.) The Court permitted Lead Plaintiff to file an amended complaint to cure the defects in its prior complaint, but "caution[ed] [Lead Plaintiff] against refiling a complaint that is unduly burdensome or needlessly complex." (*Id.* at 25.) On October 4, 2023, Lead Plaintiff filed the operative TAC. Lead Plaintiff brings two causes of action:

1    1) violations of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated
2    thereunder, against all Defendants, (TAC ¶¶ 396–401); and 2) violations of Section
3    20(a) of the Exchange Act against all Individual Defendants, including Kieran, (*id.*
4    ¶¶ 402–05). Despite the Court's previous warning against filing an unduly burdensome
5    complaint, and its encouragement that Lead Plaintiff structure his TAC "follow[ing] a
6    very simple formula: 1) Defendants stated [Statement 1, 2, 3 . . .]; 2) this is false
7    because . . . ; 3) at the time the statement was made Defendant knew the statement was
8    false because . . . ," (Order 6 (ellipses and brackets in original)), Lead Plaintiff
9    submitted another cumbersome complaint combining the previously parsed-out
10   statements into eight sets and offering overarching allegations of falsity and scienter for
11   each set. (*See generally* TAC.) This prompted the Court to require Lead Plaintiff to
12   submit a chart to assist it in the adjudication of the three motions. (Chart Order, ECF
13   No. 160.) Lead Plaintiff substantially complied with this request, (Chart, ECF No. 161-
14   1).

15   **II.    REQUESTS FOR JUDICIAL NOTICE**

16       In support of their motion to dismiss, the Individual Defendants ask the Court to
17   take judicial notice and deem incorporated by reference seven exhibits. (Individual
18   Defs. RJN 1–2; Bartlett Decl. Exs. A–G, ECF Nos. 138-1 to -7.) In support of its motion
19   to dismiss, Twitter asks the Court to take judicial notice of and deem incorporated by
20   reference twenty-one exhibits. (Twitter RJN 2–4; Weber Decl. Exs. 2–22, ECF Nos.
21   140-2 to -22.) The Court only relies on Exhibit 5 to Twitter's request, a copy of a Twitter
22   blog post dated September 24, 2020, (Weber Decl. Ex. 5, ECF No. 140-5), and need not
23   rely on the remaining documents to decide the motions. Therefore, the Court declines
24   to take judicial notice of them. *See Japanese Vill., LLC v. Fed. Transit. Admin.*, 843
25   F.3d 445, 454 (9th Cir. 2016).

26       The Court may consider Exhibit 5 under the incorporation by reference doctrine.
27   "A court may consider evidence on which the complaint necessarily relies if: (1) the
28   complaint refers to the document; (2) the document is central to the plaintiff's claim;

and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted). Lead Plaintiff references Exhibit 5 in his TAC; Exhibit 5 forms the basis of Statement Set 3. (TAC ¶ 140.) Moreover, Lead Plaintiff does not contest the authenticity of Exhibit 5, nor does he contest Twitter's contention that the statement within it is central to his claims. (*See* Opp'n Twitter RJN 2); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them."). Therefore, the Court deems the document incorporated by reference into the TAC.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV.   ANALYSIS

Twitter, who joins the Individual Defendants' motion, argues Lead Plaintiff's

TAC should be dismissed in its entirety because: 1) it does not allege particularized facts that any Defendant made a false or misleading statement, 2) Lead Plaintiff does not plead facts giving rise to the inference that any Defendant acted with an intent to deceive, and 3) Lead Plaintiff fails to plead loss causation. (Twitter Mot. 1–2.) The Individual Defendants join Twitter's motion, and additionally argue that: 1) Lead Plaintiff alleges no facts supporting his contention that Statement 7 or Statement 8 was false or misleading, 2) Lead Plaintiff alleges no facts from which scienter can be inferred nor meet the high burden for pleading scienter for Statement 7 or Statement 8, and 3) Lead Plaintiff fails to allege any corrective disclosure demonstrating a loss caused by either Statement 7 or Statement 8. (Individual Defs. Mot. 1–2.) Kieran joins both motions, and separately argues that he should be dismissed from the action because: 1) Lead Plaintiff failed to properly add him as a defendant, and 2) the statements the TAC claims Kieran made are not actionable. (Kieran Mot. 4–6.)

### A. Kieran was Improperly Added to the TAC

The Court ordered Lead Plaintiff to "file a properly noticed motion or joint stipulation to add **any party** not currently named to this lawsuit." (Order 26 (emphasis in original).) There is no such pending motion, joint stipulation, or court order permitting Lead Plaintiff to add Kieran as a defendant to this lawsuit. Although Lead Plaintiff filed the TAC after the Court approved the parties' stipulation for leave to amend, that stipulation did not contemplate the addition of Kieran as a party. (*See* Stip., ECF No. 127.) Indeed, Lead Plaintiff added Kieran to his second amended complaint without filing a motion or stipulation for leave to add Kieran. (*See* SAC, ECF No. 126.) The Court does not interpret the stipulation for leave to file the TAC as retroactively approving Kieran's inclusion in the SAC. The allegations and claims against Kieran may be stricken on this basis. *See, e.g.*, *Kennedy v. Full Tilt Poker*, No. CV 09-07964 MMM (AGRx), 2010 WL 3984749, at *3 (C.D. Cal. Oct. 12, 2010) (striking third amended complaint because plaintiffs' addition of claims and defendants "exceeded the permissible scope of the leave to amend"); *PB Farradyne, Inc. v. Peterson*, No. C 05-

3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (striking new theory of liability alleged in third amended complaint because new claim was "outside the scope of the leave to amend granted"); *Serpa v. SBC Telecomms., Inc.*, No. C 03–4223 MHP, 2004 WL 2002444, at *3 (N.D. Cal. Sept. 7, 2004) (striking the plaintiff's second amended complaint for exceeding the scope of leave to amend).

Notwithstanding, in the interest of judicial economy, the Court adjudicates the claims made against Kieran in the TAC and Kieran's challenges to them.

**B.    Sufficiency of Lead Plaintiff's Challenges to Defendants'[1] Statements[2]**

A claim for securities fraud under Section 10(b) of the Securities Exchange Act is subject to the "[e]xacting pleading requirements" of both Rule 9(b) and the PSLRA. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). The PSLRA forbids any "untrue statement of a material fact." 15 U.S.C. § 78u–4(b)(1)(A). "[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists[.]" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (internal quotation marks omitted). "The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). A plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at 1061 (quoting 15 U.S.C. § 78u–4(b)(1)). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating

---

[1] Throughout this order, the Court uses "Defendants" to refer to all defendants named in the TAC. Although Lead Plaintiff made distinct allegations against the Individual Defendants, the Court finds its analysis is applicable to all Defendants in this case. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008).

[2] This this section only discusses the sufficiency of Lead Plaintiff's challenges to Defendants' statements. Whether the speaker had the requisite knowledge of falsity at the time the statement was made is discussed, if necessary, in Section III.C.

1   why those statements were false, does not meet this standard." *Id.*

2        "Statements of mere corporate puffery, vague statements of optimism like 'good,'

3   'well-regarded,' or other feel good monikers, are not actionable" under the PSLRA

4   "because professional investors, and most amateur investors as well, know how to

5   devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive*

6   *Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (internal quotation marks omitted).

7   A statement is considered corporate puffery when it "is so exaggerated or vague that no

8   reasonable investor would rely upon it when considering the total mix of information

9   available." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 834 (N.D. Cal. 2014)

10  (internal quotation marks omitted). "District Courts often resolve whether a statement

11  is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil

12  Procedure 12(b)(6) . . . ." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,

13  911 F.2d 242, 245 (9th Cir. 1990).

14       The Court previously broke the challenged statements into five categories and

15  addressed the sufficiency of the allegations for each statement within each set. (Order

16  13–19.) Lead Plaintiff renumbered or relocated several of these statements within his

17  complaint. The Court will address each statement in turn using the new statement

18  numbering assigned by Lead Plaintiff in his Chart.

19            1.   Statement Set 1

20       Defendants claim that Lead Plaintiff does not dispute the accuracy of Statements

21  1(a), 1(b), and 1(c), but rather, he challenges the statements as misleading because all

22  of Twitter's engineers had access to the production environment. (TAC ¶¶ 61–65;

23  Twitter Mot. 7.) However, Defendants argue, the statements identified in Statement Set

24  1 are unrelated to the allegations purporting to identify why these statements were

25  misleading, and, therefore, Lead Plaintiff's claims pertaining to this set fail. (Twitter

26  Mot. 6–8.)

27       Statement 1(a) states, in relevant part, "Access to [Twitter's internal support]

28

tools is strictly limited and is only granted for valid business reasons." (TAC ¶ 39.)[3] Statement 1(b) states, "[A]ccess is limited and is only granted for valid business reasons (i.e., ensuring an account holder can get support if they are locked out of their account." (*Id.* ¶ 40.) Statement 1(c) states, "The amount of access, the amount of trust granted to individuals with access to these tools, is substantially lower today." (*Id.* ¶ 41.)[4] Lead Plaintiff alleges all Twitter engineers had unfettered and unlogged access to Twitter's production environment, which contained credentials hackers could use to obtain user data or control user accounts. (*See id.* ¶¶ 60–62; Twitter Opp'n 3.) This, he contends, renders Statement 1(a), 1(b), and 1(c) false or misleading because "all of Twitter's engineers (thousands of employees) had access" to this information." (TAC ¶ 61.)

Lead Plaintiff has failed to adequately allege that Statements 1(a)–(c) are false or misleading. Each of the three statements suggests Twitter limited access to its production environment for a number of employees in the wake of the July 2020 hack. According to Lead Plaintiff's allegations, after the July 2020 hack, all of Twitter's engineers still had access to the production environment. This does not suggest Twitter failed to limit access to the production environment for other, non-engineer employees

---

[3] The Court removes all emphasis added to all statements at issue in Lead Plaintiff's pleading.

[4] The Court previously found Lead Plaintiff adequately alleged Statements 1(b) and 1(c) were false or misleading. (Order 15.) The Court's previous findings pertaining to these two statements rested heavily on allegations not found in Lead Plaintiff's TAC. (*Id.*) Lead Plaintiff previously pleaded that "almost half of Twitter's *employees* could access accounts for any reason." (Corrected Amended Complaint ("CAC") ¶ 233, ECF No. 81 (emphasis added).) However, here, Lead Plaintiff alleges that "all of Twitter's *engineers* . . . had access to credentials that hackers could use to obtain user data or control user accounts," (emphasis added) (TAC ¶ 61), and that "their access to data was not logged," (*id.* ¶ 62). This changes the universe of individuals Lead Plaintiff claims were able to access accounts for any reason from half of the employees at Twitter to just the engineers working at Twitter. The Court's analysis is materially different with respect to the falsity allegations given the newly added specificity in the domain of employees with access.

who previously had access—nor does it suggest that Twitter lacked valid business reasons to continue granting their engineers unfettered access. To the extent Lead Plaintiff believes Twitter's statements are false, it is unclear where the TAC "state[s] with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The allegations concerning these statements, (*see* TAC ¶¶ 42–79), suggest that Lead "Plaintiff takes issue with the methods used by Defendants" to secure the platform. *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1258 (N.D. Cal. 2019). This does not satisfy the pleading requirement because "it is [Lead] Plaintiff's burden to show falsity, not inadequacy." *Id.*

### 2.   Statement Set 2

Defendants claim that Lead Plaintiff failed to adequately allege Statement 2, the only statement in Statement Set 2, is actionable, let alone false or misleading. (Twitter Mot. 8–9.) On July 8, 2021, Defendant Segal stated in an interview that Twitter was "constantly considering and investing and learning to make sure that we're developing best practices and applying them." (TAC ¶ 120.) Lead Plaintiff avers this statement is false because Twitter was not following best practices at this time and had not taken action that could have prevented the July 2020 hack. (*Id.* ¶ 122.) Specifically, at the time Defendant Segal made this statement, Lead Plaintiff avers "Twitter (a) did not restrict access to data except as necessary for employees to do their job, (b) did not have a sandbox where engineers could test code before production, and (c) did not track engineers' access to user data." (*Id.*)

Lead Plaintiff failed to allege Statement 2 was false or misleading. As alleged, Statement 2 is non-actionable puffery. This statement is a "subjective assessment[]" which "vaguely refer[s] to [Twitter's] prioritization [and] improvement . . . of safety procedures." *Barnes v. Edison Int'l*, No. CV 18-09690 CBM, 2021 WL 2325060, at *9 (C.D. Cal. Apr. 27, 2021) (internal quotation marks omitted), *aff'd*, 2022 WL 822191 (9th Cir. Mar. 18, 2022). This is not an "objectively verifiable" statement that "qualif[ies] as [a] material misstatement" but instead "represent[s] the feel good speak

9

that characterizes non-actionable puffing." *Police Ret. Sys. of St. Louis*, 759 F.3d at 1060 (internal quotation marks omitted). Statement 2 is a prototypical example of corporate boasting. It does not concern specific or quantifiable actions that Twitter claims to have taken, only stating generally that Twitter is working to improve its systems to be up to date with "best practices" in the industry. This does not qualify as a material misstatement under the PSLRA. *See id.* Thus, Lead Plaintiff has failed to plead Statement 2 is actionable.

### 3.   Statement Set 3

Defendants claim that Lead Plaintiff failed to adequately allege Statement 3, the only statement in Statement Set 3, is false or misleading. (Twitter Mot. 9–10.) A September 2020 Twitter blog post authored by Defendants Agrawal and Kieran stated Twitter "also enhanced training content on . . . privacy by design." (TAC ¶ 140.) Lead Plaintiff argues "privacy by design" is a term of art that reasonable investors would assume takes on the technical definition of the phrase. (Twitter Opp'n 10–11.) Specifically, Lead Plaintiff avers, "privacy by design" takes on several requirements— "one of which is that companies ensure that all data is securely retained as needed and destroyed when no longer needed." (TAC ¶ 142.) Lead Plaintiff argues that because Twitter could not securely retain user data and delete it when it was no longer useful, Twitter was not able to comply with "privacy by design," and therefore this statement was false. (Twitter Opp'n 10–11.)

Lead Plaintiff has not pleaded sufficient facts to establish that Statement 3 is false or misleading. Lead Plaintiff argues that because Twitter lacks the capacity to achieve privacy by design, as defined by Dr. Ann Cavoukian, Twitter's purported training of its employees to comply with such was misleading. (TAC ¶ 142; Twitter Opp'n 10–11.)[5]

---

[5] Lead Plaintiff seems to suggest that his proffered definition of "privacy by design" is the only definition of the term. However, this is not clear from the facts before this Court. Therefore, the Court does not assume Lead Plaintiff's definition of "privacy by design" offered in the TAC constitutes the definition of "privacy by design" in general.

Lead Plaintiff's opposition rewrites Twitter's statement to mean that Twitter: 1) adopted the definition of privacy by design as written by Dr. Cavoukian and 2) trained its employees to implement this practice in the company. However, nothing from the context of the statement or Statement 3 itself suggests this to be true. *Pampena v. Musk*, No. 22-cv-05937-CRB, 2023 WL 8588853, at *8 (N.D. Cal. Dec. 11, 2023) (acknowledging courts may analyze an alleged false statement in context); (*see* Twitter Mot. 9–10; Weber Decl. Ex. 5.) Moreover, nothing in Statement 3 or the surrounding context suggests Twitter intended for "privacy by design" to adopt the technical definition proffered by Dr. Cavoukian. (*Id.*)

Therefore, Lead Plaintiff has failed to plead facts supporting his argument that Statement 3 was false or misleading.

### 4.   Statement Set 4

Defendants claim that Lead Plaintiff failed to adequately allege Statement 4, the only statement in Statement Set 4, is false or misleading. (Twitter Mot. 10–11.) Statement 4 is taken from a May 25, 2022, post published by Kieran on Twitter's blog. (TAC ¶ 156.) The statement reads, in relevant part: "Twitter reached a settlement with the Federal Trade Commission (FTC) regarding a privacy incident disclosed in 2019 when some email addresses and phone numbers provided for account security purposes may have been inadvertently used for advertising.   This issue was addressed as of September 17, 2019." (*Id.*) Lead Plaintiff alleges that Twitter had not addressed this issue because it "had not deleted user data from the [data] pools" by 2022. (*Id.* ¶¶ 157–58.) Lead Plaintiff supports this claim with information provided by Peiter Zatko that in mid-2021, Twitter had "again inadvertently used the data customers had provided solely for security purposes in advertising campaigns," (*id.* ¶ 158), and the allegation that Twitter's sales team came across data provided for security purposes and used it for "ad tracking" in mid-2021, (*id.* ¶ 175). Statement 4 suggests Twitter addressed this problem in 2019. A reasonable investor may have been misled if the problem still

existed in 2021, as Mr. Zatko[6] and Lead Plaintiff aver it did. Lead Plaintiff has satisfied his burden of pleading this statement is false or misleading.

### 5. Statement Set 5

Defendants claim that Lead Plaintiff failed to adequately allege Twitter's risk disclosure statements are false or misleading. (Twitter Mot. 11–12.) Lead Plaintiff avers there are nine statements in Statement Set 5, (Chart 4–9), but each statement is materially the same: a recitation of Twitter's risk disclosure at different times between August 2020 and July 2022 found in Twitter's Class Period Reports on Forms 10-K and 10-Q. For purposes of determining if Lead Plaintiff had adequately pleaded falsity for Statement Set 5, the Court can address the group as one statement – Statement 5. (TAC ¶ 184.)

Statement 5 reads, in relevant part, "Our products may contain errors or our security measures may be breached . . . . Our products and services may be subject to attacks that degrade or deny the ability of people to access our products and services. . . . We cannot provide assurances that our preventative efforts will be successful." (*Id.*) Lead Plaintiff argues this statement is false or misleading because it suggests that, because of Twitter's efforts to protect its cybersecurity, it had not experienced actual breaches. (*Id.* ¶ 185.) However, Lead Plaintiff does not "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Lead Plaintiff also avers this statement is misleading because Twitter "employed foreign spies throughout the Class Period" who had "unfettered and unlogged access to user data" and therefore were "an ongoing security incident." (Twitter Opp'n 13; *see* TAC ¶¶ 188–204.) However, Lead Plaintiff does not plead any facts to suggest Twitter's purported employment of spies renders Statement 5 misleading. Lead Plaintiff does not plead that any of these

---

[6] As previously held by the Court, statements attributed to Mr. Zatko and Elon Musk are sufficiently reliable to support a claim of falsity under the PSLRA at the motion to dismiss stage. (Order 6–7.)

purported spies took part in an actual breach and, even if they did, Lead Plaintiff does not plead facts showing how their supposed involvement rendered Statement 5 misleading.

The Court already found that the challenged statements do not promise the elimination of security incidents or weak spots; that Twitter's Class Period Reports on Forms 10-K and 10-Q specifically disclaim any "assurance that [Twitter's] preventative efforts will be successful," (TAC ¶ 184); and that, in context, it is difficult to see how the statements could be false or misleading. (Order 14.) Lead Plaintiff offers no new facts that impact the Court's previous findings. Lead Plaintiff's reliance on *In re Facebook, Inc. Securities Litigation*[7] is misplaced—in that case, Facebook represented a security risk as "purely hypothetical when that exact risk had already transpired." 87 F.4th 934, 949 (9th Cir. 2023). Here, by Lead Plaintiff's own admission, Twitter disclosed that it had experienced cyberattacks on a regular basis. (Twitter Opp'n 12.) Statement 5 is not the type of conjectural phrasing used in *Facebook* where the Court found "[a] reasonable investor reading the 10-K would have understood the risk . . . to be merely conjectural." *Facebook*, 87 F.4th at 949. Again, Lead Plaintiff has failed to allege Twitter's risk disclosure statements are false or misleading.

### 6.   Statement Set 6

Defendants claim that Lead Plaintiff failed to allege the falsity of Twitter's statements regarding its commitment to disclose "state-backed information operations," also referred to as "government-backed influence campaigns." (Twitter Mot. 12–14; *see* TAC ¶¶ 214–19.) In 2018, Twitter committed to disclose "archives of Tweets and media that [it] believe[d] resulted from state-backed information operations." (Twitter Mot. 13 (internal quotation marks omitted).) Lead Plaintiff does not dispute that Twitter

---

[7] Lead Plaintiff cites *In re Facebook, Inc. Securities Litigation*, 84 F.4th 844 (9th Cir. 2023), which was decided on October 18, 2023. This opinion was amended and superseded in its entirety on December 4, 2023, after Lead Plaintiff filed his briefs.

disclosed over 35 government-backed influence campaigns, but he claims Twitter failed to disclose such campaigns conducted by the U.S. Department of Defense ("DoD") and Chinar Corp, a unit of the Indian Army. (Twitter Mot. 12; Twitter Opp'n 14–17; TAC ¶¶ 214–19, 228.) This, Lead Plaintiff argues, renders several of Twitter's statements regarding its commitment to disclosing government-backed influence campaigns false.

Statement 6(a), posted on Twitter's "Twitter Safety" account in September 2020, says in relevant part, "[a]ttempts to manipulate our service to undermine democracy—by both foreign and domestic actors—will be met with strict enforcement of our policies." (TAC ¶ 214.) Statements 6(b)–(d) are unattributed Twitter blog posts from October 2020, February 2021, and December 2021. (*Id.* ¶ 215.) Each of the three posts repeats the same statement, (*id.* ¶ 216), and, therefore, the Court can address these posts together. The statement says, in part,

> Twitter is making publicly available archives of Tweets and media that we believe resulted from state-backed information operations on our service. . . . We only disclose datasets once we have determined attribution, and once all applicable investigations have concluded. We may also release incremental additions to existing datasets if we believe the additional information could materially impact research findings.

(*Id.*) And, in a section titled "What's included [in information operations]?" Twitter wrote, "Platform manipulation that we can reliably attribute to a government or state-backed actor is considered an information operation and is prohibited by the Twitter Rules." (*Id.*)

In support of the argument that Statements 6(a)–(d) are false, Lead Plaintiff avers Twitter "assured investors that they disclosed all government-backed influence campaigns that they discovered on Twitter," (*id.* ¶ 219), as part of its pledge to investors and consumers that the company valued transparency, (*id.* ¶ 221). However, nowhere in Statements 6(a)–(d) does Twitter commit to disclosing *all* government-backed influence campaigns. In fact, Statements 6(b)–(d) themselves suggest Twitter only

committed to disclosing "archives of Tweets and media" that resulted from government-backed influence campaigns "once we have determined attribution, and once all applicable investigations have concluded." (*Id.* ¶ 216.) Lead Plaintiff avers that Twitter internal documents released to a reporter in 2022 show that Twitter concealed DoD actions that used "fake accounts to conduct an influence campaign" in 2017. (*Id.* ¶¶ 229–30.) Lead Plaintiff separately avers Twitter did not publicly disclose a government-backed influence campaign run by Chinar Corp. (*Id.* ¶ 233.) However, Lead Plaintiff does not plead any facts suggesting that Twitter "determined attribution" for the DoD accounts or the Chinar Corp influence operation, that "all applicable investigations ha[d] concluded," or that Twitter did not implement strict enforcement of its policies. (*Id.* ¶¶ 214–16.) Specific to the DoD allegations, Twitter pleads no facts that fake accounts constitute the kind of "archives of Tweets and media" Twitter committed to disclosing. (*Id.* ¶ 216.) Therefore, Lead Plaintiff has failed to adequately allege Statements 6(a)–(d) are false or misleading.

Statements 6(e) and 6(f) fare differently. Both statements use the word "any" in describing Twitter's public disclosure of attempts by state actors to manipulate the conversation on Twitter. (*See* TAC ¶¶ 217–18.) Statement 6(e) is a November 2020 "blog post co-authored by Katy Minshall, then Head of Government, Public Policy and Philanthropy for Twitter UK." (TAC ¶ 217). It says, in relevant part, that "Twitter committed to disclose publicly, any state-backed information operations that were reliably identified on the service." (*Id.*) In Statement 6(f), Defendant Agrawal is alleged to have said during a March 2022 conference, "[W]e've been very, very transparent about any attempt that we've seen from state actors to manipulate the conversation on Twitter . . . ." (*Id.* ¶ 218.) The Court was previously persuaded "that the use of the word 'any' when describing attempts by state actors to engage in disinformation campaigns on Twitter clearly implies that Twitter had disclosed *all* attempts" by state actors to engage in disinformation campaigns on Twitter. (Order 9.) Further, the Court found Lead Plaintiff sufficiently pled that Twitter failed to disclose an influence campaign

operation by Chinar Corp. (*Id.* at 15–16.) The Court maintains its previous findings pertaining to the sufficiency of Lead Plaintiff's falsity allegations for Statements 6(e) and 6(f).[8]

        7.    Statement Set 7

Defendants claim that Lead Plaintiff does not dispute the accuracy of the statements in Statement Set 7, but rather Lead Plaintiff avers that these statements were misleading because they created an impression that mDAU only included users who saw ads and generated revenue. (Individual Defs. Mot. 7–11.)[9] Lead Plaintiff asserts that Defendants made statements that misleadingly gave the impression that all mDAU saw ads when a growing number of mDAU did not see ads. (Individual Defs. Opp'n 8–10.) These users purportedly drove Twitter's mDAU growth. (*Id.*) The reasonable implication an investor would derive from these statements, Lead Plaintiff avers, is that

---

[8] Because the Court finds Lead Plaintiff has adequately alleged falsity for these two statements on other grounds, it need not address the sufficiency of Lead Plaintiff's falsity allegations pertaining to the DoD campaign for Statements 6(e) and 6(f).

[9] In his CAC, Lead Plaintiff alleged that a number of Twitter's statements regarding mDAU utility were false because they suggested the speaker believed mDAU was a reasonable way to measure Twitter's performance, even though Twitter used user active minutes ("UAM") to measure user engagement. (CAC ¶¶ 172, 253–54.) The Court found these statements were actionable under the PSLRA because, if true, they "could show that the speaker did not actually perceive mDAU to have the utility professed in the statements." (Order 11.) Relatedly, Lead Plaintiff previously pled that two of Twitter's statements were false because they suggested the speaker engaged in a good faith estimation of the number of false or spam accounts included in Twitter's mDAU calculations. (CAC ¶¶ 255–56.) The Court found that "[b]ecause these statements could lead a reasonable investor to believe they 'convey facts about how the speaker has formed the opinion,' they may be actionable under the PSLRA." (Order 12 (quoting *Wochos v. Tesla, Inc.* 985 F.3d 1180, 1189 (9th Cir. 2021)).) In his TAC, Lead Plaintiff does not allege that the mDAU-related statements from his CAC are false. Therefore, the Court considers the aforementioned allegations pertaining to the mDAU-related statements in Lead Plaintiff's CAC abandoned. *See, e.g. Monet v. Hawaii*, No. 21-00368 LEK-KJM, 2022 WL 1748442, at *2 (D. Haw. May 31, 2022) (finding that a plaintiff who failed to reallege his claims from his first complaint in his amended complaint had abandoned them).

"all users who accessed Twitter through portals that allowed Twitter to show ads actually saw ads and thus earned Twitter actual revenues." (Individual Defs. Opp'n 8 (emphasis removed).) Each of these statements, Lead Plaintiff claims, "gave investors an 'impression of a state of affairs that differs in a material way from the one that actually exists'" and thus was materially false or misleading under the PSLRA. (*Id.* (quoting *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 928 (9th Cir. 2023)).)

The Court reads Lead Plaintiff's allegations to be two-tiered: first, that Defendants made statements that would lead a reasonable investor to believe mDAU only included users who saw ads when mDAU included users who did not see ads; second, that Defendants' statements regarding mDAU gave investors the impression Twitter was generating revenue that Twitter was not in fact generating. (*See* TAC ¶¶ 281–300.) Because each of the twenty statements Lead Plaintiff avers were false or misleading in Statement Set 7 presents the same formulation (average mDAU count coupled with Twitter's estimated percentage of mDAU growth), and because Lead Plaintiff does not challenge the veracity of any of the statements individually, the Court addresses the sufficiency of Lead Plaintiff's falsity allegations related to Statement Set 7 as a whole rather than assessing the falsity of each individual statement.

In support of his allegations, Lead Plaintiff points to a pre–Class Period statement made by Twitter to investors that mDAU was not like "more expansive metric[s] that include[] people who are not seeing ads." (TAC ¶ 282.) Defendants do not dispute that mDAU includes users who do not see ads. (*See generally* Individual Defs. Mot. 7–11.) Instead, they argue that Twitter defined mDAU to account for users who accessed Twitter "via entry-points that are able to show ads," that "[n]one of the challenged statements state that mDAU is a count of users who saw ads," and that the pre–Class Period statement identified by Lead Plaintiff is taken out of context. (Individual Defs. Opp'n 8 (internal quotation marks and emphasis omitted).) The Court agrees. The sentence preceding the text of the pre–Class Period 2019 statement, on which Lead

Plaintiff bases his accusation that Twitter misrepresented to investors that mDAU only counted users who saw ads, states, "Monetizable DAU are Twitter users who log in and access Twitter on any given day through twitter.com or our Twitter applications that are able to show ads." (TAC ¶ 282.) Given this wording, a prudent investor reviewing this statement could not understand it to represent that mDAU encompassed only users who were actually served ads on ad-capable platforms. The pre–Class Period statement as a whole may be ambiguous, but not false or misleading. *See Welgus v. TriNet Grp. Inc.*, No. 15-cv-03625-BLF, 2017 WL 6466264, at *14 (N.D. Cal. Dec. 18, 2017), (finding alleged ambiguity in defendant's statements was insufficient to satisfy the PSLRA's requirement that a plaintiff plead specific facts indicating why the challenged statements were false), *aff'd*, 765 F. App'x 239 (9th Cir. 2019). Therefore, Lead Plaintiff has not alleged facts to show the statements in Statement Set 7 reporting mDAU count and Twitter's mDAU growth were misleading.

Lead Plaintiff's averment that Statement Set 7 misled investors to believe Twitter's mDAU growth necessitated revenue growth fares even worse. It is unclear where the TAC "state[s] with particularity all facts on which [this] belief is formed." 15 U.S.C. § 78u–4(b)(1). Lead Plaintiff does not allege mDAU was a measure of revenue, or that Twitter communicated to investors that it was. None of Lead Plaintiff's allegations are relevant to the veracity of Twitter's disclosures regarding the users counted in mDAU or mDAU growth. Lead Plaintiff has failed to allege Statement Set 7 is false or misleading.

### 8. Statement Set 8

Defendants claim that Lead Plaintiff failed to adequately allege Defendants' statements regarding when Twitter stopped including fake, spam, or bot accounts in its mDAU count are false or misleading. (Individual Defs. Mot. 11–12.) Lead Plaintiff alleges there are nine statements in Statement Set 8, but each statement is the same representation from Twitter's reports on Forms 10-K and 10-Q between August 2020 and July 2022. For purposes of determining if Lead Plaintiff has adequately pleaded the

falsity of these statements, the Court can address the group of statements together. (Chart 11–15.)

Statement 8 states, "After we determine an account is spam, malicious automation, or fake we stop counting it in our mDAU, or other related metrics." (TAC ¶ 301.) Defendants argue the facts do not support an inference that this statement is false or misleading. (Individual Defs. Mot. 11.) For example, Defendants argue reasonable investors would assume Twitter calculated mDAU daily and reported the average of those daily counts to investors at the end of each quarter. (*Id.*) This, they contend, clearly applies prospectively and does not propose that Defendants would retroactively remove from daily mDAU accounts that were later suspended. (*Id.*) Therefore, Defendants argue, Statement 8 is not misleading. Statement 8 states that Twitter stopped counting an account in mDAU after it determined the account was malicious, spam, automation, or fake. (TAC ¶ 301.) It does not qualify that mDAU is an average that includes suspended accounts. Lead Plaintiff has plausibly pleaded that Twitter's actual practice differed in a material way. The Court previously found Lead Plaintiff adequately alleged Statement 8 is false or misleading, (Order 18–19), and finds the same here.

## C. Sufficiency of Scienter Allegations

Lead Plaintiff has only plausibly pleaded Statements 4, 6(e), 6(f), and 8 are actionable as false or misleading statements. Accordingly, the Court only considers whether Lead Plaintiff has adequately alleged scienter for these statements. Under the PSLRA, "a plaintiff must 'state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Metzler*, 540 F.3d at 1066 (quoting 15 U.S.C. § 78u–4(b)(2)). "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 324. "The strong inference standard unequivocally raised the bar for pleading scienter." *Id*. at 321 (cleaned up). The Ninth Circuit "has not adopted the corporate scienter doctrine." *Nozak v. N. Dynasty Minerals Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020). Consequently, the PSLRA requires

19

plaintiffs "to plead scienter with respect to those individuals who actually made the false statements." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008).

In Statement 4, Lead Plaintiff alleges Kieran said the advertising use of "email addresses and phone numbers [that were] provided [by users] for account security purposes" "was addressed as of September 17, 2019" in a May 25, 2022, blog post. (TAC ¶ 156.) Lead Plaintiff points to statements and events postdating this statement to support his allegation that Kieran made Statement 4 with knowledge of its falsity. (TAC ¶¶ 160–64, 172, 177, 180–83.) To meet the scienter pleading requirement, Lead Plaintiff must plead "allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler*, 540 F.3d at 1049 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)). The only allegation predating Kieran's May 2022 post is that Kieran was Twitter's Global Data Protection Officer at the time and "[i]t is absurd to suggest that someone in his position would not know basic facts like whether Twitter had addressed this problem." (*Id.* ¶ 180.) This, however, is an undisguised legal argument. Lead Plaintiff does not offer any *facts* to support his allegation that Kieran knew Statement 4 was false or misleading when he made it.

Statement 6(e) is attributed to Katy Minshall, Twitter's former Head of Government, Public Policy and Philanthropy for Twitter UK, who is not a defendant to this suit. (TAC ¶ 217.) Lead Plaintiff pleads no facts showing that Ms. Minshall knew or had any reason to believe any aspect of this statement was false or misleading at the time it was made. Consequently, Lead Plaintiff has not adequately alleged scienter for Statement 6(e).

In Statement 6(f), Lead Plaintiff alleges Defendant Agrawal said, "[W]e've been very, very transparent about any attempt that we've seen from state actors to manipulate the conversation on Twitter, right? And we've shared those transparently. We've been active in detecting them." (*Id.* ¶ 218.) Lead Plaintiff again alleges generally that "Twitter executives and its legal team" had knowledge of, and decided not to disclose,

the Chinar Corp influence campaign. (TAC ¶¶ 243–50.) "Scienter cannot be established based on general awareness and hands-on management style or by lumping management and executives together." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (internal quotation marks omitted). Lead Plaintiff suggests an October 2021 memorandum written by Mr. Zatko to executives stating in part that "absent disclosure [of the Chinar Corp campaign,] it doesn't seem like we have a viable strategy other than perpetual whack-a-mole." (TAC ¶ 248.) However, Mr. Zatko's impressions of the Chinar Corp campaign do not give rise to the inference that Defendant Agrawal knew his statement to be false at the time he made it. Twitter committed to disclose government-backed campaigns once it could attribute the campaign to a government or state-backed actor and once all applicable investigations into the operation concluded. (*Id.* ¶ 216.) Lead Plaintiff does not aver the Chinar Corp met both of these standards as of March 2022, when Defendant Agrawal made this statement, nor does Mr. Zatko's memorandum suggest these standards were met. Therefore, Lead Plaintiff has failed to allege scienter for Statement 6(f).

Statement 8 states, "After we determine an account is spam, malicious automation, or fake, we stop counting it in our mDAU, or other related metrics." (*Id.* ¶ 301.) The Court previously held Lead Plaintiff presented a strong inference that Defendant Segal knew Statement 8 "was false or misleading on May 2, 2022, when he signed 'Twitter's quarterly report on Form 10-Q for the quarter end[ing] March 30, 2022.'" (Order 21 (alteration in original) (quoting CAC ¶ 206(h)).) It finds the same here. [10] Therefore, the only false or misleading statement made with the requisite

---

[10]Lead Plaintiff separately avers Kayvon Beykpour's scienter can be imputed to Twitter for Statement 8 because he had primary responsibility for growing Twitter's mDAU. (TAC ¶¶ 325–27.) The Court reiterates for the third time, (*see* Order 19; *supra* Section III), that the Ninth Circuit "has not adopted the corporate scienter doctrine," *Nozak*, 804 F. App'x at 734, and that the PSLRA requires plaintiffs "to plead scienter with respect to those individuals who actually made the false statements." *Magistri*, 549 F. 3d at 745. Lead Plaintiff offers no facts to support the inference that Mr. Beykpour, Twitter's

1    scienter that Lead Plaintiff has alleged in compliance with the requirements of the
2    PSLRA is Statement 8.

3        **D.    Loss Causation**

4        "[L]oss causation is the causal connection between the defendant's material
5    misrepresentation and the plaintiff's loss. A complaint fails to allege loss causation if it
6    does not provide a defendant with notice of what the relevant economic loss might be
7    or of what the causal connection might be between that loss and the misrepresentation."
8    *Metzler*, 540 F.3d at 1062 (cleaned up). "Stated in the affirmative, the complaint must
9    allege that the defendant's 'share price fell significantly after the truth became known.'"
10   *Id*. (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

11       As in Lead Plaintiff's prior complaint, the only false or misleading statement
12   made with the requisite scienter that Lead Plaintiff has alleged in compliance with the
13   requirements of the PSLRA is Statement 8. The Court previously found Lead Plaintiff
14   failed to adequately allege loss causation in connection with Statement 8. (Order 25.)
15   As a general rule, "loss causation is a matter of proof at trial and not to be decided on a
16   Rule 12(b)(6) motion to dismiss." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057
17   (9th Cir. 2008) (internal quotation marks omitted). However, where a complaint does
18   not "allege facts that, if taken as true, plausibly establish loss causation," a Rule 12(b)(6)
19   dismissal may be appropriate. *Id.* "The burden of pleading loss causation is typically
20   satisfied by allegations that the defendant revealed the truth through corrective
21   disclosures which caused the company's stock price to drop and investors to lose
22   money." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (internal
23   quotation marks omitted).

24       Lead Plaintiff offers no new facts impacting the Court's previous findings. (*See*
25   TAC ¶¶ 328–46.) Lead Plaintiff has failed to allege what "corrective" information was

26   _____

27   previous Product Lead and formerly a defendant to this suit, knew Statement 8 was false
28   or misleading at the time it was made—or that Beykpour made the statement.

made public, and the TAC fails to adequately "allege that the defendant's share price fell significantly after the truth became known." *Metzler*, 540 F.3d at 1062 (cleaned up). Because Lead Plaintiff's TAC does not correct the deficiencies from his previous complaint, the Court dismisses what remains of his Section 10(b) and Rule 10b-5 claim for failure to plead loss causation. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) (affirming the district court's dismissal of plaintiff's Section 10(b) and Rule 10b-5 claims in part due to plaintiff's repeated failure to correct the deficiencies in his loss causation theory).

## E. Control Person Liability

"Under Section 20(a), a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates a primary violation of federal securities law and that the defendant exercised actual power or control over the primary violator." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (internal quotation marks omitted). For the reasons explained in the preceding sections, Lead Plaintiff has not sufficiently alleged a securities fraud claim. And, "without a primary violation of federal securities law, [Lead] Plaintiff cannot establish control person liability." *Id.* (internal quotation marks omitted). Therefore, Lead Plaintiff's Section 20(a) claim is dismissed against all Defendants.

## F. Leave to Amend

Lead Plaintiff requests leave to amend should the Court grant Defendants' motions. (Twitter Opp'n 22; Individiual Defs. Opp'n 22; Kieran Opp'n 3.) "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court previously

granted Lead Plaintiff leave to amend because "[t]he defects in the Complaint appear to be readily curable." (Order 25.) Despite its 100-plus page amended complaint, Lead Plaintiff provided no new facts that cured these previously identified deficiencies. Therefore, the Court is left with no choice but to believe there are no facts available for Lead Plaintiff to sustain his claims. This supports denying Lead Plaintiff leave to amend. *Sonoma County*, 708 F.3d at 1117.

The Court also finds Lead Plaintiff acted in bad faith by submitting yet another unnecessarily lengthy, puzzling and burdensome complaint. *See Clark v. Weber*, No. CV 21-6558-MWF (KSx), 2021 WL 6751864, at *3 (C.D. Cal. Oct. 27, 2021) ("Bad faith may . . . encompass a plaintiff seeking to prolong litigation by including new, but unsupported legal theories."). The Court explicitly warned Lead Plaintiff against this conduct. (Order 25 ("The Court again cautions against refiling a complaint that is unduly burdensome or needlessly complex.").) Sifting through the TAC only to find Lead Plaintiff had provided no new facts, just new theories, was a waste of judicial resources—and, no doubt, the resources of the opposing parties. This also weighs against granting Lead Plaintiff leave to amend.  On balance, the Court finds no cause to allow further leave to amend. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial of leave to amend where amended complaint failed to cure defects identified in order dismissing prior complaint); *see also Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (upholding the district court's denial of leave to amend when it found plaintiff was acting in bad faith).

## V.   CONCLUSION

For the reasons stated above, Defendants' motions are **GRANTED.** The third amended complaint is dismissed. As all claims against all defendants have been dismissed, the Court directs the Clerk to enter judgment.

**IT IS SO ORDERED.**

Dated: March 5, 2024

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE